UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Natasha Urena and Daniel Rodriguez, Administrators of the Estate of Juliana Rodriguez Morel**

v.

**Travelers Casualty and Surety Company of America**

Case No. 22-cv-200-PB
Opinion No. 2024 DNH 006

## MEMORANDUM AND ORDER

This insurance declaratory judgment action stems from an underlying action in which the plaintiff, Juliana Rodriguez Morel, received a default judgment against her former employer for pregnancy discrimination and wrongful termination. Rodriguez Morel filed the instant action seeking a declaratory judgment that Travelers Casualty and Surety Company of America, her employer's insurer, is obligated to pay the judgment against her employer. Travelers filed a motion to dismiss contending that Rodriguez Morel lacks standing to bring this action and that, in any event, the claim is untimely.

## I.     BACKGROUND

Rodriguez Morel was employed by Mammoth Tech, Inc., an Ohio-based corporation with branch offices in New Hampshire and California.[1] Doc. 1-1 at 43. Following her termination from the Manchester office, Rodriguez Morel filed a complaint against Mammoth on January 15, 2021, asserting multiple state and federal law claims for pregnancy discrimination and wrongful discharge. Id. at 72; see Rodriguez Morel v. Mammoth Tech, Inc., 21-cv-40-AJ. Rodriguez Morel ultimately obtained a default judgment in that action for $303,592.20. Doc. 20-3 at 2.

On May 2, 2022, Rodriguez Morel filed this action against Travelers, seeking a declaration that an employment practices liability insurance policy (EPL policy) issued to Mammoth by Travelers obligates Travelers to pay the default judgment against Mammoth.[2] Doc. 1-1 at 5. The complaint was originally filed in New Hampshire state court and then removed to this court on the basis of diversity. Doc. 1 at 1. Travelers has filed a motion to dismiss

---

[1]    Mammoth was known by a different name when Rodriguez Morel worked there. Doc. 20-3 at 1. I refer to the company by its current name throughout this order.

[2]    Rodriguez Morel passed away a few months after filing this action, and the co-administrators of her estate were substituted as parties pursuant to Federal Rule of Civil Procedure 25. Doc. 13. For the sake of clarity, I refer throughout this order to the original plaintiff, Rodriguez Morel, rather than the co-administrators of her estate.

Rodriguez Morel's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

To survive a motion to dismiss based on Rule 12(b)(6), a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, the court employs a two-step approach. See Ocasio–Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, the complaint is screened for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (cleaned up). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. Second, after crediting as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, the court determines if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal

3

evidence" of illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is that those allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

### III.   ANALYSIS

The parties disagree as to whether this case is governed by Ohio law or New Hampshire law. If Ohio law applies, Travelers argues that Rodriguez Morel's action is barred because Ohio does not permit a direct action against a wrongdoer's insurer unless she has suffered bodily injury or property damage. If New Hampshire law applies, it argues that Rodriguez Morel cannot sue Travelers both because she lacks standing to sue and because her claim is barred by New Hampshire's six-month statute of limitations for insurance coverage actions. I resolve the choice of law problem before turning to the merits.

**A.    Choice-of-Law Analysis**

"A federal court sitting in diversity jurisdiction must employ the choice-of-law principles of the forum state . . . ." Auto Europe, LLC v. Conn. Indem. Co., 321 F.3d 60, 64 (1st Cir. 2003). Under New Hampshire's choice-of-law rules, a "contract is to be governed, both as to validity and performance, by the law of the state with which the contract has its most significant relationship." Consol. Mut. Ins. Co. v. Radio Foods Corp., 108 N.H. 494, 496

4

(1968). In the context of insurance contracts, "the State which is the 'principal location of the insured risk' bears the most significant relationship to the contract." Glowski v. Allstate Ins. Co., 134 N.H. 196, 198 (1991) (quoting Ellis v. Royal Ins. Co., 129 N.H. 326, 331 (1987)). Where, however, "a policy covers risks in more than one state, it is considered a multiple risk policy, and the principal location of the insured risk may be in more than one state." Cadell v. XL Specialty Ins. Co., No. 11-cv-394-JD, 2012 WL 2359975, at *2 (D.N.H. June 20, 2012). In such a case, each individual risk is "treated as though it were insured by a separate policy," and the policy is governed by the laws of the state where the individual risk at issue is located. Cecere v. Aetna Ins. Co., 145 N.H. 660, 664 (2001) (quoting Ellis, 129 N.H. at 331); accord Restatement (Second) of Conflict of Laws § 193 cmt. f (noting that "multiple risk policies which insure against risks located in several states" may be treated "as if it involved [multiple] policies, each insuring an individual risk").

Rodriguez Morel asserts that the EPL policy is a multiple risk policy that should be interpreted according to the law of New Hampshire, the place where the risk giving rise to her claims was located. Travelers asserts that the policy is not a multiple risk policy because "there is no indication that the [policy] extended to risks outside of Ohio." Doc. 24 at 2. I agree with Rodriguez Morel.

5

The EPL policy expressly states that it "applies anywhere in the world" and covers losses resulting from "any Employment Claim . . . for a Wrongful Employment Practice" against Mammoth or its employees. Doc. 20-2 at 28, 69. Its coverage is not limited to employment claims brought under Ohio law, but rather encompasses claims brought under the law of any state. See, e.g., id. at 69 (defining "discrimination" to include a "violation of any employment discrimination law"); id. at 73 (defining a "third party wrongful act" to include a "violation of any federal, state, or local law or statute or any common law prohibiting any kind of discrimination"); id. at 14 (defining "wage and hour law" to include "any federal, state, or local law or regulation governing or related to the payment of wages"). The insured risk, therefore, could arise in any state where Mammoth had employees. According to the complaint, Mammoth employed individuals in at least three states: Ohio, New Hampshire, and California. Doc. 1-1 at 43. Thus, the EPL policy covers risks in multiple states and is therefore a multiple risk policy that must be controlled by the law of New Hampshire, where the individual risk at issue was located. See Raymond v. Monsanto Co., 329 F. Supp. 247, 249 (D.N.H. 1971) ("This policy was clearly intended to cover liability for personal injuries wherever such injuries were incurred throughout the United States and is, therefore, a multiple risk policy."); Northland Cas. Co. v. HBE Corp., 145 F. Supp. 2d 1310, 1314 (M.D. Fla. 2001) (finding that a general liability policy

6

covering a hotel corporation that operated hotels in multiple states was a multiple risk policy); cf. Auto Europe, LLC, 321 F.3d at 65 ("a policy covering numerous related companies located in different states would be deemed a multiple risk policy that . . . would be viewed in a particular case as if a separate policy had been issued to cover each entity.").

      This case is thus comparable to Ellis v. Royal Insurance Co., where the New Hampshire Supreme Court applied its own state law to an insurance policy that covered multiple automobiles located across various states. 129 N.H. at 331-332. The court noted that, although the policy was held by a New Jersey corporation, "the fact remain[ed] that the policy covered a multitude of risks located in various States" and therefore constituted a multiple risk policy. Id. at 332. Thus, the policy was governed by the law of New Hampshire, where the automobile at the center of the plaintiff's claims was located. Id.

      Travelers' attempts to distinguish the present case from Ellis are unavailing. Travelers notes, first, that the policy in Ellis specifically covered automobiles located in New Hampshire, whereas the EPL policy at issue here did not "specifically insure[] a risk located in New Hampshire." Doc. 24 at 2. But, as I explained, the plain language of the EPL policy provides that it covers risks arising out of Mammoth's employment practices wherever they may occur. That the policy did not specifically identify Mammoth's New

7

Hampshire branch office does not mean that it did not cover its operations in this state. See Westchester Fire Ins. Co. v. G. Heileman Brewing Co., 747 N.E.2d 955, 964 (Ill. App. Ct. 2001) (noting that a commercial liability insurance policy that failed to "list the individual states where [the insured] operated" was nonetheless a multiple risk policy because "the insured risk could occur in any state where [the insured] conducted its business" and the policy "provide[d] coverage without regard to location of risks").

Travelers next asserts that Ellis is distinguishable because the policy in that case included an "endorsement providing for limited uninsured motorist coverage in New Hampshire," whereas the policy here does not reference New Hampshire. Doc. 24 at 2 (quoting Ellis, 129 N.H. at 332). But the court's conclusion in Ellis did not turn on the policy's New Hampshire-specific endorsement or its reference to New Hampshire. Rather, the court's holding was explicitly premised on the fact that the insured's "business and insurance coverage extend[ed] to a number of States, including New Hampshire." Ellis, 129 N.H. at 332.

While a specific reference to a state may be one way to indicate that a policy's coverage extends to that state, it is by no means the only way. For example, in Raymond v. Monsanto Co., this court concluded that a personal injury liability insurance policy was a multiple risk policy because it covered a product that was sold across the United States. 329 F. Supp. at 249-250

8

(cited favorably in Ellis, 129 N.H. at 332). Although the policy did not appear to include any specific reference to New Hampshire, the court reasoned that the policy "was clearly intended to cover liability for personal injuries wherever such injuries were incurred throughout the United States and [was], therefore, a multiple risk policy" subject to the law of New Hampshire, where the accident giving rise to the underlying action occurred. Id. at 249.

Because the EPL policy at issue in this case clearly covers risks arising out of Mammoth's employment operations in New Hampshire, it is of no consequence that the policy does not specifically reference New Hampshire. The fact remains that it is a multiple risk policy to be governed by the law of state where the relevant risk was located. Accordingly, I evaluate the merits of the parties claims under New Hampshire law.

**B.    Standing**

Travelers asserts that Rodriguez Morel lacks standing to bring a declaratory judgment action against it.[3] New Hampshire's declaratory judgment statute, N.H. Rev. Stat. Ann. § 491:22, permits "[a]ny person

---

3    To be clear, Travelers does not contest that Rodriguez Morel has Article III standing, and Rodriguez Morel clearly satisfies the constitutional requirements for standing. See TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (noting that a plaintiff has constitutional standing where she demonstrates "a concrete and particularized injury caused by the defendant and redressable by the court"). Travelers' only contention is that Rodriguez Morel does not have statutory standing under § 491:22.

9

claiming a present legal or equitable right or title" to bring a declaratory judgment action against "any person claiming adversely to such right or title." To establish standing under § 491:22, a "party must show that some right of the party has been impaired or prejudiced." Carlson v. Latvian Lutheran Exile Church of Bos. & Vicinity Patrons, Inc., 170 N.H. 299, 303 (2017). This requires the party to demonstrate that "the facts are sufficiently complete, mature, proximate and ripe to place the party in gear with the party's adversary, and thus to warrant the grant of judicial relief." Id. (quoting Duncan v. State, 166 N.H. 630, 645 (2014)).

Travelers argues that Rodriguez Morel cannot claim a "present legal or equitable right" within the meaning of § 491:22 because (1) New Hampshire does not have a direct action statute permitting an injured party to proceed directly against a wrongdoer's insurer; and (2) Rodriguez Morel is not a third-party beneficiary of the insurance contract. Neither argument has merit.

Travelers' assertion that Rodriguez Morel cannot pursue a declaratory judgment action in the absence of a direct action statute ignores the critical distinction between direct actions and declaratory judgment actions. A direct action is "a suit by an injured party against an insurer, in which the plaintiff looks to hold the insurer liable for the actions of the insured." Currier v. Newport Lodge No. 1236, 2022 DNH 011, 2022 WL 279639, at *4 (D.N.H. Jan. 31, 2022). An insurance declaratory judgment action, in contrast, "seeks

a determination of whether coverage exists under certain insurance policies."
Id. at *5.

Declaratory judgment actions and direct actions are entirely distinct causes of action that seek "fundamentally different relief" and impose "different jurisdictional prerequisites." Id. at *5 & n.11. Thus, the right to bring a declaratory judgment action exists independently of the right to bring a direct action. Id. at *5 (concluding that a plaintiff could pursue a declaratory judgment action against a wrongdoer's insurer, even though it could not bring a direct action). Because this case is a declaratory judgment action rather than a direct action, it is irrelevant that New Hampshire does not have a direct action statute. See Doc. 1-1 at 5 (stating that Rodriguez Morel is "seeking a declaration under RSA 491:22 that [Travelers] must defend against and pay for losses stemming from her 'employment claims' against [Mammoth]"); id. at 14-15 (petitioning "for declaratory judgment" that "Travelers is obligated to defend against and pay for all losses resulting from Ms. Rodriguez Morel' 'Employment Claims'").

Travelers' argument that Rodriguez Morel lacks standing because she is not a third-party beneficiary to the insurance contract fares no better. Under New Hampshire law, a "third-party beneficiary relationship exists if . . . the contract calls for a performance by the promisor, which will satisfy some obligation owed by the promisee to the third party." Brooks v. Tr. of

Dartmouth Coll., 161 N.H. 685, 697 (2011). The Restatement (Second) of Contracts explains that this test is satisfied where a promisor agrees to satisfy another's debts by directly paying the debtor's creditors. Restatement (Second) of Contracts § 302 cmt. b, illus. 3 (relied on in Brooks, 161 N.H. at 697); see also Dartmouth Hitchcock Med. Ctr. v. Cross Country Travcorps, Inc., 2010 DNH 102, 2010 WL 2407375, at *5 (D.N.H. June 10, 2010) (noting the New Hampshire Supreme Court's reliance on the Restatement (Second) of Contracts when determining third-party beneficiary rights).

Here, the EPL policy provides that Travelers will "pay on behalf of [Mammoth]" any "money which [Mammoth] is legally obligated to pay as a result of a Claim" covered by the policy. Doc. 20-2 at 69, 71. Because the policy requires Travelers to satisfy debts owed by Mammoth to its judgment creditors, Mammoth's judgment creditors are third-party beneficiaries. Thus, Rodriguez Morel became third-party beneficiary with standing to maintain a declaratory judgment action against Travelers by virtue of obtaining a final judgment against Mammoth.

Applying similar reasoning, a number of courts have concluded that an injured party becomes a third-party beneficiary to an insured's liability insurance contract upon obtaining a final judgment against the insured. See, e.g., Morales v. Zenith Ins. Co., 714 F.3d 1220, 1232 (11th Cir. 2013) (applying Florida law); CX Reinsurance Co. Ltd. v. Johnson, 282 A.3d 126,

146 (Md. 2022); State Farm Cnty. Mut. Ins. Co. of Tex. v. Ollis, 768 S.W.2d 722, 723 (Tex. 1989); Zahn v. Gen. Ins. Co. of Am., 611 P.2d 645, 647 (Okla. 1980); Reagor v. Travelers Ins. Co., 415 N.E.2d 512, 514 (Ill. App. Ct. 1980); see also Allan Windt, 2 Insurance Claims & Disputes § 9:16 (6th ed. 2023); Jordan Plitt et. al., 17 Couch on Insurance § 242:24 (3d ed. 2023). Although the New Hampshire Supreme Court has not directly addressed the issue, its case law suggests that it would recognize that judgment creditors are third-party beneficiaries of liability insurance contracts. Without discussing the question of third-party beneficiary status, the court in Newell v. Markel Corp. nonetheless affirmed a finding in favor of a plaintiff who sued his tortfeasor's insurer for breach of contract on the theory that he became a third-party beneficiary to the insurance policy by obtaining a default judgment against the tortfeasor. 169 N.H. 193, 194 (2016).

Even Milestone Engineering & Construction, Inc. v. Fire Equipment, Inc.—the case primarily relied on by Travelers—endorses the theory that a judgment creditor is a third-party beneficiary of a liability insurance policy. 2013 DNH 171, 2013 WL 65533143, at *2 (D.N.H. Dec. 13, 2013). Travelers cites to Milestone for its conclusion that the plaintiff, a tort victim, was not a third-party beneficiary based on the language of the relevant insurance policy. Id. But, because the plaintiff in that case had not yet obtained a final judgment against the insured, Milestone does not stand for the proposition

13

that judgment creditors are not third-party beneficiaries. See id. at *1. To the contrary, the court explicitly recognized that third-party beneficiary status may be achieved by virtue of "an explicit admission of [the insured's] liability or a judicial determination of the same." Id. at *2 (quoting Shaheen v. Preferred Mut. Ins. Co., 668 F. Supp. 716, 718 (D.N.H. 1987)) (alterations in original). Relying on this principle, the court ultimately concluded that the plaintiff was a third-party beneficiary "on the alternative ground that [the insurer] conceded [the insured's] liability." Id. Milestone therefore undermines, rather than supports, Travelers' argument.

For these reasons, I conclude that Rodriguez Morel, as a judgment creditor, has standing to bring the present declaratory judgment action against Travelers.

C.   **Statute of Limitations**

Travelers next argues that the complaint should be dismissed as untimely because it falls outside the declaratory judgment statute's six-month statute of limitations. Section 491:22 provides that "[n]o petition shall be maintained under this section to determine coverage of an insurance policy unless it is filed within 6 months after the filing of the writ, complaint, or other pleading initiating the action which gives rise to the question." The six-month statute of limitations does not apply, however, (1) under the "late discovery exception" if either "the facts giving rise to such coverage dispute

14

are not known to, or reasonably discoverable by, the insurer" until after the six-month period or (2) under the "misfortune exception" if a court finds that the failure to file was "the result of accident, mistake or misfortune and not due to neglect." N.H. Rev. Stat. Ann. § 491:22, III; see Quincy Mut. Fire Ins. Co. v. Croteau, 127 N.H. 676, 678 (1986).

Travelers asserts that Rodriguez Morel's claim is time-barred because it was filed more than a year after she initiated the underlying action against Mammoth. Rodriguez Morel does not contest that the instant complaint was filed outside the six-month limitation period. Instead, she asserts that her claim is exempt from the statute of limitations under both the late discovery exception and the misfortune exception.

The statute of limitations is an affirmative defense on which a defendant bears the burden of proof. Riso v. Riso, 172 N.H. 173, 178-179 (2019); see Fed. R. Civ. P. 8(c)(1). Under the Federal Rules of Civil Procedure, "a complaint need not anticipate or overcome affirmative defenses." Schmidt v. Skolas, 770 F.3d 241, 248 (3d Cir. 2014). Accordingly, dismissal under Rule 12(b)(6) based on an affirmative defense is inappropriate unless the relevant facts "(1) [are] 'definitively ascertainable from the complaint and other allowable sources of information,' and (2) 'suffice to establish the affirmative defense with certitude.'" Gray v. Evercore Restructuring LLC, 544 F.3d 320, 324 (1st Cir. 2008) (quoting Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir.

15

2006)). In other words, before a motion to dismiss can be granted on the basis of an affirmative defense, the plaintiff must "affirmatively plead himself out of court" by alleging "everything necessary to satisfy the affirmative defense." Hyson USA, Inc. v. Hyson 2U, Ltd., 821 F.3d 936, 939 (7th Cir. 2016) (cleaned up).

Applying this principle to motions to dismiss for failure to comply with the statute of limitations, courts have regularly held that even a facially untimely case should proceed if the allegations in the complaint leave open the possibility that an exception to the statute of limitations could apply. See, e.g., Schmidt, 770 F.3d at 251-252 (holding that a district court erred in granting a motion to dismiss on statute of limitations grounds, despite the lower court's finding that the plaintiff did not adequately allege that an exception to the statute of limitations applied, because "a plaintiff is not required to plead, in the complaint, facts sufficient to overcome an affirmative defense"); Supermail Cargo Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995) (quoting Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)) ("A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'"). Accordingly, courts generally do not grant motions to dismiss on statute of limitations grounds unless either an exception to the

16

statute is unavailable to the plaintiff as a matter of law, see, e.g., Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010); Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 323-324 (1st Cir. 2008); or the factual allegations in the complaint are incompatible with the facts necessary to establish such an exception, see, e.g., Brawner v. Educ. Mgmt. Corp., 513 F. App'x 148, 151 (3d Cir. 2013) (per curiam).

Such is not the case here. Nothing in the complaint indicates that Rodriguez Morel could not ultimately establish that her claim fits within one or more of the exceptions to the six-month statute of limitations. Despite Travelers' argument to the contrary, the New Hampshire Supreme Court has held that the late discovery exception can be invoked by plaintiffs as well as insurers. Singer v. Travelers Indem. Co., 120 N.H. 879, 881 (1980) (holding that a plaintiff could bring a declaratory judgment action under § 491:22 past the expiration of the six-month statute of limitations because "[o]nce it is determined that [the late discovery exception] is applicable, the six-month prohibition does not apply to either party"). And, because the complaint asserts that Travelers did not render its coverage decision until February 2022, the pleadings leave open the possibility that Rodriguez Morel filed her complaint within six months of the date that Travelers learned of the facts that gave rise to the coverage dispute. Doc. 1-1 at 101. The complaint similarly leaves open the possibility that the misfortune exception could

apply. Although not directly addressed by the pleadings, the allegations in the complaint do not in any way undermine the assertion that the late filing was due to misfortune rather than neglect. Cf. Schmidt, 770 F.3d at 252 (concluding that a district court erred in dismissing claims for failure to comply with the statute of limitations where the plaintiff could claim the benefit of the discovery rule because "nothing in [the] complaint clearly suggests that [the plaintiff] did in fact have knowledge of the full scope of his injury" prior to the time of filing). Thus, dismissal based on the running of the statute of limitations is not appropriate at this time.

## IV.  CONCLUSION

For the foregoing reasons, Travelers' motion to dismiss (Doc. 20) is denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

February 2, 2024

cc:   Counsel of Record