# Exhibit "A"

TRAVELERS

**August 7, 2020**

**CREDIT ADJUSTMENTS, INC**
**1250 GENEVA BLVD**
**DEFIANCE, OH 43512-4303**

Re: Important Information about **Claims Information Line**

Dear **CREDIT ADJUSTMENTS, INC**

Travelers Bond & Specialty Insurance is pleased to announce its **1-800-842-8496** Claims Information Line. This line is designed to provide insureds with an additional resource on how to report claims or those circumstances or events which may become claims.

Policyholders will be able to obtain assistance on the following topics from the Claims Information Line:

- The information that needs to be included with the claim notice
- The address, electronic mail address and/or facsimile number to which the policyholder can send claims related information
- Get questions on the claim process answered

The Declarations Page of your policy sets forth where you should report claims and claims related information. You should also review the policy's reporting requirements to be aware of how much time you have to report a claim to Travelers. The sooner Travelers is notified, the sooner we can become involved in the process and offer assistance to our policyholder. A delay in reporting may result in all or part of a matter to fall outside of the coverage provided.

The Claims Information Line should streamline the claim reporting process and allow policyholders to ask questions on what information is needed as well as other questions which will assist them in working with Travelers. While the Claims Information Line provides policyholders a valuable resource by answering questions and providing information, the line does not replace the reporting requirements contained in the Policy.

We hope this improvement to customer service is something our policyholders will find helps them understand the claim process and provides them a resource for reporting.

Best regards,

**Jeffrey A Farman**


©2009 The Travelers Companies, Inc. All Rights Reserved

TRAVELERS

One Tower Square
Hartford, CT 06183

08/07/2020

CREDIT ADJUSTMENTS, INC

1250 GENEVA BLVD
DEFIANCE, OH 43512-4303

**RE: Risk Management PLUS+ Online® from Travelers Bond & Specialty Insurance** (www.rmplusonline.com)

As a Travelers Bond & Specialty Insured you receive risk management services, at no additional cost, to help protect you and your business.

Risk Management PLUS+ Online, is a robust website to assist you in the mitigation of risk relative to employment practices, directors and officers, fiduciary liability, cyber, crime, kidnap & ransom, and identity fraud exposures.

Highlights of Risk Management PLUS+ Online include:

- Thousands of articles on a variety of risk management topics
- Topical webinars and podcasts on current issues
- Checklists to assist in managing risk
- Web based training
- Model Employee Handbook, including policies and forms for downloading or printing that reduce risks in the workplace.

The following Risk Management PLUS+ Online Registration Instructions contain easy, step-by-step instructions to register for this valuable tool. For more information, call 1-888-712-7667 and ask for your Risk Management PLUS+ Online representative. It's that simple.

Thank you for choosing Travelers Bond & Specialty Insurance for your insurance needs. Travelers is a market leader in providing management liability and crime coverages that are specifically customized for your organization.

Instructions for Registration & Orientation to Risk Management PLUS+ Online®

*Registration for Site Administrators:*
The Site Administrator is the person in your organization who will oversee Risk Management PLUS+ Online for the organization. The Site Administrator is typically a person who leads human resources and/or financial functions or is responsible for legal matters pertaining to personnel. The Site Administrator may add other Site Administrators later to assist with their responsibilities. To register:

1. Go to www.rmplusonline.com.
2. In the Sign-In box, click **Register**.
3. Enter the password/passcode: TRVP110000
4. Fill in the Registration Information and click **Submit**.
5. Your organization is registered, and you are registered as Site Administrator.

*Learning to Navigate the Site:*
1. Go to www.rmplusonline.com. On each page, you will see a box outlined in blue that contains the instructions for use of that page.
2. If you have any questions, just click on **Contact Us** on the front page. Enter your question in the form provided, and the System Administrator will get back to you quickly with the answer.
3. You can also schedule a live walk-through of the site by sending a request for a walk-through via the contact link on the front page.


© 2017 The Travelers Indemnity Company. All rights reserved.

This notice provides no coverage, nor does it change any policy terms. To determine the scope of coverage and the insured's rights and duties under the policy, read the entire policy carefully. For more information about the content of this notice, the insured should contact their agent or broker. If there is any conflict between the policy and this notice, the terms of the policy prevail.

# Independent Agent And Broker Compensation Notice

For information on how Travelers compensates independent agents, brokers, or other insurance producers, please visit this website: www.travelers.com/w3c/legal/Producer_Compensation_Disclosure.html.

Or write or call:

**Travelers, Agency Compensation**
**One Tower Square**
**Hartford, Connecticut 06183**

**(866) 904.8348**


© 2019 The Travelers Indemnity Company. All rights reserved.

This notice provides no coverage, nor does it change any policy terms. To determine the scope of coverage and the insured's rights and duties under the policy, read the entire policy carefully. For more information about the content of this notice, the insured should contact their agent or broker. If there is any conflict between the policy and this notice, the terms of the policy prevail.

# Ohio Claim Information Notice

If within 60 days of the date of termination of this policy the insured requests claim information, Travelers will provide such information to the insured within 45 days of the date of request.


© 2019 The Travelers Indemnity Company. All rights reserved.

TRAVELERS Wrap+®

***PRIVATE COMPANY DIRECTORS AND OFFICERS LIABILITY DECLARATIONS***

POLICY NO. **107298906**

**Travelers Casualty and Surety Company of America**
**Hartford, Connecticut**
(A Stock Insurance Company, herein called the Company)

**THE LIABILITY COVERAGES ARE WRITTEN ON A CLAIMS-MADE BASIS. THE LIABILITY COVERAGES COVER ONLY CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY SETTLEMENTS OR JUDGMENTS WILL BE REDUCED BY DEFENSE EXPENSES, AND DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION. THE COMPANY HAS NO DUTY TO DEFEND ANY CLAIM UNLESS DUTY-TO-DEFEND COVERAGE HAS BEEN SPECIFICALLY PROVIDED HEREIN.**

| | |
|---|---|
| **ITEM 1** | **NAMED INSURED:**<br>**CREDIT ADJUSTMENTS, INC**<br><br>D/B/A:<br><br>Principal Address:<br>**1250 GENEVA BLVD**<br>**DEFIANCE, OH 43512-4303** |
| **ITEM 2** | **POLICY PERIOD:**<br>Inception Date: **August 5, 2020** Expiration Date: **August 5, 2021**<br>12:01 A.M. standard time both dates at the Principal Address stated in ITEM 1. |
| **ITEM 3** | **ALL NOTICES OF CLAIM OR LOSS MUST BE SENT TO THE COMPANY BY EMAIL, FACSIMILE OR MAIL AS SET FORTH BELOW:**<br>**Email: BSIclaims@travelers.com**<br>**Fax: (888) 460-6622**<br><br>**Mail: Travelers Bond & Specialty Insurance Claim**<br>**385 Washington St. – Mail Code 9275-NB03F**<br>**St Paul, MN 55102** |
| **ITEM 4** | **COVERAGE INCLUDED AS OF THE INCEPTION DATE IN ITEM 2:**<br>Private Company Directors and Officers Liability |


©2009 The Travelers Companies, Inc. All Rights Reserved

| | |
|---|---|
| **ITEM 5** | Only those coverage features marked "☒ Applicable" are included in this policy. |

**PRIVATE COMPANY DIRECTORS AND OFFICERS LIABILITY**

| | | |
|---|---|---|
| **Limit of Liability:** | **$2,000,000** | for all **Claims** |
| **Supplemental Personal Indemnification Coverage:** | ☒ Applicable | ☐ Not Applicable |
| **Supplemental Personal Indemnification Limit of Liability:** | **$1,000,000** | for all **Claims** |
| **Additional Defense Coverage:** | ☐ Applicable | ☒ Not Applicable |
| **Additional Defense Limit of Liability:** | **Not Covered** | for all **Claims** |
| **Investigation Expense Limit of Liability:** | **$250,000** | for all **Claims** |
| **Retention:** | | |
| | **$0** | for each **Claim** under Insuring Agreement A. |
| | **$10,000** | for each **Claim** under Insuring Agreement B. |
| | **$10,000** | for each **Claim** under Insuring Agreement C. |
| **Prior and Pending Proceeding Date:** | **August 5, 2020** | |
| **Continuity Date:** | **August 5, 2020** | |

**ITEM 6** **PREMIUM FOR THE POLICY PERIOD:**

| | |
|---|---|
| [redacted] | Policy Premium |
| **N/A** | Annual Installment Premium |

**ITEM 7** **TYPE OF LIABILITY COVERAGE:**

☐ Reimbursement

☒ Duty-to-Defend

Only the type of liability coverage marked "☒" is included in this policy.

**ITEM 8** **LIABILITY COVERAGE EXTENDED REPORTING PERIOD:**

| | |
|---|---|
| Additional Premium Percentage: | **75 %** |
| Additional Months: | **12** |

(If exercised in accordance with section **III. CONDITIONS, O. EXTENDED REPORTING PERIOD** of the Liability Coverage Terms and Conditions)


©2009 The Travelers Companies, Inc. All Rights Reserved

| | |
|---|---|
| **ITEM 9** | **LIABILITY COVERAGE RUN-OFF EXTENDED REPORTING PERIOD:**<br>Additional Premium Percentage: **Not Applicable**<br>Additional Months: **Not Applicable**<br>(If exercised in accordance with section **III. CONDITIONS, K. CHANGE OF CONTROL** of the Liability Coverage Terms and Conditions) |
| **ITEM 10** | **ANNUAL REINSTATEMENT OF THE LIABILITY COVERAGE LIMIT OF LIABILITY:**<br>☐ Applicable<br>☒ Not Applicable<br>Only those coverage features marked "☒ Applicable" are included in this policy. |
| **ITEM 11** | **FORMS AND ENDORSEMENTS ATTACHED AT ISSUANCE:**<br>**ACF-7006-0511; AFE-19029-0719; AFE-19030-0719; LIA-3001-0109; LIA-7097-0109; LIA-10001-0610; LIA-19002-1111; LIA-19030-0712; LIA-19097-0315; LIA-19109-0415; LIA-19137-0517; LIA-4023-0218; PDO-3001-0109; PDO-7061-0109; PDO-19004-0512; PDO-19009-0612; PDO-19032-1112; PDO-7064-1013; PDO-19052-0314; PDO-19018-0517; PDO-19006-0517; PDO-19053-0119; LIA-7116-0109; LIA-7313-0109; LIA-7330-0109; LIA-5034-1107** |

**THE DECLARATIONS, THE APPLICATION, THE LIABILITY COVERAGE TERMS AND CONDITIONS, THIS LIABILITY COVERAGE, AND ANY ENDORSEMENTS ATTACHED THERETO, CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE COMPANY AND THE INSURED.**

____________________________
Countersigned By
IN WITNESS WHEREOF, the Company has caused this policy to be signed by its authorized officers.

Thomas M. Kunkel
Executive Vice President

Wendy C. Skjerven
Corporate Secretary


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REMOVAL OF SHORT-RATE CANCELLATION ENDORSEMENT

This endorsement changes the following:
**Private Company Directors and Officers Liability**

**It is agreed that:**

In any cancellation, termination or non-renewal provision, any reference to computing a premium on a short rate basis is replaced with a reference to computing such premium on a pro-rata basis.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


© 2011 The Travelers Indemnity Company. All rights reserved.

This endorsement modifies any Coverage Part or Coverage Form included in this Policy that is subject to the federal Terrorism Risk Insurance Act of 2002 as amended.

# Cap On Losses From Certified Acts Of Terrorism Endorsement

The following is added to this Policy. This provision can limit coverage for any loss arising out of a *Certified Act Of Terrorism* if such loss is otherwise covered by this Policy. This provision does not apply if and to the extent that coverage for the loss is excluded or limited by an exclusion or other coverage limitation for losses arising out of *Certified Acts Of Terrorism* in another endorsement to this policy.

If aggregate insured losses attributable to *Certified Acts Of Terrorism* exceed $100 billion in a calendar year and the Insurer has met its insurer deductible under *TRIA*, the Insurer will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

*Certified Act Of Terrorism* means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of *TRIA*, to be an act of terrorism pursuant to *TRIA*. The criteria contained in *TRIA* for a *Certified Act Of Terrorism* include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and
2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

*TRIA* means the federal Terrorism Risk Insurance Act of 2002 as amended.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2019 The Travelers Indemnity Company. All rights reserved.

This endorsement modifies any Coverage Part or Coverage Form included in this Policy that is subject to the federal Terrorism Risk Insurance Act of 2002 as amended.

# Federal Terrorism Risk Insurance Act Disclosure Endorsement

The federal Terrorism Risk Insurance Act of 2002 as amended ("TRIA"), establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in TRIA) caused by "Acts Of Terrorism" (as defined in TRIA). Act Of Terrorism is defined in Section 102(1) of TRIA to mean any act that is certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for such Insured Losses is established by TRIA and is a percentage of the amount of such Insured Losses in excess of each Insurer's "Insurer Deductible" (as defined in TRIA), subject to the "Program Trigger" (as defined in TRIA). Through 2020, that percentage is established by TRIA as follows:

- 85% with respect to such Insured Losses occurring in calendar year 2015.
- 84% with respect to such Insured Losses occurring in calendar year 2016.
- 83% with respect to such Insured Losses occurring in calendar year 2017.
- 82% with respect to such Insured Losses occurring in calendar year 2018.
- 81% with respect to such Insured Losses occurring in calendar year 2019.
- 80% with respect to such Insured Losses occurring in calendar year 2020.

In no event, however, will the Federal Government be required to pay any portion of the amount of such Insured Losses occurring in a calendar year that in the aggregate exceeds $100 billion, nor will any Insurer be required to pay any portion of such amount provided that such Insurer has met its Insurer Deductible. Therefore, if such Insured Losses occurring in a calendar year exceed $100 billion in the aggregate, the amount of any payments by the Federal Government and any coverage provided by this policy for losses caused by Acts Of Terrorism may be reduced.

For each coverage provided by this policy that applies to such Insured Losses, the charge for such Insured Losses is no more than one percent of your premium, and does not include any charge for the portion of such Insured Losses covered by the Federal Government under TRIA. Please note that no separate additional premium charge has been made for the terrorism coverage required by TRIA. The premium charge that is allocable to such coverage is inseparable from and imbedded in your overall premium.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2019 The Travelers Indemnity Company. All rights reserved.

TRAVELERS

**_LIABILITY COVERAGE TERMS AND CONDITIONS_**

***THIS IS A CLAIMS-MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE COVERAGE LIMITS. PLEASE READ THE POLICY CAREFULLY.***

## *CONSIDERATION CLAUSE*

IN CONSIDERATION of the payment of the premium, in reliance on the statements in the **Application,** subject to the Declarations, and pursuant to all the terms, conditions, exclusions and limitations of this **Policy**, the Company and the Insureds agree as follows:

## *I. GENERAL*

These **Liability Coverage** Terms and Conditions apply to all **Liability Coverages.** Unless otherwise stated to the contrary, the terms and conditions of each **Liability Coverage** apply only to that particular **Liability Coverage**. If any provision in these Liability Coverage Terms and Conditions is inconsistent or in conflict with the terms and conditions of any particular **Liability Coverage**, such **Liability Coverage's** terms, conditions, and limitations will control for purposes of that **Liability Coverage**.

## *II. DEFINITIONS*

Wherever appearing in this **Liability Policy**, the following words and phrases appearing in bold type will have the meanings set forth in this Section II. DEFINITIONS:

**A.** ***Additional Defense Limit of Liability*** means the amount set forth in ITEM 5 of the Declarations for each applicable **Liability Coverage**. If "*Not Applicable*" is shown as the amount of any **Liability Coverage's Additional Defense Limit of Liability**, then any reference to the **Additional Defense Limit of Liability** will be deemed to be deleted from such **Liability Coverage**.

**B.** ***Annual Reinstatement of the Liability Coverage Limit of Liability*** means, if included in ITEM 10 of the Declarations, the reinstatement of each applicable **Liability Coverage Limit of Liability** or, if applicable, the **Liability Coverage Shared Limit of Liability** for each applicable **Liability Coverage** for each **Policy Year** during the **Policy Period**.

**C.** ***Application*** means the application deemed to be attached to and forming a part of this **Liability Policy**, including any materials submitted and statements made in connection with that application. If the **Application** uses terms or phrases that differ from the terms defined in this **Liability Policy**, no inconsistency between any term or phrase used in the **Application** and any term defined in this **Liability Policy** will waive or change any of the terms, conditions and limitations of this **Liability Policy**.

**D.** ***Change of Control*** means:

1. the acquisition of the **Named Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or
2. the obtaining by any person, entity or affiliated group of persons or entities the right to elect, appoint or designate more than fifty percent (50%) of the board of directors, board of trustees, board of managers, or functional equivalent thereof or to exercise a majority control of the board of directors, board of trustees, board of managers, or a functional equivalent thereof of the **Named Insured**.

**E.** ***Claim*** has the meaning set forth in the applicable **Liability Coverage**.


©2009 The Travelers Companies, Inc. All Rights Reserved

F. ***Defense Expenses*** means reasonable and necessary legal fees and expenses incurred by the Company or the **Insured**, with the Company's consent, in the investigation, defense, settlement and appeal of a **Claim**, including but not limited to, cost of expert consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds (without the obligation to furnish such bonds) regarding such **Claim**; provided, that **Defense Expenses** will not include the salaries, wages, benefits or overhead of, or paid to, any **Insured** or any employee of such **Insured**.

G. ***Executive Officer*** has the meaning set forth in the applicable **Liability Coverage**.

H. ***Financial Insolvency*** means, with respect to the **Insured Organization** or any **Outside Entity**, the appointment of a receiver, conservator, liquidator, trustee, or similar official; or the inability of the **Insured Organization** or **Outside Entity** financially to indemnify the **Insured Persons**.

I. ***Foreign Parent Corporation*** means any entity incorporated outside the United States, which owns more than fifty percent (50%) of the outstanding securities or voting rights representing the right to vote for the election of, or to appoint the **Named Insured's** board of directors, board of trustees or board of managers, or to exercise a majority control of the board of directors, board of trustees or board of managers of the **Named Insured**.

J. ***Insured*** has the meaning set forth in the applicable **Liability Coverage**.

K. ***Insured Organization*** has the meaning set forth in the applicable **Liability Coverage**.

L. ***Insured Person*** has the meaning set forth in the applicable **Liability Coverage**.

M. ***Liability Coverage*** means, individually or collectively, the **Liability Coverages** that have been purchased, as indicated in ITEM 4 of the Declarations.

N. **Liability Coverage Limit of Liability** means the amount set forth in ITEM 5 of the Declarations for each applicable **Liability Coverage**.

O. ***Liability Coverage Shared Limit of Liability*** means the amount set forth in ITEM 12 of the Declarations. If "*Not Applicable*" is shown in ITEM 12 of the Declarations or ITEM 4 of the Declarations indicates that only one **Liability Coverage** is included in this **Liability Policy**, any reference to either the **Liability Coverage Shared Limit of Liability** or ITEM 12 of the Declarations will be deemed to be deleted from this **Liability Policy**.

P. ***Liability Policy*** means, collectively, the Declarations, the **Application**, the Liability Coverage Terms and Conditions, each purchased **Liability Coverage**, and any endorsements attached thereto.

Q. ***LLC Manager*** means any natural person who was, is or becomes a manager, member of the board of managers, or a functionally equivalent executive of an **Insured Organization** that is a limited liability company.

R. ***Loss*** has the meaning set forth in the applicable **Liability Coverage**.

S. ***Named Insured*** means any entity named in ITEM 1 of the Declarations.

T. ***Policy Period*** means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations. In no event will the **Policy Period** continue past the effective date of cancellation or termination of this **Liability Policy**.

U. ***Policy Year*** means:

1. the period of one year following the Inception Date set forth in ITEM 2 of the Declarations or any anniversary thereof;
2. the time between the Inception Date set forth in ITEM 2 of the Declarations or any anniversary thereof and the effective date of cancellation or termination of this **Liability Policy** if such time period is less than one year;


©2009 The Travelers Companies, Inc. All Rights Reserved

3. with respect to a **Liability Coverage** added to this **Liability Policy** after the Inception Date set forth in ITEM 2, the time between the inception date of such **Liability Coverage** and any anniversary of this **Liability Policy** if the time between the inception date of such **Liability Coverage** and any anniversary of this **Liability Policy** is less than one year; and
4. with respect to a **Liability Coverage** added to this **Liability Policy** after the Inception Date set forth in ITEM 2, the time between the inception date of such **Liability Coverage** and the effective date or cancellation or termination of this **Liability Policy,** if such time is less than one year.

**V.** ***Pollutant*** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**W.** ***Potential Claim*** means any **Wrongful Act** that may subsequently give rise to a **Claim**.

**X.** ***Related Wrongful Act*** means all **Wrongful Acts** that have as a common nexus, or are causally connected by reason of, any fact, circumstance, situation, event or decision.

**Y.** ***Subsidiary*** has the meaning set forth in the applicable **Liability Coverage**.

**Z.** ***Wage and Hour Law*** means any federal, state, or local law or regulation governing or related to the payment of wages including the payment of overtime, on-call time, minimum wages, meals, rest breaks or the classification of employees for the purpose of determining employees' eligibility for compensation under such law(s).

**AA.** ***Wrongful Act*** has the meaning set forth in the applicable **Liability Coverage**.

## *III. CONDITIONS*

### A. TERRITORY

This **Liability Policy** applies to **Claims** made or **Wrongful Acts** occurring anywhere in the world.

### B. RETENTION

The **Insured** shall bear uninsured at its own risk the amount of any applicable Retention, which amount must be paid in satisfaction of **Loss.**

If any **Claim** gives rise to coverage under a single **Liability Coverage**, the Company has no obligation to pay **Loss**, including **Defense Expenses**, until the applicable Retention amount set forth in ITEM 5 of the Declarations has been paid by the **Insured**.

If any **Claim** is subject to different Retentions under a single **Liability Coverage**, the applicable Retentions will be applied separately to each part of such **Claim**, but the sum of such Retentions will not exceed the largest applicable Retention under such **Liability Coverage**.

If any **Claim** gives rise to coverage under two or more **Liability Coverages**, the Company shall have no obligation to pay **Loss**, including **Defense Expenses**, until the largest Retention that is applicable to such **Claim** under such **Liability Coverages** has been paid by the **Insured**.

No Retention will apply to an **Insured Person** if indemnification by the **Insured Organization** is not permitted by law or if the **Insured Organization** is unable to make such indemnification solely by reason of its **Financial Insolvency**. The **Insured Organization** will be conclusively deemed to have indemnified all **Insured Persons** to the extent that the **Insured Organization** is permitted or required to indemnify them pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Insured Organization**.

The Company, at its sole discretion, may pay all or part of the Retention amount on behalf of any **Insured**, and in such event, the **Insureds** agree to repay the Company any amounts so paid.


©2009 The Travelers Companies, Inc. All Rights Reserved

## C. LIMITS OF LIABILITY

1. Liability Coverage Limit of Liability

   Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established, and further subject to any applicable **Liability Coverage Shared Limit of Liability** or **Annual Reinstatement of the Liability Coverage Limit of Liability**:

   a. the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Claims** under each applicable **Liability Coverage** will not exceed the remaining **Liability Coverage Limit of Liability** stated in ITEM 5 of the **Declarations** for each applicable **Liability Coverage**; and

   b. in the event that a **Claim** triggers more than one **Liability Coverage**, the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for any such **Claim** will not exceed the sum of the remaining **Liability Coverage Limits of Liability** of the applicable **Liability Coverages.**

2. Liability Coverage Shared Limit of Liability

   Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established; and further subject to any applicable **Annual Reinstatement of the Liability Coverage Limit of Liability**, if ITEM 4 of the Declarations indicates that more than one **Liability Coverage** has been purchased and a **Liability Coverage Shared Limit of Liability** is shown in ITEM 12 of the Declarations:

   a. the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Claims** under all **Liability Coverages** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, will not exceed the remaining **Liability Coverage Shared Limit of Liability**; and

   b. if the **Liability Coverage Shared Limit of Liability** is exhausted by the payment of amounts covered under any **Liability Coverage** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, the premium for all **Liability Coverages** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, will be fully earned, all obligations of the Company under all **Liability Coverages** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations, will be completely fulfilled and exhausted, including any duty to defend, and the Company will have no further obligations of any kind or nature whatsoever under any **Liability Coverage** subject to the **Liability Coverage Shared Limit of Liability**, as set forth in ITEM 12 of the Declarations.

3. Annual Reinstatement of the Liability Coverage Limit of Liability

   Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established, if ITEM 10 of the Declarations includes an **Annual Reinstatement of the Liability Coverage Limit of Liability**:

   a. the Company's maximum limit of liability for all **Loss**, including **Defense Expenses**, for all **Claims** made during each **Policy Year** will not exceed the remaining **Liability Coverage Limit of Liability** stated in ITEM 5 of the Declarations for each applicable **Liability Coverage** or, if applicable, the remaining **Liability Coverage Shared Limit of Liability**; and

   b. with regard to the Extended Reporting Period or the Run-Off Extended Reporting Period, if applicable, the Company's maximum limit of liability for all **Claims** made during the Extended Reporting Period or the Run-Off Extended Reporting Period will not exceed the remaining **Liability Coverage Limit of Liability** or, if applicable, the **Liability Coverage Shared Limit of Liability** for the last **Policy Year** in effect at the time of the termination or cancellation of the **Liability Coverage** or the **Change of Control**.


©2009 The Travelers Companies, Inc. All Rights Reserved

4. Other Provisions

Payment of **Defense Expenses** will reduce and may exhaust all applicable limits of liability. In the event the amount of **Loss** exceeds the portion of the applicable limit of liability remaining after prior payments of **Loss**, the Company's liability will not exceed the remaining amount of the applicable limit of liability. In no event will the Company be obligated to make any payment for **Loss** , including **Defense Expenses**, with regard to a **Claim** after the applicable limit of liability has been exhausted by payment or tender of payment of **Loss**.

If a **Liability Coverage Limit of Liability** is exhausted by the payment of amounts covered under such **Liability Coverage**, the premium for such **Liability Coverage** will be fully earned, all obligations of the Company under such **Liability Coverage** will be completely fulfilled and exhausted, including any duty to defend, and the Company will have no further obligations of any kind or nature whatsoever under such **Liability Coverage**.

**D. ADDITIONAL DEFENSE COVERAGE**

Regardless of the number of persons or entities bringing **Claims** or the number of persons or entities who are **Insureds**, and regardless of when payment is made by the Company or when an **Insured's** legal obligation with regard thereto arises or is established, if ITEM 5 of the Declarations indicates that any **Liability Coverage** includes Additional Defense Coverage, **Defense Expenses** incurred by the Company or the **Insured**, with the Company's consent, in the defense of any **Claim** made during the **Policy Period** under any such **Liability Coverage** will apply first to and reduce the **Additional Defense Limit of Liability**. The **Additional Defense Limit of Liability** will be in addition to, and not part of, such **Liability Coverage's** applicable **Liability Coverage Limit of Liability** or **Liability Coverage Shared Limit of Liability**, if applicable. The **Additional Defense Limit of Liability** is applicable to **Defense Expenses** only. If the **Annual Reinstatement of the Liability Coverage Limit of Liability** is applicable, the **Additional Defense Limit of Liability** will be reinstated for each **Policy Year**.

Upon exhaustion of the Additional Defense Limit of Liability:

1. **Defense Expenses** incurred by the Company or the **Insured**, with the Company's consent, in the defense of a **Claim** are part of and not in addition to any applicable limit of liability; and
2. payment by the Company or the **Insured** , with the Company's consent, of **Defense Expenses** reduces any applicable limit of liability.

**E. CLAIM DEFENSE**

1. If Duty-to-Defend coverage is provided with respect to this **Liability Policy** as indicated in ITEM 7 of the Declarations, the Company will have the right and duty to defend any **Claim** covered by a **Liability Coverage**, even if the allegations are groundless, false or fraudulent, including the right to select defense counsel with respect to such **Claim**; provided, that the Company will not be obligated to defend or to continue to defend any **Claim** after the applicable limit of liability has been exhausted by payment of **Loss**.
2. If Reimbursement coverage is provided with respect to this **Liability Policy** as indicated in ITEM 7 of the Declarations:
   a. the Company will have no duty to defend any **Claim** covered by a **Liability Coverage**. It will be the duty of the **Insured** to defend such **Claims**; and the Company will have the right to participate with the **Insured** in the investigation, defense and settlement, including the negotiation of a settlement of any **Claim** that appears reasonably likely to be covered in whole or in part by such **Liability Coverage** and the selection of appropriate defense counsel; and
   b. upon written request, the Company will advance **Defense Expenses** with respect to such **Claim**. Such advanced payments by the Company will be repaid to the Company by the **Insureds** severally according to their respective interests in the event and to the extent that the **Insureds** are not entitled to payment of such **Defense Expenses** under such **Liability Coverage**. As a condition of any payment of **Defense Expenses** under this subsection, the Company may require a written undertaking on terms and conditions satisfactory to the Company guaranteeing the repayment of any **Defense Expenses** paid to or on behalf of any **Insured** if it is finally determined that any such **Claim** or portion of any **Claim** is not covered under such **Liability Coverage**.


©2009 The Travelers Companies, Inc. All Rights Reserved

3. The **Insured** agrees to cooperate with the Company and, upon the Company's request, assist in making settlements and in the defense of **Claims** and in enforcing rights of contribution or indemnity against any person or entity which may be liable to the **Insured** because of an act or omission insured under such **Liability Coverage**, will attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

**F. INSURED'S DUTIES IN THE EVENT OF A CLAIM**

The **Insured's** duty to report a **Claim** commences on the earliest date a written notice thereof is received by an **Executive Officer.** If an **Executive Officer** becomes aware that a **Claim** has been made against any **Insured**, the **Insured**, as a condition precedent to any rights under this **Liability Policy,** must give to the Company written notice of the particulars of such **Claim**, including all facts related to any alleged **Wrongful Act**, the identity of each person allegedly involved in or affected by such **Wrongful Act**, and the dates of the alleged events, as soon as practicable. The **Insured** agrees to give the Company such information, assistance and cooperation as it may reasonably require.

All notices under this subsection must be sent by mail or prepaid express courier to the address set forth in ITEM 3 of the Declarations and will be effective upon receipt. The **Insured** agrees not to voluntarily settle any **Claim**, make any settlement offer, assume or admit any liability or, except at the **Insured's** own cost, voluntarily make any payment, pay or incur any **Defense Expenses**, or assume any obligation or incur any other expense, without the Company's prior written consent, such consent not to be unreasonably withheld. The Company is not liable for any settlement, **Defense Expenses**, assumed obligation or admission to which it has not consented.

**G. NOTICE OF POTENTIAL CLAIMS**

If an **Insured** becomes aware of a **Potential Claim** and gives the Company written notice of the particulars of such **Potential Claim,** including all facts related to the **Wrongful Act**, the identity of each person allegedly involved in or affected by such **Wrongful Act** , the dates of the alleged events, and the reasons for anticipating a **Claim** , as soon as practicable during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, any **Claim** subsequently made against any **Insured** arising out of such **Wrongful Act** will be deemed to have been made during the **Policy Period**.

All notices under this subsection must be sent by mail or prepaid express courier to the address set forth in ITEM 3 of the Declarations and will be effective upon receipt.

**H. RELATED CLAIMS**

All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be considered as a single **Claim** or **Potential Claim**, whichever is applicable, for purposes of this **Liability Policy**. All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be deemed to have been made at the time the first of such **Claims** or **Potential Claims** for **Related Wrongful Acts** was made whether prior to or during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

**I. SUBROGATION**

In the event of payment under this **Liability Policy**, the Company is subrogated to all of the **Insured's** rights of recovery against any person or organization to the extent of such payment and the **Insured** agrees to execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

**J. RECOVERIES**

All recoveries from third parties for payments made under this **Liability Policy** will be applied, after first deducting the costs and expenses incurred in obtaining such recovery, in the following order of priority:

1. first, to the Company to reimburse the Company for any Retention amount it has paid on behalf of any **Insured**;
2. second, to the **Insured** to reimburse the **Insured** for the amount it has paid which would have been paid hereunder but for the fact that it is in excess of the applicable limits of liability hereunder;


©2009 The Travelers Companies, Inc. All Rights Reserved

3. third, to the Company to reimburse the Company for the amount paid hereunder; and
4. fourth, to the **Insured** in satisfaction of any applicable Retention;

provided, recoveries do not include any recovery from insurance, suretyship, reinsurance, security or indemnity taken for the Company's benefit.

## K. CHANGE OF CONTROL

If, during the **Policy Period**, a **Change of Control** occurs, coverage will continue in full force and effect with respect to **Claims** for **Wrongful Acts** committed before such event, but coverage will cease with respect to **Claims** for **Wrongful Acts** committed after such event. No coverage will be available hereunder for **Loss**, including **Defense Expenses**, for any **Claim** based upon, alleging, arising out of, or in any way relating to, directly or indirectly any **Wrongful Act** committed or allegedly committed after such event. After any such event, the **Liability Policy** may not be canceled by the **Named Insured** and the entire premium for the **Liability Policy** will be deemed fully earned.

Upon the occurrence of any **Change of Control**, the **Named Insured** will have the right to give the Company notice that it desires to purchase a Run-Off Extended Reporting Period for any **Liability Coverage** for the period set forth in ITEM 9 of the Declarations following the effective date of such **Change of Control**, regarding **Claims** made during such Run-Off Extended Reporting Period against persons or entities who at the effective date of the **Change of Control** are **Insureds**, but only for **Wrongful Acts** occurring wholly prior to such **Change of Control** and which otherwise would be covered by such **Liability Coverage**, subject to the following provisions:

1. such Run-Off Extended Reporting Period will not provide new, additional or renewed limits of liability; and
2. the Company's total liability for all **Claims** made during such Run-Off Extended Reporting Period will be only the remaining portion of the applicable limit of liability set forth in the Declarations as of the effective date of the **Change of Control**.

The premium due for the Run-Off Extended Reporting Period will equal the percentage set forth in ITEM 9 of the Declarations of the annualized premium of the applicable **Liability Coverage**, including the fully annualized amount of any additional premiums charged by the Company during the **Policy Period** prior to the **Change of Control**. The entire premium for the Run-Off Extended Reporting Period will be deemed fully earned at the commencement of such Run-Off Extended Reporting Period.

The right to elect the Run-Off Extended Reporting Period will terminate unless written notice of such election, together with payment of the additional premium due, is received by the Company within thirty (30) days of the **Change of Control**. In the event the Run-Off Extended Reporting Period is purchased, the option to purchase the Extended Reporting Period in Section III. CONDITIONS O. EXTENDED REPORTING PERIOD of these Liability Coverage Terms and Conditions will terminate. In the event the Run-Off Extended Reporting Period is not purchased, the **Named Insured** will have the right to purchase the Extended Reporting Period under the terms of Section III. CONDITIONS O. EXTENDED REPORTING PERIOD of these Liability Coverage Terms and Conditions.

If, at any time during the **Policy Period**, the **Insured Organization** eliminates or reduces its ownership interest in, or control over a **Subsidiary**, such that it no longer meets the definition of a **Subsidiary**, coverage will continue for such entity but only with regard to **Claims** for **Wrongful Acts** which occurred wholly during the time that the entity was a **Subsidiary**.

## L. ACQUISITIONS

If, during the **Policy Period**, the **Insured Organization** acquires or forms a **Subsidiary**, this **Liability Policy** will provide coverage for such **Subsidiary** and its respective **Insured Persons**, subject to all other terms and conditions of this **Liability Policy**, provided written notice of such acquisition or formation has been given to the Company, and specific application has been submitted on the Company's form in use at the time, together with such documentation and information as the Company may require, all within ninety (90) days after the effective date of such formation or acquisition. Coverage for such **Subsidiary** will not be afforded following such 90-day period unless the Company has agreed to provide such coverage, subject to any additional terms and conditions as the Company may require, and the **Named Insured** has paid the Company any additional premium as may be required by the Company.


©2009 The Travelers Companies, Inc. All Rights Reserved

The 90-day notice requirement and the 90-day limitation of coverage will not apply provided that: (1) the assets of the acquired or formed **Subsidiary** do not exceed 30% of the total assets of the **Insured Organization** as reflected in the **Insured Organization's** most recent fiscal year-end financial statement; or (2) the acquisition or formation occurs less than 90 days prior to the end of the **Policy Period**.

**M. SPOUSAL AND DOMESTIC PARTNER LIABILITY COVERAGE**

This **Liability Policy** will, subject to all of its terms, conditions, and limitations, be extended to apply to **Loss** resulting from a **Claim** made against a person who, at the time the **Claim** is made, is a lawful spouse or a person qualifying as a domestic partner under the provisions of any applicable federal, state or local law (a "Domestic Partner") of an **Insured Person**, but only if and so long as:

1. the **Claim** against such spouse or Domestic Partner results from a **Wrongful Act** actually or allegedly committed by the **Insured Person**, to whom the spouse is married, or who is joined with the Domestic Partner; and
2. such **Insured Person** and his or her spouse or Domestic Partner are represented by the same counsel in connection with such **Claim**.

No spouse or Domestic Partner of an **Insured Person** will, by reason of this subsection have any greater right to coverage under this **Liability Policy** than the **Insured Person** to whom such spouse is married, or to whom such Domestic Partner is joined.

The Company has no obligation to make any payment for **Loss** in connection with any **Claim** against a spouse or Domestic Partner of an **Insured Person** for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by such spouse or Domestic Partner.

**N. FOREIGN PARENT CORPORATION COVERAGE**

This **Liability Policy** will, subject to all of its terms, conditions, and limitations, be extended to apply coverage for **Defense Expenses** resulting from any **Claim** made against a **Foreign Parent Corporation**, but only if and so long as:

1. such **Claim** results from a **Wrongful Act** actually or allegedly committed solely by any **Insured**;
2. such **Insured** and the **Foreign Parent Corporation** are represented by the same counsel in connection with such **Claim**; and
3. such **Insured** is included as a co-defendant.

No **Foreign Parent Corporation** will, by reason of this subsection, have any greater right to coverage under this **Liability Policy** than any **Insured**.

The Company has no obligation to make any payment for **Loss** in connection with any **Claim** against a **Foreign Parent Corporation** for any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by such **Foreign Parent Corporation** or any member of the board of directors, officer, employee, or functional equivalent thereof.

**O. EXTENDED REPORTING PERIOD**

At any time prior to or within 60 days after the effective date of termination or cancellation of any Liability Coverage for any reason other than nonpayment of premium, the **Named Insured** may give the Company written notice that it desires to purchase an Extended Reporting Period for the period set forth in ITEM 8 of the Declarations following the effective date of such termination or cancellation, regarding **Claims** made during such Extended Reporting Period against persons or entities who at or prior to the effective date of termination or cancellation are **Insureds**, but only for **Wrongful Acts** occurring wholly prior to the effective date of the termination or cancellation and which otherwise would be covered by such **Liability Coverage**, subject to the following provisions:

1. such Extended Reporting Period will not provide a new, additional or renewed limit(s) of liability; and
2. the Company's maximum limit of liability for all **Claims** made during such Extended Reporting Period will be only the remaining portion of the applicable limit of liability set forth in the Declarations as of the effective date of the termination or cancellation;


©2009 The Travelers Companies, Inc. All Rights Reserved

The premium due for the Extended Reporting Period will equal the percentage set forth in ITEM 8 of the Declarations of the annualized premium of the applicable **Liability Coverage**, including the fully annualized amount of any additional premiums charged by the Company during the **Policy Year** prior to such termination or cancellation. The entire premium for the Extended Reporting Period will be deemed to have been fully earned at the commencement of such Extended Reporting Period.

The right to elect the Extended Reporting Period will terminate unless written notice of such election, together with payment of the additional premium due, is received by the Company within 60 days of the effective date of the termination or cancellation.

**P. ALLOCATION**

1. If Duty-to-Defend coverage is indicated in ITEM 7 of the Declarations and there is a **Claim** under any **Liability Coverage** in which the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by such **Liability Coverage** and also loss that is not covered by such **Liability Coverage** because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then such covered **Loss** and uncovered loss will be allocated as follows:
   a. one hundred percent (100%) of **Defense Expenses** incurred by the **Insureds** who are afforded coverage for such **Claim** will be allocated to covered **Loss**; and
   b. all loss other than **Defense Expense** will be allocated between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and settlement of the **Claim** by the **Insured Persons**, the **Insured Organization**, and others not insured under such **Liability Coverage**. In making such a determination, the **Insured Organization**, the **Insured Persons** and the Company agree to use their best efforts to determine a fair and proper allocation of all such amounts. In the event that an allocation cannot be agreed to, then the Company will be obligated to make an interim payment of the amount of **Loss** which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of the applicable **Liability Coverage** and applicable law.
2. If Reimbursement coverage is indicated in ITEM 7 of the Declarations and there is a **Claim** under any **Liability Coverage** in which the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by such **Liability Coverage** and also loss that is not covered by such **Liability Coverage** because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, the **Insureds** and the Company agree to use their best efforts to determine a fair and proper allocation of all such amounts. In making such a determination, the parties will take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and settlement of the **Claim** by the **Insured Persons**, the **Insured Organization**, and others not insured under the applicable **Liability Coverage**. In the event that an allocation cannot be agreed to, then the Company will be obligated to make an interim payment of the amount of **Loss** which the parties agree is not in dispute until a final amount is agreed upon or determined pursuant to the provisions of the applicable **Liability Coverage** and applicable law.

**Q. CANCELLATION**

The Company may cancel this **Liability Policy** for failure to pay a premium when due, in which case twenty (20) days written notice will be given to the **Named Insured**, unless, payment in full is received within twenty (20) days of the **Named Insured's** receipt of such notice of cancellation. The Company has the right to the premium amount for the portion of the **Policy Period** during which this **Liability Policy** was in effect.

Subject to the provisions set forth in Section III. CONDITIONS K. CHANGE OF CONTROL, the **Named Insured** may cancel any **Liability Coverage** by mailing the Company written notice stating when, thereafter, not later than the Expiration Date set forth in ITEM 2 of the Declarations, such cancellation will be effective. In the event the **Named Insured** cancels, the earned premium will be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.


©2009 The Travelers Companies, Inc. All Rights Reserved

The Company will not be required to renew this **Liability Policy** upon its expiration. If the Company elects not to renew, it will provide to the **Named Insured** written notice to that effect at least thirty (30) days before the Expiration Date set forth in ITEM 2 of the Declarations.

**R. ACTION AGAINST THE COMPANY**

No action will lie against the Company unless there has been full compliance with all of the terms of this **Liability Policy**.

No person or organization has any right under this **Liability Policy** to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor may the Company be impleaded by an **Insured** or said **Insured's** legal representative. Bankruptcy or insolvency of any **Insured** or an **Insured's** estate does not relieve the Company of any of its obligations hereunder.

**S. CHANGES**

Only the **Named Insured** is authorized to make changes in the terms of this **Liability Policy** and solely with the Company's prior written consent. This **Liability Policy's** terms can be changed, amended or waived only by endorsement issued by the Company and made a part of this **Liability Policy**. Notice to any representative of the **Insured** or knowledge possessed by any agent or by any other person will not effect a waiver or change to any part of this **Liability Policy**, or estop the Company from asserting any right under the terms, conditions and limitations of this **Liability Policy**, nor may the terms, conditions and limitations hereunder be waived or changed, except by a written endorsement to this **Liability Policy** issued by the Company.

**T. ASSIGNMENT**

This **Liability Policy** may not be assigned or transferred, and any such attempted assignment or transfer is void and without effect unless the Company has provided its prior written consent to such assignment or transfer.

**U. REPRESENTATIONS**

By acceptance of the terms set forth in this **Liability Policy**, each **Insured** represents and agrees that the statements contained in the **Application**, which is deemed to be attached hereto, incorporated herein, and forming a part hereof, are said **Insured's** agreements and representations, that such representations are material to the Company's acceptance of this risk, that this **Liability Policy** is issued in reliance upon the truth of such representations, and embodies all agreements existing between said **Insured** and the Company or any of its agents.

If any statement or representation in the **Application** is untrue with respect to any **Liability Coverage**, such **Liability Coverage** is void and of no effect whatsoever, but only with respect to:

1. any **Insured Person** who knew, as of the Inception Date set forth in ITEM 2 of the Declarations, that the statement or representation was untrue;
2. any **Insured Organization**, with respect to its indemnification coverage, to the extent it indemnifies any **Insured Person** referenced in 1. above; and
3. any **Insured Organization**, if the person who signed the **Application** knew that the statement or representation was untrue.

Whether an **Insured Person** had such knowledge will be determined without regard to whether the **Insured Person** actually knew the **Application**, or any other application completed for this **Liability Policy**, contained any such untrue statement or representation.

**V. LIBERALIZATION**

If, during the **Policy Period**, the Company is required, by law or by insurance supervisory authorities of the state in which this **Liability Policy** was issued, to make any changes in the form of this **Liability Policy**, by which the insurance afforded by this **Liability Policy** could be extended or broadened without increased premium charge by endorsement or substitution of form, then such extended or broadened insurance will inure to the benefit of the **Insured** as of the date the revision or change is approved for general use by the applicable department of insurance.


©2009 The Travelers Companies, Inc. All Rights Reserved

**W. AUTHORIZATION**

By acceptance of the terms herein, the **Named Insured** agrees to act on behalf of all **Insureds** with respect to the payment of premiums, the receiving of any return premiums that may become due hereunder, and the receiving of notices of cancellation, nonrenewal, or change of coverage, and the **Insureds** each agree that they have, individually and collectively, delegated such authority exclusively to the **Named Insured**; provided, that nothing herein will relieve the **Insureds** from giving any notice to the Company that is required under this **Liability Policy**.

**X. ENTIRE AGREEMENT**

The Declarations, the **Application**, the Liability Coverage Terms and Conditions, each **Liability Coverage**, and any endorsements attached thereto, constitute the entire agreement between the Company and the **Insured**.

**Y. HEADINGS**

The titles of the various paragraphs of this **Liability Policy** and its endorsements are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provision to which they relate.


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND NUMBER OF DAYS FOR ELECTING EXTENDED REPORTING PERIOD ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

Solely with respect to the **Liability Coverage(s)** shown above, section **III. CONDITIONS, O. EXTENDED REPORTING PERIOD** of the **Liability Coverage Terms and Conditions** is replaced by the following:

**O. EXTENDED REPORTING PERIOD**

At any time prior to or within **90** days after the effective date of termination or cancellation of any Liability Coverage for any reason other than nonpayment of premium, the **Named Insured** may give the Company written notice that it desires to purchase an Extended Reporting Period for the period set forth in ITEM 8 of the Declarations following the effective date of such termination or cancellation, regarding **Claims** made during such Extended Reporting Period against persons or entities who at or prior to the effective date of termination or cancellation are **Insureds**, but only for **Wrongful Acts** occurring wholly prior to the effective date of the termination or cancellation and which otherwise would be covered by such **Liability Coverage**, subject to the following provisions:

1. such Extended Reporting Period will not provide a new, additional or renewed limit(s) of liability; and

2. the Company's maximum limit of liability for all **Claims** made during such Extended Reporting Period will be only the remaining portion of the applicable limit of liability set forth in the Declarations as of the effective date of the termination or cancellation;

The premium due for the Extended Reporting Period will equal the percentage set forth in ITEM 8 of the Declarations of the annualized premium of the applicable **Liability Coverage**, including the fully annualized amount of any additional premiums charged by the Company during the **Policy Year** prior to such termination or cancellation. The entire premium for the Extended Reporting Period will be deemed to have been fully earned at the commencement of such Extended Reporting Period.

The right to elect the Extended Reporting Period will terminate unless written notice of such election, together with payment of the additional premium due, is received by the Company within **90** days of the effective date of the termination or cancellation.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SETTLEMENT CONDITION ENDORSEMENT

This endorsement modifies the following when indicated below by ☒:

**It is agreed that:**

☒ **Private Company Directors and Officers Liability**

The following replaces **B. SETTLEMENT** of the ***CONDITIONS*** section of the **Liability Coverage**:

**B. SETTLEMENT**

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement (a "Settlement Offer") of any **Claim** which is acceptable to the claimant(s), and if the **Insured** refuses to consent to such Settlement Offer, the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** does not exceed the remaining applicable limit of liability.

☐ **Financial Institution Professional Liability**

The following replaces **B. SETTLEMENT** of the ***CONDITIONS*** section of the **Liability Coverage**:

**B. SETTLEMENT**

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement (a "Settlement Offer") of any **Claim** which is acceptable to the claimant(s), and if the **Insured** refuses to consent to such Settlement Offer, the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** does not exceed the remaining applicable limit of liability.

☐ **Employment Practices Liability**

The following replaces section ***IV. CONDITIONS***, **A. SETTLEMENT** of the **Liability Coverage**:

**A. SETTLEMENT**

1. The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that:

    a. the **Insured** and the party bringing a **Claim** hereunder consent to the first settlement offer recommended by the Company (the "Settlement Offer") within thirty (30) days of being made aware of such offer by the Company; and

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 107298906


©2010 The Travelers Companies, Inc. All Rights Reserved

b. the amount of such Settlement Offer:

i. is less than the remaining applicable limit of liability available at the time; and

ii. combined with **Defense Expenses** incurred with respect to such **Claim**, exceeds the Retention;

the Retention will be retroactively reduced by ten percent (10%) with respect to such **Claim**.

2. If the **Insured** does not consent to the Settlement Offer within thirty (30) days of being made aware of such offer by the Company:

a. the Retention will not be reduced as provided in paragraph 1. above even if consent is given to the same or subsequent Settlement Offer; and

b. the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss** , other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

☐ **Fiduciary Liability**

The following replaces section ***V. CONDITIONS***, **A. SETTLEMENT** of the **Liability Coverage**:

**A. SETTLEMENT**

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement of any **Claim** which is acceptable to the claimant(s) (a "Settlement Offer"), and if the **Insured** refuses to consent to such Settlement Offer, the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

☐ **Miscellaneous Professional Liability**

The following replaces section ***V. CONDITIONS***, **B. SETTLEMENT** of the **Liability Coverage**:

**B. SETTLEMENT**

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement (a "Settlement Offer") of any **Claim** which is acceptable to the claimant(s), and if the **Insured** refuses to consent to such Settlement Offer, the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.


©2010 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADVANCEMENT OF THE RETENTION ENDORSEMENT

This endorsement changes the following:
**Private Company Directors and Officers Liability**

**It is agreed that:**

The following is added to section **III*. CONDITIONS***, **B. RETENTION** of the Liability Coverage Terms and Conditions:

Notwithstanding anything in this section III. CONDITIONS, B. RETENTION to the contrary, if the **Insured Organization** is permitted by law to indemnify any **Insured Person** for any applicable Retention but refuses or fails to do so and such refusal or failure is not by reason of **Financial Insolvency**, then the Company will advance the amount of any applicable Retention that would otherwise be covered under this **Liability Coverage** on behalf of such **Insured Person** and will be subrogated to the rights of such **Insured Person** pursuant to section III. CONDITIONS, I. SUBROGATION for purposes of recovering such Retention amount from the **Insured Organization**.

The **Insured Organization's** failure or refusal to indemnify such **Insured Person** will be deemed to have occurred if the **Insured Organization** has neither paid such Retention on behalf of the **Insured Person**, nor acknowledged its obligation to do so, within 60 days of the **Insured Person's** written demand to the **Insured Organization** for indemnification or payment of such Retention.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2011 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NON-RESCINDABILITY AND NON-IMPUTATION ENDORSEMENT

This endorsement changes the following:
**Private Company Directors and Officers Liability**

**It is agreed that:**

The following replaces section ***III. CONDITIONS,*** **U., REPRESENTATIONS,** of the Liability Coverage Terms and Conditions:

**U. REPRESENTATIONS**

In consideration of issuing this **Liability Policy**, the Company has relied upon the statements and representations in the **Application**. The **Insureds** represent and agree that all such statements and representations are true and accurate and are the basis of the **Liability Policy**. This **Liability Policy** is issued in reliance upon the truth of all such statements and representations.

With respect to all statements and representations contained in the **Application**, no knowledge possessed by any one **Insured Person** will be imputed to any other **Insured Person**.

The Company will not, under any circumstance, rescind this **Liability Policy** with respect to any **Insured**. However, the **Insureds** agree that in the event any such statements or representations in the **Application** are untrue or inaccurate and materially affect either the acceptance of the risk or the hazard assumed by the Company, then no coverage will be afforded under this **Liability Policy** with respect to the following **Insureds** for any **Claim** based upon or arising out of the information that was not truthfully or accurately disclosed in the **Application**:

1. any **Insured Person** who knew, as of the Inception Date set forth in ITEM 2 of the Declarations, that the statement or representation was untrue;
2. any **Insured Organization**, with respect to indemnification coverage, to the extent it indemnifies any **Insured Person** referenced in 1. above; and
3. any **Insured Organization**, if the person who signed the **Application**, knew that the statement or representation was untrue.

Whether an **Insured Person** had such knowledge will be determined without regard to whether the **Insured Person** actually knew the **Application**, or any other application completed for this **Liability Policy**, contained any such untrue statement or representation.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2012 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GLOBAL COVERAGE COMPLIANCE ENDORSEMENT

This endorsement changes the following:

**Liability Coverage Terms and Conditions**

**It is agreed that:**

1. The following is added to section **II. DEFINITIONS**:

   ***Financial Interest*** means the **Named Insured's** insurable interest in an **Insured Organization** that is domiciled in a country or jurisdiction in which the Company is not licensed to provide this insurance, as a result of the **Named Insured's**:

   1. ownership of the majority of the outstanding securities or voting rights of such **Insured Organization** representing the present right to elect, appoint, or exercise a majority control over such **Insured Organization's** board of directors, board of trustees, board of managers, natural person general partner, or functional foreign equivalent;

   2. indemnification of, or representation that it has an obligation to indemnify, such **Insured Organization** for **Loss** incurred by such **Insured Organization**; or

   3. election or obligation to obtain insurance for such **Insured Organization**.

2. The following is added to section **III. CONDITIONS**:

   **SANCTIONS**

   This **Liability Policy** will provide coverage, or otherwise will provide any benefit, only to the extent that providing such coverage or benefit does not expose the Company or any of its affiliated or parent companies to any trade or economic sanction under any law or regulation of the United States of America or any other applicable trade or economic sanction, prohibition, or restriction.

3. The following replaces section **III. CONDITIONS**, **A. TERRITORY**:

   **A. TERRITORY AND VALUATION**

   1. This **Liability Policy** applies anywhere in the world; provided, this **Liability Policy** does not apply to **Loss** incurred by an **Insured**, or a **Foreign Parent Corporation**, residing or domiciled in a country or jurisdiction in which the Company is not licensed to provide this insurance, to the extent that providing this insurance would violate the laws or regulations of such country or jurisdiction.

   2. In the event an **Insured Organization** incurs **Loss** referenced in 1. above to which this insurance would have applied, the Company will reimburse the **Named Insured** for its **Loss**, on account of its **Financial Interest** in such **Insured Organization**. As a condition precedent to such reimbursement, or any rights under this **Liability Policy**, the **Named Insured** will cause the **Insured Organization** or its **Insured Persons** to comply with the conditions of this **Liability Policy**.

   3. All premiums, Limits of Liability, Retention, **Loss**, and other amounts under this **Liability Policy** are expressed and payable in the currency of the United States. If a judgment is rendered, settlement is denominated, or another element of **Loss** under this **Liability Policy** is stated in a currency other than United States dollars, payment under this **Liability Policy** will be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon, or any other element of **Loss** is due, respectively.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2015 The Travelers Indemnity Company. All rights reserved.

4. The following is added to section **III. CONDITIONS**, **E. CLAIM DEFENSE**:

   In the event of a **Claim** against an **Insured** or **Foreign Parent Corporation** that resides or is domiciled in a country or jurisdiction in which the Company is not licensed to provide this insurance and if Duty-to-Defend coverage is provided with respect to this **Liability Policy** as indicated in ITEM 7 of the Declarations, the Company will have the right and duty to defend such **Claim** as set forth in this section III. CONDITIONS, E. CLAIM DEFENSE, 1. to the extent that doing so would not violate the laws or regulations of such country or jurisdiction.

   If the Company is prohibited from defending such **Claim** or if Reimbursement coverage is provided with respect to this **Liability Policy** as indicated in ITEM 7 of the Declarations, then this section III. CONDITIONS, E. CLAIM DEFENSE, 2. applies to such **Claim**; provided, any such **Claim** is subject to section III. CONDITIONS, P. ALLOCATION, 2.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.


© 2015 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND CHANGE OF CONTROL AND EXTENDED REPORTING PERIOD CONDITIONS ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

1. The following replaces the first paragraph of section **III. CONDITIONS**, **K. CHANGE OF CONTROL**:

   If, during the **Policy Period**, a **Change of Control** occurs, coverage will continue in full force and effect with respect to **Loss** arising out of a **Claim** or that part of a **Claim** alleging **Wrongful Acts** committed before the **Change of Control**; coverage will cease with respect to **Loss** arising out of a **Claim** or that part of a **Claim** alleging **Wrongful Acts** committed after the **Change of Control**. After such **Change of Control**, the **Liability Policy** may not be canceled by the **Named Insured** and the entire premium for the **Liability Policy** will be deemed fully earned.

2. The second and fifth paragraphs of section **III. CONDITIONS**, **K. CHANGE OF CONTROL** are amended by deleting "wholly."

3. The first paragraph of section **III. CONDITIONS**, **O. EXTENDED REPORTING PERIOD** is amended by deleting "wholly."

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2015 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTOMATIC COVERAGE FOR ALL FORMED SUBSIDIARIES AND ACQUIRED SUBSIDIARIES WITH ASSETS NOT EXCEEDING 35% ENDORSEMENT

This endorsement changes the following:
**Private Company Directors and Officers Liability**

**It is agreed that:**

The following amends section **III. CONDITIONS**, **L. ACQUISITIONS** of the Liability Coverage Terms and Conditions:

1. The **Insureds** need not complete an application for, and need not provide written notice of, the formation of any **Subsidiary** during the **Policy Period** by the **Insured Organization** in order for the Company to provide coverage for a formed **Subsidiary** and **Insured Persons** thereof.
2. The words “forms” and “formation” are deleted from the first paragraph.
3. The second paragraph is replaced by the following:

   The 90-day notice requirement and the 90-day limitation of coverage will not apply provided that: (1) the assets of the acquired **Subsidiary** do not exceed 35% of the total assets of the **Insured Organization** as reflected in the **Insured Organization’s** most recent fiscal year-end financial statement; or (2) the acquisition occurs less than 90 days prior to the end of the **Policy Period**.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2017 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES ENDORSEMENT

This endorsement changes the following:

**Liability Coverage Terms and Conditions**

**It is agreed that:**

1. Section **III. CONDITIONS**, **O. EXTENDED REPORTING PERIOD** is amended by the addition of the following:

   The minimum Extended Reporting Period will be 12 months.

2. The following is added to section **III. CONDITIONS:**

   If this **Liability Policy** is construed by a court of competent jurisdiction, or an arbitration panel, under the laws of the state of Ohio, **Loss** does not include punitive or exemplary damages. If this **Liability Policy** is construed by a court of competent jurisdiction, or an arbitration panel, under the laws of any jurisdiction other than Ohio, **Loss** includes punitive or exemplary damages if such damages are insurable under the laws of that jurisdiction.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


© 2018 The Travelers Indemnity Company. All rights reserved.

TRAVELERS

*PRIVATE COMPANY DIRECTORS AND OFFICERS LIABILITY*

***THIS IS A CLAIMS-MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE POLICY CAREFULLY.***

## *I. INSURING AGREEMENTS*

The Company will pay on behalf of:

**A.** the **Insured Persons, Loss** for **Wrongful Acts**, except for **Loss** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification;

**B.** the **Insured Organization, Loss** for **Wrongful Acts** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification; and

**C.** the **Insured Organization, Loss** for **Wrongful Acts**,

resulting from any **Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

The Company will also pay on behalf of the **Insured Organization, Investigation Expense** resulting from any **Security Holder Derivative Demand** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, against an **Insured Organization** for **Wrongful Acts**. The Company's maximum limit of liability for all **Investigation Expense** will be the Investigation Expense Limit of Liability set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

## *II. SUPPLEMENTAL PERSONAL INDEMNIFICATION*

If ITEM 5 of the Declarations indicates that coverage for Supplemental Personal Indemnification Coverage has been purchased, and if the **Liability Coverage Limit of Liability** under this **Liability Coverage** or a **Liability Coverage Shared Limit of Liability**, if applicable, has been exhausted, the Company will provide the **Insured Persons** with an additional Supplemental Personal Indemnification Limit of Liability under Insuring Agreement A. Such Supplemental Personal Indemnification Limit of Liability will not exceed the amount set forth in ITEM 5 of the Declarations, which amount is in addition to and not part of the **Liability Coverage Limit of Liability** or **Liability Coverage Shared Limit of Liability**, if applicable. This Supplemental Personal Indemnification Limit of Liability applies solely to **Loss** resulting from any **Claim,** other than a **Claim** for an employment-related **Wrongful Act,** against an **Insured Person** to which Insuring Agreement A. is applicable.

## *III. DEFINITIONS*

Wherever appearing in this **Liability Coverage**, the following words and phrases appearing in bold type will have the meanings set forth in this Section III. DEFINITIONS:

**A.** ***Claim*** means:

1. a written demand, other than a **Security Holder Derivative Demand**, for monetary damages or non-monetary relief;
2. a civil proceeding commenced by service of a complaint or similar pleading;
3. a criminal proceeding commenced by filing of charges;
4. a formal administrative or regulatory proceeding, commenced by a filing of charges, formal investigative order, service of summons, or similar document;
5. an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld;


©2009 The Travelers Companies, Inc. All Rights Reserved

6. a **Security Holder Derivative Demand** solely with respect to **Investigation Expenses** and subject to the **Investigation Expense Limit of Liability** set forth in ITEM 5 of the Declarations;

7. the service of a subpoena on an **Insured Person** identified by name if served upon such person pursuant to a formal administrative or regulatory proceeding, or

8. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding;

against an **Insured** for a **Wrongful Act**, provided that **Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

A **Claim** is deemed to be made on the earliest date that any **Executive Officer** first receives written notice of such **Claim.** However, if any **Insured Person** who is not an **Executive Officer** first receives written notice of a **Claim** during the **Policy Period**, but no **Executive Officer** receives written notice of such **Claim** until after the **Policy Period** has expired, then such **Claim** will be deemed to have been made on the date such **Insured Person** first received written notice of the **Claim.**

**B.** ***Executive Officer*** means the chairperson, chief executive officer, president, chief financial officer, in-house general counsel, or **LLC Manager** of the **Insured Organization** or a functional equivalent thereof.

**C.** ***Insured*** means the **Insured Persons** and the **Insured Organization**.

**D.** ***Insured Organization*** means the **Named Insured,** any **Subsidiary**, and any such entity as a debtor in possession, as such term is used in Chapter 11 of the United States of America Bankruptcy Code, as amended, or the equivalent of a debtor in possession under any applicable foreign law.

**E.** ***Insured Person*** means any natural person who was, is or becomes a duly elected or appointed member of the board of directors, officer, or a functional equivalent to a member of the board of directors or officer of the **Insured Organization** in the event the **Insured Organization** is incorporated or domiciled outside the United States, member of the board of managers, **Executive Officer**, employee, or member of a management committee or an advisory committee of the **Insured Organization**.

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

**F.** ***Investigation Expense*** means reasonable and necessary fees, costs and expenses incurred by the **Insured Organization**, including its board of directors, board of managers or any duly constituted committee thereof, in connection with any investigation or evaluation by the **Insured Organization** of any **Security Holder Derivative Demand**.

**G.** ***Loss*** means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements, judgments, back and front pay, compensatory damages, punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages, prejudgment and postjudgment interest, and legal fees and expenses awarded pursuant to a court order or judgment. **Loss** does not include:

1. civil or criminal fines, sanctions, liquidated damages other than liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act, payroll or other taxes, or damages, penalties or types of relief deemed uninsurable under applicable law; or
2. any amount allocated to non-covered loss pursuant to Section III. CONDITIONS. P. ALLOCATION of the Liability Coverage Terms and Conditions.

**H.** ***Outside Entity*** means a corporation or organization:

1. other than the **Insured Organization**, which is exempt from federal income tax as an entity described in Section 501(c)(3), 501(c)(4), or 501(c)(10) of the Internal Revenue Code of 1986, as amended; or
2. specifically scheduled as an **Outside Entity** by endorsement to this **Liability Policy**.


©2009 The Travelers Companies, Inc. All Rights Reserved

**I.** ***Outside Position*** means service by an **Insured Person** as a member of the board of directors, officer, member of the board of trustees, member of the board of managers, or a functional equivalent thereof with an **Outside Entity**, but only during such time that such service is with the knowledge, consent, and at the specific request of the **Insured Organization**.

**J.** ***Security Holder Derivative Claim*** means any **Claim** brought on behalf of, or in the name or right of, the **Insured Organization** by one or more security holders of the **Insured Organization** in their capacity(ies) as such, but only if such **Claim** is brought and maintained without the assistance, participation or solicitation of any member of the board of directors, officer, member of the board of managers, or a functional equivalent thereof.

**K.** ***Security Holder Derivative Demand*** means a written demand by one or more security holders of the **Insured Organization** in their capacity(ies) as such to bring a civil proceeding in a court of law on behalf of, or in the name or right of, the **Insured Organization** against any **Insured Person** for a **Wrongful Act** by an **Insured Person**, but only if such demand is asserted without the assistance, participation or solicitation of any member of the board of directors, officer, member of the board of managers, or a functional equivalent thereof.

**L.** ***Subsidiary*** means:

1. any corporation, partnership, limited liability company or other entity organized under the laws of any jurisdiction in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent;
2. any non-profit entity over which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** has the ability to exercise managerial control;
3. any entity operated as a joint venture, in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or indirectly, exactly 50% of the issued and outstanding voting stock and whose management and operation the **Insured Organization** solely controls, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock; or
4. subject to the provisions set forth in Section III. CONDITIONS L. ACQUISITIONS of the Liability Coverage Terms and Conditions, any entity that the **Insured Organization** acquires or forms during the **Policy Period** in which the **Named Insured** owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent, or, in the case of any non-profit entity that does not issue securities, over which the **Named Insured** has the ability to exercise managerial control.

**M.** ***Wrongful Act*** means:

1. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an **Insured Person** in his or her capacity as such;
2. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an **Insured Person** in his or her **Outside Position**;
3. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, the **Insured Organization**; or
4. any matter asserted against an **Insured Person** solely by reason of his or her status as such.

All **Related Wrongful Acts** are a single **Wrongful Act** for purposes of this **Liability Coverage**, and all **Related Wrongful Acts** will be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period**.


©2009 The Travelers Companies, Inc. All Rights Reserved

## *IV. EXCLUSIONS*

### A. EXCLUSIONS APPLICABLE TO ALL LOSS

1. The Company will not be liable for **Loss** for any **Claim** for any damage to, destruction of, loss of, or loss of use of any tangible property including damage to, destruction of, loss of, or loss of use of tangible property that results from inadequate or insufficient protection from soil or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot.
2. The Company will not be liable for **Loss** for any **Claim** for any bodily injury, sickness, disease, death, loss of consortium, emotional distress, mental anguish, humiliation, loss of reputation, libel, slander, oral or written publication of defamatory or disparaging material, or invasion of privacy; provided that this exclusion will not apply to:
   a. any **Claim** for emotional distress, mental anguish, or humiliation with respect to any employment related **Wrongful Act**; or
   b. any **Security Holder Derivative Claim**.
3. The **Company** will not be liable for **Loss** for any **Claim**:
   a. based upon or arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **Pollutant**;
   b. based upon or arising out of any request, demand, order, or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, any **Pollutant**; or
   c. brought by or on behalf of any governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any **Pollutant**,

   provided this exclusion does not apply to any **Security Holder Derivative Claim**.

4. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any fact, circumstance, situation, event, or **Wrongful Act** underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding, including audits initiated by the Office of Federal Contract Compliance Programs, against any **Insured** as of or prior to the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.
5. The Company will not be liable for **Loss** for any **Claim** for any fact, circumstance, situation, or event that is or reasonably would be regarded as the basis for a claim about which any **Executive Officer** had knowledge prior to the applicable Continuity Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.
6. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of, any fact, circumstance, situation, event, or **Wrongful Act** which, before the Inception Date set forth in ITEM 2 of the Declarations, was the subject of any notice of claim or potential claim given by or on behalf of any **Insured** under any policy of insurance of which this **Liability Coverage** is a direct renewal or replacement or which it succeeds in time.
7. The Company will not be liable for **Loss** for any **Claim** for any violation of responsibilities, duties or obligations under any law concerning Social Security, unemployment insurance, workers' compensation, disability insurance, or any similar or related federal, state or local law or regulation or for any violation of the Worker Adjustment and Retraining Notification Act (WARN), Occupational Safety and Health Act (OSHA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), the National Labor Relations Act (NLRA), Fair Labor Standards Act (FLSA) (except the Equal Pay Act), or amendments thereto or regulations promulgated thereunder, or any similar or related federal, state or local law or regulation.
8. The Company will not be liable for **Loss** for any **Claim** for any violation of responsibilities, duties or obligations under the Employee Retirement Income Security Act of 1974 (ERISA), including


©2009 The Travelers Companies, Inc. All Rights Reserved

amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation; or for an **Insured's** failure or refusal to establish, contribute to, pay for, insure, maintain, provide benefits pursuant to, or enroll or maintain the enrollment of an employee or dependent in, any employee benefit plan, fund or program, including contracts or agreements which are not subject to the provisions of ERISA.

9. The Company will not be liable for **Loss** for any **Claim** by or on behalf of, or in the name or right of, any **Insured**; provided that this exclusion will not apply to:

 a. any **Security Holder Derivative Claim** or any **Security Holder Derivative Demand**;

 b. any **Claim** in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an **Insured Person** and which is part of or results directly from a **Claim** which is not otherwise excluded by the terms of this **Liability Coverage**;

 c. any **Claim** brought by a receiver, liquidator, bankruptcy trustee or similar official of the **Insured Organization**;

 d. any **Claim** brought or maintained by a natural person who was a member of the board of directors, officer, member of the board of trustees, member of the board of managers, or a functional equivalent thereof, but who has not served in such capacity for at least four (4) years preceding the date the **Claim** is first made; and who brings and maintains the Claim without the solicitation, assistance or participation of any current member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof or anyone who has served in such capacity during the four (4) year period immediately preceding the date the **Claim** is first made;

 e. any **Claim** for an employment related Wrongful Act brought by an employee; or

 f. any **Claim** brought by an employee for a **Wrongful Act** in connection with an offer, purchase or sale of securities if:

  i. the employee brings the **Claim** solely in his or her capacity as a security holder of the **Insured Organization** without the solicitation, assistance or participation of any current member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof or anyone who has served in such capacity during the four (4) year period immediately preceding the date the **Claim** is first made; and

  ii. the employee is not a member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof and has not served in such capacity during the four (4) year period immediately preceding the date the **Claim** is first made.

10. The Company will not be liable for **Loss** for any **Claim** by or on behalf of, or in the name or right of, any **Outside Entity** against an **Insured Person** for a **Wrongful Act** in his or her **Outside Position** with respect to such **Outside Entity**; provided that this exclusion will not apply to any **Claim** brought derivatively by a security holder of such **Outside Entity** in his or her capacity as such.

11. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of:

 a. the public offer, sale, solicitation or distribution of securities issued by the **Insured Organization**; or

 b. the violation of any federal, state, local or provincial statute relating to securities, including the Securities Act of 1933 and the Securities and Exchange Act of 1934, or any rules or regulations promulgated thereunder.

 provided that this exclusion will not apply to any offer, purchase or sale of securities, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933 (an "Exempt Transaction").

 In addition, if at least thirty (30) days prior to an offering of securities of the **Insured Organization**, other than pursuant to an Exempt Transaction, the Company receives notice of the proposed transaction and any additional information requested by the Company, the **Insured Organization** may request a proposal for coverage subject to any additional terms and conditions, and payment of any additional premium, described in such proposal.

12. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any **Wrongful Act** by an entity that is, or was a **Subsidiary,** or any **Insured Person** of such entity, occurring at any time during which such entity was not a **Subsidiary**.


©2009 The Travelers Companies, Inc. All Rights Reserved

13. The Company will not be liable for **Loss** for any **Claim,** with respect to Insuring Agreement C. only:
    a. for any plagiarism;
    b. for any misappropriation, infringement or violation of copyright, patent, trademark, service mark, trade name, trade secret or any other intellectual property rights;
    c. based upon or arising out of any malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy or dangerous condition in such product or in its design or manufacture;
    d. based upon or arising out of any employment related **Wrongful Act**; or
    e. for any liability of the **Insured Organization** under any express contract or agreement. For the purposes of this exclusion, an express contract or agreement is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making.

**B. EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES**

1. The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** based upon or arising out of any **Insured**:
    a. committing any intentionally dishonest or fraudulent act or omission;
    b. committing any willful violation of any statute, rule or law; or
    c. gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled;

    provided that this exclusion will not apply unless a final adjudication establishes that such **Insured** committed such intentionally dishonest or fraudulent act or omission, or willful violation of any statute, rule or law, or gained such profit, remuneration or advantage to which such **Insured** was not legally entitled.
2. The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** seeking costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including actual or anticipated costs and expenses associated with or arising from an **Insured's** obligation to provide reasonable accommodation under, or otherwise comply with, the Americans With Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations thereunder, or any related or similar federal, state or local law or regulation.

## *V. SEVERABILITY OF EXCLUSIONS*

No conduct of any **Insured Person** will be imputed to any other **Insured Person** to determine the application of any of the exclusions set forth in Section IV. EXCLUSIONS above. Solely with respect to exclusion B.1. set forth above, no conduct of any **Insured** will be imputed to any other **Insured** to determine if coverage is available.

## *VI. CONDITIONS*

**A. RETENTION**

This Section VI. CONDITIONS A. RETENTION will supplement, and not replace, Section III. CONDITIONS B. RETENTION of the Liability Coverage Terms and Conditions.

No retention will apply to **Defense Expenses** resulting from any **Claim**, other than a **Claim** for an employment related **Wrongful Act**, and the Company will reimburse the **Insured Organization** for any such retention paid by the **Insured Organization** in connection with any such **Claim**, if:

1. with respect to such **Claim**, there is a final adjudication of no liability obtained prior to or during trial, in favor of all **Insureds**, by reason of a motion to dismiss or a motion for summary judgment or any similar motion or process, after exhaustion of all appeals, or a final judgment of no liability obtained after trial, in favor of all **Insureds**, after exhaustion of all appeals; or


©2009 The Travelers Companies, Inc. All Rights Reserved

2. such **Claim** is dismissed or there is a stipulation to dismiss such **Claim** with prejudice and without the payment of any monetary consideration by the **Insureds**.

In no event will a settlement of a **Claim** be considered a final adjudication of no liability for purposes of this subsection.

As a condition of any reimbursement of the retention as set forth above, the Company may require a written undertaking on terms and conditions satisfactory to the Company guaranteeing the repayment of such amounts in the event that such **Claim** is reinstituted after payment by the Company.

**B. SETTLEMENT**

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement (a "Settlement Offer") of any **Claim** which is acceptable to the claimant(s), and if the **Insured** will refuse to consent to such Settlement Offer, the **Insured** will be solely responsible for thirty percent (30%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for thirty percent (30%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** does not exceed the remaining applicable limit of liability.

**C. PRESUMPTION OF INDEMNIFICATION**

Regardless of whether **Loss** resulting from any **Claim** against **Insured Persons** is actually indemnified, Insuring Agreement B. and the Retention set forth in the Declarations will apply to any **Loss** as to which indemnification by the **Insured Organization** or any **Outside Entity** is legally permissible, whether or not actual indemnification is made, unless such indemnification is not made by the **Insured Organization** or such **Outside Entity** solely by reason of its **Financial Insolvency**.

The certificate of incorporation, charter, articles of association or other organizational documents of the **Insured Organization** and each **Outside Entity**, including by-laws and resolutions, will be deemed to have been adopted or amended to provide indemnification to the **Insured Person**s to the fullest extent permitted by law.

**D. OTHER INSURANCE AND INDEMNIFICATION**

This **Liability Coverage** will apply only as excess insurance over, and will not contribute with: (1) any other valid and collectible insurance available to any **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Liability Coverage** by reference in such other policy to the Policy Number of this **Liability Policy**; or (2) indemnification to which an **Insured Person** is entitled from any **Outside Entity** other than the **Insured Organization**. This **Liability Coverage** will not be subject to the terms of any other insurance.

**E. OUTSIDE POSITIONS – LIMIT OF LIABILITY**

If any **Claim** against the **Insureds** gives rise to an obligation both under this **Liability Coverage** and under any other coverage or policy of insurance issued by the Company or any of its affiliates to any **Outside Entity**, the Company's maximum aggregate limit of liability under all such policies for all **Loss**, including **Defense Expenses**, for such **Claim** will not exceed the largest single available limit of liability under any such coverage.

**F. ORDER OF PAYMENTS**

If **Loss,** other than **Defense Expenses,** from any **Claim** exceeds the remaining applicable limit of liability as set forth in ITEM 5 of the Declarations:

1. the Company will first pay **Loss** for such **Claim** to which Insuring Agreement A. applies; then
2. to the extent that any amount of the applicable limit of liability will remain available, the Company will pay **Loss** for such **Claim** to which Insuring Agreements B. and C. apply.


©2009 The Travelers Companies, Inc. All Rights Reserved

Upon written request of the **Insured Organization** by and through any **Executive Officer**, the Company will either pay or withhold payment of **Loss** from such **Claim** under Insuring Agreements B. and C., as applicable. In the event of a written request to withhold payment, the Company will make any future payment only for **Loss** from any such **Claim** to which Insuring Agreement A. applies, unless otherwise so instructed upon written request by and through an **Executive Officer** of the **Insured Organization**.


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND DEFINITION OF INSURED PERSONS TO INCLUDE ADVISORY BOARD MEMBERS ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

The following is added to section **III. DEFINTIONS, E. Insured Person** of the **Liability Coverage:**

**Insured Person** also means any natural person who was, is, or becomes a duly elected or appointed member of an advisory board of the **Insured Organization**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CRUCIAL EVENT MANAGEMENT COVERAGE ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

1. The following is added to ITEM 5 of the Declarations:

| | | |
|---|---|---|
| **Crucial Event Management Limit of Liability:** | $ 25,000 | for all **Crucial Event Management Loss**, which amount is part of, and not in addition to, the **Liability Coverage Limit of Liability** or **Liability Coverage Shared Limit of Liability**, if applicable |

2. The following is added to section ***II. INSURING AGREEMENTS*** of the **Liability Coverage**:

**CRUCIAL EVENT MANAGEMENT COVERAGE**

The Company will pay, on behalf of the **Insured Organization**, **Crucial Event Management Loss** for any **Crucial Event Management Matter** first occurring during the **Policy Period.**

3. The following are added to section ***III. DEFINITIONS*** of the **Liability Coverage**:

**Crucial Event Management Firm** means any crucial event or crisis management firm or public relations firm hired by the **Insured Organization** with the Company's written consent, which will not be unreasonably withheld, to perform services for an **Insured** to minimize potential harm to the **Insured Organization** arising from a **Crucial Event Management Matter**.

**Crucial Event Management Loss** means the: reasonable costs, charges, fees, and expenses of the **Crucial Event Management Firm** in connection with the **Crucial Event Management Matter**, incurred subsequent to a **Crucial Event Management Matter**, regardless of whether a **Claim** is made against an **Insured** arising from the **Crucial Event Management Matter** and, in the event a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim.**

**Crucial Event Management Matter** means:

1. the death, incapacity or criminal indictment of any **Insured Person** on whom the **Insured Organization** maintains key person life insurance;
2. a public announcement of the recall of a major product of the **Insured Organization**;
3. a public announcement or accusation that the **Insured Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible real estate, including the loss of use thereof;
4. a public announcement of employee layoffs in excess of **20%** of the **Insured Organization's** total number of employees;
5. a public announcement that the **Insured Organization** has defaulted or intends to default on its debt;
6. a public announcement that the **Insured Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Insured Organization**, or that bankruptcy proceedings are imminent, whether voluntary or involuntary; or

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


© 2011 The Travelers Indemnity Company. All rights reserved.

7. a public announcement that governmental or regulatory proceedings are beginning or may begin against the **Insured Organization**;

A **Crucial Event Management Matter** will first begin when an **Executive Officer** becomes aware of the matter, and will conclude when the **Crucial Event Management Firm** advises the **Insured Organization** that such matter no longer exists or when the Crucial Event Management Limit of Liability set forth in ITEM 5 of the Declarations is exhausted.

4. The following is added to section ***III. CONDITIONS***, **C. LIMITS OF LIABILITY** of the Liability Coverage Terms and Conditions:

The Company's maximum limit of liability for all **Crucial Event Management Loss** first made during the **Policy Period** is the Crucial Event Management Limit of Liability set forth in ITEM 5 of the Declarations. Such Crucial Event Management Limit of Liability is part of, and not in addition to, the Directors, Officers, and Organization Limit of Liability under this **Policy**.

5. The following is added to section ***III. CONDITIONS***, **B. RETENTION** of the **Liability Coverage**:

No Retention applies to **Crucial Event Management Loss**.

6. The following is added to section ***III. CONDITIONS*** of the Liability Coverage Terms and Conditions:

As a condition precedent to exercising rights under this **Policy**, the **Insured** must give the Company written notice of any **Crucial Event Management Matter** or circumstances that could give rise to a **Crucial Event Management Matter** as soon as practicable after an **Executive Officer** first becomes aware of a **Crucial Event Management Matter**.

As a condition precedent to exercising rights under this **Policy**, the **Insured** must:

1. include within any notice of a **Crucial Event Management Matter** or circumstance a description of the **Crucial Event Management Matter** or circumstance, the nature of the **Crucial Event Management Matter** or circumstance, the nature of the alleged or potential damage, the names of **Insured Persons** involved, and a description of how the **Insured** first became aware of such **Crucial Event Management Matter** or circumstance; and

2. give to the Company such other information and cooperation as the Company may reasonably request.

All notices under this section must be sent or delivered to the Company, at the address set forth in ITEM 3 of the Declarations, and will be deemed received and effective upon the earliest of actual receipt by the addressee, or one day following the date such notice is sent.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.


© 2011 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXPRESS CONTRACT EXCLUSION ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

The following replaces section **IV. EXCLUSIONS**, **A. EXCLUSIONS APPLICABLE TO ALL LOSS**, 13., e.:

13. The Company will not be liable for **Loss** for any **Claim,** with respect to Insuring Agreement C. only:

    e. for any liability of the **Insured Organization** under any express contract or agreement, except to the extent that the **Insured Organization** would have been liable in the absence of such express contract or agreement. For the purposes of this exclusion, an express contract or agreement is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2012 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND SECTION IV. EXCLUSIONS, B. 1. - FINAL NON-APPEALABLE ADJUDICATION IN ANY PROCEEDING OTHER THAN A PROCEEDING INITIATED BY THE COMPANY ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

The following replaces section ***IV. EXCLUSIONS***, **B. EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES**, 1., of the **Liability Coverage**:

1. The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** based upon or arising out of any **Insured**:

   a. committing any intentionally dishonest or fraudulent act or omission;

   b. committing any willful violation of any statute, rule, law; or

   c. gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled;

   provided that this exclusion will not apply unless a final non-appealable adjudication in any proceeding other than a proceeding initiated by the Company establishes that such **Insured** committed such intentionally dishonest or fraudulent act or omission, willful violation of any statute, rule or law, or gained such profit, remuneration or advantage to which such **Insured** was not legally entitled.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above- mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


© 2012 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND DEFINITION OF OUTSIDE ENTITY TO INCLUDE ANY NON-PROFIT OR SPECIFIED OUTSIDE ENTITY ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

The following replaces section **III. DEFINITIONS**, **H. Outside Entity**:

**H.** **Outside Entity** means any corporation or organization:

1. other than the **Insured Organization**, that is a non-profit entity; or

2. any Specified Outside Entity as set forth in the Specified Outside Entity schedule below.

**Specified Outside Entity**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2013 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND PRODUCT EXCLUSION ENDORSEMENT – SECURITY HOLDER CLAIM CARVEBACK

This endorsement changes the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

The following replaces section 13., c. of **IV. EXCLUSIONS**, **A. EXCLUSIONS APPLICABLE TO ALL LOSS**:

13. The Company will not be liable for **Loss** for any **Claim**, with respect to Insuring Agreement C only:

    c. based upon or arising out of any malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy, or dangerous condition in such product or in its design or manufacture; provided that this exclusion will not apply to any **Claim** brought by one or more security holders of the **Insured Organization** in their capacity as such;

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2014 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND LOSS DEFINITION TO INCLUDE COVERAGE CARVEBACKS FOR LIQUIDATED DAMAGES UNDER THE AGE DISCRIMINATION IN EMPLOYMENT, EQUAL PAY, AND FAMILY MEDICAL LEAVE ACTS, AND CIVIL PENALTIES UNDER THE FOREIGN CORRUPT PRACTICES ACT ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

---

**It is agreed that:**

The following replaces section **III. DEFINITIONS**, **G. Loss**, 1.:

1. civil or criminal fines, sanctions, liquidated damages, payroll or other taxes, or damages, penalties or types of relief deemed uninsurable under applicable law; provided, **Loss** includes:
   a. liquidated damages awarded under the Age Discrimination in Employment Act, the Equal Pay Act, or the Family Medical Leave Act;
   b. civil penalties assessed against any **Insured Person** pursuant to the Foreign Corrupt Practices Act of 1977 §§ 15 U.S.C. 78dd-2(g)(2)(B) and 78ff(c)(2)(B) and the United Kingdom Bribery Act of 2010 (Eng.) § 11(1)(a), to the extent that the violations of such laws are neither intentional nor willful; or

---

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

---

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**



© 2017 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXTRADITION COVERAGE ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

1. The following is added to section **III. DEFINITIONS**, **A. Claim** of the **Liability Coverage**:

   **Claim** also means a request for **Extradition**.

2. The following is added to section **II. DEFINITIONS**, **F. Defense Expenses** of the Liability Coverage Terms and Conditions:

   **Defense Expenses** also means **Extradition Expenses**.

3. The following is added to section **III. DEFINITIONS** of the **Liability Coverage**:

   ***Extradition*** means a formal process by which an **Insured Person** located in any country is surrendered, or sought to be surrendered, to any other country to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

   ***Extradition Expenses*** means the reasonable legal fees and expenses incurred by an **Insured Person** in lawfully opposing, challenging, resisting, or defending against any request for, or any effort to obtain, the **Extradition** of such **Insured Person**.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


© 2017 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND INSURED VERSUS INSURED AND OUTSIDE ENTITY EXCLUSIONS ENDORSEMENT – WHISTLEBLOWER ACTIVITY CLARIFICATION; CARVEBACKS FOR CREDITOR COMMITTEES, FORMER DIRECTORS AND EMPLOYEES, AND CLAIMS BROUGHT OUTSIDE THE UNITED STATES

This endorsement changes the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

1. The following is added to section **III. DEFINITIONS**:

   ***Whistleblower Activity*** means activity protected under any whistleblower protection provision of any applicable federal, state, local or foreign securities law or regulation that affords protection to a natural person, other than the filing of a proceeding, causing a proceeding to be filed, or any other activity that is engaged in on a voluntary basis.

2. The following replaces section **IV. EXCLUSIONS**, **A. EXCLUSIONS APPLICABLE TO ALL LOSS**, 9.:

   9. The Company will not be liable for **Loss** for any **Claim** by or on behalf of, or in the name or right of, any **Insured**; provided that this exclusion will not apply to:

      a. any **Security Holder Derivative Claim** or any **Security Holder Derivative Demand**;

      b. any **Claim** in the form of a crossclaim, third party claim or other claim for contribution or indemnity by an **Insured Person** and which is part of or results directly from a **Claim** which is not otherwise excluded by the terms of this **Liability Coverage**;

      c. any **Claim** brought by a receiver, liquidator, bankruptcy trustee, member of a creditors' committee, or similar official of the **Insured Organization**;

      d. any **Claim** brought or maintained by a natural person who was a member of the board of directors, officer, member of the board of trustees, member of the board of managers, or a functional equivalent thereof, but who has not served in such a capacity for at least the number of years set forth in the Specified Number of Years of Director, Officer or Trustee Service schedule below, preceding the date the **Claim** is first made; and who brings and maintains the **Claim** without the solicitation, assistance or participation of any current member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof or anyone who has served in such a capacity during the period of years set forth in the Specified Number of Years of Director, Officer or Trustee Service schedule below, immediately preceding the date the **Claim** is first made;

      e. any **Claim** for an employment related **Wrongful Act** brought by an employee;

      f. any **Claim** brought by an employee for a **Wrongful Act** in connection with an offer, purchase or sale of securities if:

         i. the employee brings the **Claim** solely in his or her capacity as a security holder of the **Insured Organization** without the solicitation, assistance or participation of any current member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof or anyone who has served in such capacity during the period of years set forth in the Specified Number of Years of Employed Service schedule below, immediately preceding the date the **Claim** is first made; and

         ii. the employee is not a member of the board of directors, officer, member of the board of trustees, board of managers, or a functional equivalent thereof and has not served in such capacity during the period of years set forth in the Specified Number of Years of Employed Service schedule below, immediately preceding the date the **Claim** is first made; or

      g. any **Claim** brought or maintained by any **Insured Person**, if such **Insured Person** is required to bring such **Claim** under any applicable code, regulation or statute of any jurisdiction outside the United States.


© 2019 The Travelers Indemnity Company. All rights reserved.

For purposes of applying this exclusion, an **Insured Person's Whistleblower Activity** alone will not constitute solicitation, assistance, or participation.

3. The following replaces section **IV. EXCLUSIONS** , **A. EXCLUSIONS APPLICABLE TO ALL LOSS**, 10.:

   10. The Company will not be liable for **Loss** for any **Claim** by or on behalf of, or in the name or right of, any **Outside Entity** against an **Insured Person** for a **Wrongful Act** in his or her **Outside Position** with respect to such **Outside Entity** ; provided that this exclusion will not apply to:

      a. any **Claim** brought derivatively by a security holder of such **Outside Entity** in his or her capacity as such; or

      b. any **Claim** brought by a receiver, liquidator, bankruptcy trustee or similar official of the **Outside Entity**.

**Specified Number of Years of Director**, **Officer or Trustee Service**: 2

**Specified Number of Years of Employed Service**: 2

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.


© 2019 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND INSURED'S DUTIES IN EVENT OF A CLAIM CONDITION ENDORSEMENT – REPLACE EXECUTIVE OFFICER DESIGNATION ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

Section **III. CONDITIONS, F. INSURED'S DUTIES IN EVENT OF A CLAIM,** is replaced by the following:

**F. INSURED'S DUTIES IN THE EVENT OF A CLAIM**

The **Insured's** duty to report a **Claim** commences on the earliest date a written notice thereof is received by **CEO, CFO, HR Manager, Risk Manager, General Counsel or the functional equivalents thereof;**. If **CEO, CFO, HR Manager, Risk Manager, General Counsel or the functional equivalents thereof;** becomes aware that a **Claim** has been made against any **Insured,** the **Insured,** as a condition precedent to any rights under this **Liability Policy,** must give to the Company written notice of the particulars of such **Claim,** including all facts related to any alleged **Wrongful Act,** the identity of each person allegedly involved in or affected by such **Wrongful Act,** and the dates of the alleged events, as soon as practicable. The **Insured** agrees to give the Company such information, assistance and cooperation as it may reasonably require.

All notices under this subsection must be sent by mail or prepaid express courier to the address set forth in ITEM 3 of the Declarations and will be effective upon receipt. The **Insured** agrees not to voluntarily settle any **Claim**, make any settlement offer, assume or admit any liability or,except at the **Insured's** own cost, voluntarily make any payment, pay or incur any **Defense Expenses**, or assume any obligation or incur any other expense, without the Company's prior written consent, such consent not to be unreasonably withheld. The Company is not liable for any settlement, **Defense Expenses**, assumed obligation or admission to which it has not consented.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITION OF SPECIFIED PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

---

**It is agreed that:**

The following is added to section **IV. EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO ALL LOSS** of the **Liability Coverage:**

The Company will not be liable for **Loss** for any **Claim** based on or arising out of any **Wrongful Act** in the rendering of, or failure to render, any professional service for others in connection with the **Insured Organization's** Specified Professional Service as set forth in the Specified Professional Service schedule below.

**Specified Professional Service**

**Debt Collection**

---

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

---

Issuing Company: Travelers Casualty and Surety Company of America

Policy Number: 107298906

---


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INITIAL PUBLIC OFFERING EXCLUSION (BROAD) ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

1. The following is added to section **III. DEFINITIONS** of the **Liability Coverage:**

   ***Initial Public Offering Filing*** means the filing by the **Insured Organization** of an offering memorandum or registration statement including a Form S-1 under the Securities Act of 1933 or foreign equivalent, with the Securities Exchange Commission or foreign equivalent.

   ***Initial Public Offering*** means the actual offer, sale, or trading of securities in connection with an **Initial Public Offering Filing**.

2. The following replaces section **IV. EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO ALL LOSS,** 11. of the **Liability Coverage:**

   11. The Company will not be liable for **Loss** for any **Claim** based on or arising out of the sale or trading of securities pursuant to an **Initial Public Offering**, including any ongoing reporting requirements under Securities Exchange Act of 1934 or foreign equivalent provided, that this exclusion will not apply to:

       a. any offer, purchase or sale of securities, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933 or foreign equivalent (an "Exempt Transaction"); or

       b. the failure of the **Insured Organization** to undertake or complete an **Initial Public Offering**; or

       c. a **Wrongful Act** relating to the **Insured Organization's** preparation for any **Initial Public Offering**, including any presentations made by the **Insured Organization** or **Executive Officers** in connection with such offering.

   This exclusion shall not apply until the actual trading of securities in connection with an **Initial Public Offering**.

   In addition, if the **Named Insured** provides notice of an **Initial Public Offering** within 30 days of the **Initial Public Offering Filing** thereof to the Company along with any additional information which the Company may request, the Company shall offer to the **Insured Organization** a proposal for coverage for such resulting **Initial Public Offering** subject to any additional terms and conditions,and payment of any additional premium, described in such proposal.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CANCELLATION AND NONRENEWAL ENDORSEMENT

This endorsement modifies insurance provided under the following if applicable:

**Liability Policy**
**Kidnap and Ransom Policy**
**Identity Fraud Expense Reimbursement Policy**

**It is agreed that:**

The CANCELLATION section of this policy is replaced by the following:

CANCELLATION

The Company may cancel this policy for failure to pay a premium when due, in which case
**(twenty) (20)** days (number of days must equal or exceed twenty (20) days)
written notice shall be given to the **Named Insured or Insurance Representative**, unless payment in full is received within twenty (20) days of the **Named Insured or Insurance Representative's** receipt of such notice of cancellation. Policies written for a period greater than one year may be cancelled by mailing or delivering a notice of cancellation
**(thirty) (30)** days (number of days must equal or exceed thirty (30) days)
before the Expiration Date set forth in ITEM 2 of the Declarations. The Company shall have the right to the premium amount for the portion of the **Policy Period** during which this policy was in effect.

Subject to the provisions set forth in Liability Coverage Terms and Conditions Section III. CONDITIONS K. CHANGE OF CONTROL, if applicable, the **Named Insured or Insurance Representative** may cancel any coverage by mailing the Company written notice stating when, thereafter, not later than the Expiration Date set forth in ITEM 2 of the Declarations, such cancellation will be effective. In the event the **Named Insured or Insurance Representative** cancels, the earned premium will be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

The Company will not be required to renew this policy upon its expiration. If the Company elects not to renew, it will provide to the **Named Insured or Insurance Representative** written notice to that effect
**(thirty) (30)** days (number of days must equal or exceed thirty (30) days)
before the Expiration Date set forth in ITEM 2 of the Declarations.

If the notice of nonrenewal is mailed less than thirty (30) days before the Expiration Date of the policy, coverage will remain in effect until thirty (30) days after the date of mailing the notice, unless the **Named Insured or Insurance Representative** notifies us in writing that he accepts the nonrenewal as stated. We will notify the **Named Insured or Insurance Representative** of the amount of the premium for the time after the expiration date that the coverage remains in effect, and the **Named Insured or Insurance Representative** will pay such premium unless he accepts the stated nonrenewal. The premium will be calculated using the rates originally applicable to the coverage. Any notice of cancellation or nonrenwal will be mailed or delivered to the **Named Insured or Insurance Representative** and to the agent at the last mailing address known to us.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


©2009 The Travelers Companies, Inc. All Rights Reserved

TRAVELERS
One Tower Square
Hartford, CT 06183

## Toll-Free ERISA HelpLine

As part of the services provided through Risk Management PLUS+ Online®, Travelers Bond & Specialty Insurance is pleased to provide its Fiduciary Liability policyholders with access to the ERISA HelpLine, a toll-free hotline designed for quick, practical guidance on day-to-day workplace issues.

To utilize the HelpLine, call **1-888-401KLAW (1-888-401-5529).**

Through the ERISA HelpLine, policyholders are eligible to receive up to one hour of consultation with an ERISA attorney from the law firm of Morgan Lewis at no charge. Morgan Lewis is a global law firm with a national ERISA practice and more than 1,400 lawyers in 22 offices throughout the world.

The ERISA HelpLine is designed to provide general guidance on issues relating to employee benefits and ERISA law. From reviewing issues related to contingent workers to questions about HIPAA, attorneys from Morgan Lewis are there to help you. The ERISA HelpLine is available toll-free from anywhere in the United States.

We encourage policyholders to take advantage of this no-cost hotline. For more information about the hotline, go to www.rmplusonline.com/ERISAHelpLine.

This material does not amend, or otherwise affect, the provisions or coverages of any insurance policy or bond issued by Travelers. It is not a representation that coverage does or does not exist for any particular claim or loss under any such policy or bond. Coverage depends on the facts and circumstances involved in the claim or loss, all applicable policy or bond provisions, and any applicable law. Availability of coverage referenced in this document can depend on underwriting qualifications and state regulations.

Travelers Casualty and Surety Company of America,and its property casualty affiliates, 1 Tower Square, Hartford, CT 06183


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## POLICY CHANGES ENDORSEMENT

This endorsement changes the following:

Private Company Directors and Officers Liability, Employment Practices Liability, Fiduciary Liability

**It is agreed that:**

1. As of the Effective Date of this endorsement, the Declarations is amended as indicated below by ☒:

☐ **ITEM 1**:

☐ **NAMED INSURED/INSURANCE REPRESENTATIVE:**

☐ D/B/A:

☐ Principal Address:

☐ **ITEM 2**:

**POLICY PERIOD:**

Inception Date: Expiration Date:

12:01 A.M. local time both dates at the Principal Address stated in ITEM 1.

☒ **ITEM 5**:

☐ **PRIVATE COMPANY DIRECTORS AND OFFICERS LIABILITY** (but only for **Claims** first made on or after the Effective Date of this endorsement)

| | | | |
|---|---|---|---|
| ☐ **Limit of Liability:** | | | for all **Claims** |
| ☐ **Supplemental Personal Indemnification Coverage:** | ☐ Applicable | | ☐ Not Applicable |
| ☐ **Supplemental Personal Indemnification Limit of Liability:** | | | for all **Claims** |
| ☐ **Additional Defense Coverage:** | ☐ Applicable | | ☐ Not Applicable |

Issuing Company: Travelers Casualty and Surety Company of America Effective Date: 12/04/2020

Policy Number: 107298906



© 2019 The Travelers Indemnity Company. All rights reserved.

| | | | |
|---|---|---|---|
| ☐ | **Additional Defense Limit of Liability:** | | for all **Claims** |
| ☐ | **Investigation Expense Limit of Liability:** | | for all **Claims** |
| ☐ | **Retention:** | | for each **Claim** under Insuring Agreement A.<br>for each **Claim** under Insuring Agreement B.<br>for each **Claim** under Insuring Agreement C. |
| ☐ | **Prior and Pending Proceeding Date:** | | |
| ☐ | **Continuity Date:** | | |

☒ **EMPLOYMENT PRACTICES LIABILITY** (but only for **Claims** first made on or after the Effective Date of this endorsement)

| | | | |
|---|---|---|---|
| ☒ | **Limit of Liability:** | $2,000,000 | for all **Claims** |
| ☒ | **Third Party Claim Coverage**: | ☒ Applicable | ☐ Not Applicable |
| ☒ | **Additional Defense Coverage:** | ☐ Applicable | ☒ Not Applicable |
| ☒ | **Additional Defense Limit of Liability:** | Not Applicable | for all **Claims** |
| ☒ | **Retention:** | $25,000<br>$25,000 | for each **Claim** under Insuring Agreement A.<br>for each **Claim** under Insuring Agreement B., if applicable |
| ☒ | **Prior and Pending Proceeding Date:** | **Claims** for **Wrongful Employment Practices:**December 04, 2015<br>**Claims** for **Third Party Wrongful Acts:**December 04, 2015 | |
| ☒ | **Continuity Date:** | **Claims** for **Wrongful Employment Practices:**December 04, 2015<br>**Claims** for **Third Party Wrongful Acts:**December 04, 2015 | |

☒ **FIDUCIARY LIABILITY** (but only for **Claims** first made and any **Settlement Program Notice** first received on or after the Effective Date of this endorsement)

| | | | |
|---|---|---|---|
| ☒ | **Limit of Liability:** | $1,000,000 | for all **Claims** |
| ☒ | **Settlement Program Limit of Liability:** | $250,000 | for each **Settlement Program Notice**, which amount is included within, and not in addition to, any applicable limit of liability |


© 2019 The Travelers Indemnity Company. All rights reserved.

| | | | |
|---|---|---|---|
| ☒ | **HIPAA Limit of Liability:** | $1,000,000 | which amount is included within, and not in addition to, any applicable limit of liability |
| ☒ | **Additional Defense Coverage:** | ☐ Applicable | ☒ Not Applicable |
| ☒ | **Additional Defense Limit of Liability:** | Not Applicable | for all **Claims** |
| ☒ | **Retention:** | $0 | for each **Claim** under Insuring Agreement A |
| | | $0 | for each **Settlement Program Notice** under Insuring Agreement B |
| ☒ | **Prior and Pending Proceeding Date:** | December 04, 2020 | |
| ☒ | **Continuity Date:** | December 04, 2020 | |

☒ **ITEM 6**:

☒ **PREMIUM FOR THE POLICY PERIOD FOR ALL COVERAGES:**

[redacted] Policy Premium

☐ **ITEM 7**:

☐ **TYPE OF CLAIM DEFENSE FOR LIABILITY COVERAGES** (subject to LIA-3001)**:**

☐ Reimbursement

☐ Duty-to-Defend

☐ Varies by Coverage - See Expanded Claim Defense Options Endorsement

Only the type of CLAIM DEFENSE marked "☒" is included in this policy.

☐ **ITEM 8**:

☐ **EXTENDED REPORTING PERIOD FOR LIABILITY COVERAGES** (subject to LIA-3001)**:**

Additional Premium Percentage:

Additional Months:

(If exercised in accordance with the applicable EXTENDED REPORTING PERIOD)

☐ **ITEM 9**:

**RUN-OFF EXTENDED REPORTING PERIOD FOR LIABILITY COVERAGES** (subject to LIA-3001)**:**

Additional Premium Percentage:


© 2019 The Travelers Indemnity Company. All rights reserved.

Additional Months:

(If exercised in accordance with the applicable CHANGE OF CONTROL condition)

☐ **ITEM 10**:

**ANNUAL REINSTATEMENT OF THE LIABILITY COVERAGE LIMIT OF LIABILITY FOR LIABILITY COVERAGES** (subject to LIA-3001):

☐ Applicable

☐ Not Applicable

Only those coverage features marked "☒ Applicable" are included in this policy.

☐ **ITEM 12:**

**LIABILITY COVERAGE SHARED LIMIT OF LIABILITY FOR LIABILITY COVERAGES** (subject to LIA-3001)**:**

☐ Applicable ☐ Not Applicable

for all **Claims** under the following Liability Coverages that are subject to the Terms & Conditions in LIA-3001:

If the **Liability Coverages** selected in ITEM 12 are also **Scheduled Coverages** selected in ITEM 13, then the amount of the **Liability Coverage Shared Limit of Liability** set forth in ITEM 12 is part of, and not in addition to, the **Shared Limit of Liability/Limit of Insurance for Scheduled Coverages** set forth in ITEM 13.

☐ **ITEM 13:**

**SHARED LIMIT OF LIABILITY/LIMIT OF INSURANCE FOR SCHEDULED COVERAGES:**

☐ Applicable ☐ Not Applicable

for all **Claims** and limits of insurance under the following **Scheduled Coverages**:

The Company's maximum liability for the **Policy Period** for all **Claims** and limits of insurance under the **Scheduled Coverages** listed in ITEM 13 will not exceed the amount of the **Shared Limit of Liability/Limit of Insurance for Scheduled Coverages**. Any Additional Defense Limit of Liability, Supplemental Personal Indemnification Limit of Liability, or Identity Fraud Expense Reimbursement Limit of Insurance is in addition to, and not part of, the **Shared Limit of Liability/Limit of Insurance for Scheduled Coverages**.

2. As of the Effective Date of this endorsement, this policy is amended as indicated below by ☒:

☒ Forms and endorsements added:
ACF-7007-0811; EPL-19020-0712; EPL-19050-0316; EPL-19057-0517; EPL-19058-0517; EPL-19059-0517; EPL-19060-0517; EPL-19063-0319; EPL-3001-0109; EPL-7059-0109; EPL-7110-0109; FRI-19030-0712; FRI-19065-1112; FRI-19086-0414; FRI-19093-1015; FRI-19103-0517; FRI-3001-0109; LIA-19002-1111; LIA-19137-0517; LIA-7097-0109; LIA-7305-0112; LIA-7330-0109

☒ Forms and endorsements deleted:


© 2019 The Travelers Indemnity Company. All rights reserved.

LIA-19002-1111; LIA-19137-0517; LIA-7097-0109; LIA-7330-0109

☒ Forms and endorsements amended:

LIA-10001-0610

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.


© 2019 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CROSS-COVERAGE NOTICE ENDORSEMENT

This endorsement changes the following:

**Private Company Directors and Officers Liability, Employment Practices Liability, Fiduciary Liability**

**It is agreed that:**

Notice provided to the Company of any:

1. **Claim**, **Potential Claim**, **Settlement Program Notice**, or circumstances which may give rise to a **Claim** under any Management Coverage or **Liability Coverage**; or

2. loss or situation that may result in loss, **Insured Event**, or **Identity Fraud** under any Crime Coverage or Other Coverage;

shall be deemed to have been provided under the Policy in its entirety.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


© 2011 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND NUMBER OF DAYS FOR ELECTING EXTENDED REPORTING PERIOD ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability, Employment Practices Liability**

**It is agreed that:**

Solely with respect to the **Liability Coverage(s)** shown above, section **III. CONDITIONS, O. EXTENDED REPORTING PERIOD** of the **Liability Coverage Terms and Conditions** is replaced by the following:

**O. EXTENDED REPORTING PERIOD**

At any time prior to or within **90** days after the effective date of termination or cancellation of any Liability Coverage for any reason other than nonpayment of premium, the **Named Insured** may give the Company written notice that it desires to purchase an Extended Reporting Period for the period set forth in ITEM 8 of the Declarations following the effective date of such termination or cancellation, regarding **Claims** made during such Extended Reporting Period against persons or entities who at or prior to the effective date of termination or cancellation are **Insureds**, but only for **Wrongful Acts** occurring wholly prior to the effective date of the termination or cancellation and which otherwise would be covered by such **Liability Coverage**, subject to the following provisions:

1. such Extended Reporting Period will not provide a new, additional or renewed limit(s) of liability; and

2. the Company's maximum limit of liability for all **Claims** made during such Extended Reporting Period will be only the remaining portion of the applicable limit of liability set forth in the Declarations as of the effective date of the termination or cancellation;

The premium due for the Extended Reporting Period will equal the percentage set forth in ITEM 8 of the Declarations of the annualized premium of the applicable **Liability Coverage**, including the fully annualized amount of any additional premiums charged by the Company during the **Policy Year** prior to such termination or cancellation. The entire premium for the Extended Reporting Period will be deemed to have been fully earned at the commencement of such Extended Reporting Period.

The right to elect the Extended Reporting Period will terminate unless written notice of such election, together with payment of the additional premium due, is received by the Company within **90** days of the effective date of the termination or cancellation.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SETTLEMENT CONDITION ENDORSEMENT

This endorsement modifies the following when indicated below by ☒:

**It is agreed that:**

☒ **Private Company Directors and Officers Liability**

The following replaces **B. SETTLEMENT** of the ***CONDITIONS*** section of the **Liability Coverage**:

**B. SETTLEMENT**

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement (a "Settlement Offer") of any **Claim** which is acceptable to the claimant(s), and if the **Insured** refuses to consent to such Settlement Offer, the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** does not exceed the remaining applicable limit of liability.

☐ **Financial Institution Professional Liability**

The following replaces **B. SETTLEMENT** of the ***CONDITIONS*** section of the **Liability Coverage**:

**B. SETTLEMENT**

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement (a "Settlement Offer") of any **Claim** which is acceptable to the claimant(s), and if the **Insured** refuses to consent to such Settlement Offer, the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** does not exceed the remaining applicable limit of liability.

☒ **Employment Practices Liability**

The following replaces section ***IV. CONDITIONS***, **A. SETTLEMENT** of the **Liability Coverage**:

**A. SETTLEMENT**

1. The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that:

   a. the **Insured** and the party bringing a **Claim** hereunder consent to the first settlement offer recommended by the Company (the "Settlement Offer") within thirty (30) days of being made aware of such offer by the Company; and

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 107298906


©2010 The Travelers Companies, Inc. All Rights Reserved

b. the amount of such Settlement Offer:

i. is less than the remaining applicable limit of liability available at the time; and

ii. combined with **Defense Expenses** incurred with respect to such **Claim**, exceeds the Retention;

the Retention will be retroactively reduced by ten percent (10%) with respect to such **Claim**.

2. If the **Insured** does not consent to the Settlement Offer within thirty (30) days of being made aware of such offer by the Company:

a. the Retention will not be reduced as provided in paragraph 1. above even if consent is given to the same or subsequent Settlement Offer; and

b. the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss** , other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

☒ **Fiduciary Liability**

The following replaces section ***V. CONDITIONS***, **A. SETTLEMENT** of the **Liability Coverage**:

**A. SETTLEMENT**

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement of any **Claim** which is acceptable to the claimant(s) (a "Settlement Offer"), and if the **Insured** refuses to consent to such Settlement Offer, the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

☐ **Miscellaneous Professional Liability**

The following replaces section ***V. CONDITIONS***, **B. SETTLEMENT** of the **Liability Coverage**:

**B. SETTLEMENT**

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement (a "Settlement Offer") of any **Claim** which is acceptable to the claimant(s), and if the **Insured** refuses to consent to such Settlement Offer, the **Insured** will be solely responsible for twenty percent (20%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for twenty percent (20%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.


©2010 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INCREASED LIMIT OF LIABILITY - PRIOR AND PENDING PROCEEDING, CONTINUITY OR RETROACTIVE DATES ENDORSEMENT

This endorsement changes the following:

**It is agreed that:**

1. Solely with respect to that portion of the **Liability Coverage Limit of Liability** that is **Limit 1** excess of **Limit 2** as shown below respectively in the Increased Limits Schedule, as applicable, if a date is shown for Prior and Pending Proceeding Date, Continuity Date or Retroactive Date in the Increased Limits Schedule, such date replaces the corresponding date set forth in ITEM 5 of the Declarations.

**Increased Limits Schedule**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**



©2012 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADVANCEMENT OF THE RETENTION ENDORSEMENT

This endorsement changes the following:
**Fiduciary Liability, Employment Practices Liability, Private Company Directors and Officers Liability**

**It is agreed that:**

The following is added to section **III*. CONDITIONS***, **B. RETENTION** of the Liability Coverage Terms and Conditions:

Notwithstanding anything in this section III. CONDITIONS, B. RETENTION to the contrary, if the **Insured Organization** is permitted by law to indemnify any **Insured Person** for any applicable Retention but refuses or fails to do so and such refusal or failure is not by reason of **Financial Insolvency**, then the Company will advance the amount of any applicable Retention that would otherwise be covered under this **Liability Coverage** on behalf of such **Insured Person** and will be subrogated to the rights of such **Insured Person** pursuant to section III. CONDITIONS, I. SUBROGATION for purposes of recovering such Retention amount from the **Insured Organization**.

The **Insured Organization's** failure or refusal to indemnify such **Insured Person** will be deemed to have occurred if the **Insured Organization** has neither paid such Retention on behalf of the **Insured Person**, nor acknowledged its obligation to do so, within 60 days of the **Insured Person's** written demand to the **Insured Organization** for indemnification or payment of such Retention.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2011 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTOMATIC COVERAGE FOR ALL FORMED SUBSIDIARIES AND ACQUIRED SUBSIDIARIES WITH ASSETS NOT EXCEEDING 35% ENDORSEMENT

This endorsement changes the following:
**Private Company Directors and Officers Liability, Employment Practices Liability, Fiduciary Liability**

**It is agreed that:**

The following amends section **III. CONDITIONS**, **L. ACQUISITIONS** of the Liability Coverage Terms and Conditions:

1. The **Insureds** need not complete an application for, and need not provide written notice of, the formation of any **Subsidiary** during the **Policy Period** by the **Insured Organization** in order for the Company to provide coverage for a formed **Subsidiary** and **Insured Persons** thereof.
2. The words “forms” and “formation” are deleted from the first paragraph.
3. The second paragraph is replaced by the following:

   The 90-day notice requirement and the 90-day limitation of coverage will not apply provided that: (1) the assets of the acquired **Subsidiary** do not exceed 35% of the total assets of the **Insured Organization** as reflected in the **Insured Organization’s** most recent fiscal year-end financial statement; or (2) the acquisition occurs less than 90 days prior to the end of the **Policy Period**.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2017 The Travelers Indemnity Company. All rights reserved.

TRAVELERS

**_EMPLOYMENT PRACTICES LIABILITY COVERAGE_**

***THIS IS A CLAIMS MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ ALL TERMS CAREFULLY.***

## *I. INSURING AGREEMENT*

A. The Company will pay on behalf of the **Insured**, **Loss** for any **Employment Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a **Wrongful Employment Practice**.

B. If ITEM 5 of the Declarations indicates that Third Party Claim Coverage is applicable, the Company will pay on behalf of the **Insured**, **Loss** for any **Third Party Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a **Third Party Wrongful Act**.

## *II. DEFINITIONS*

Wherever appearing in this **Liability Coverage**, the following words and phrases appearing in bold type will have the meanings set forth in section II. DEFINITIONS:

A. ***Claim*** means an **Employment Claim** or, if ITEM 5 of the Declarations indicates that Third Party Claim Coverage is applicable, a **Third Party Claim**. A **Claim** is deemed to be made on the earliest date that any **Executive Officer** first receives written notice of such **Claim**. However, if any **Insured Person** who is not an **Executive Officer** first receives written notice of a **Claim** during the **Policy Period**, but no **Executive Officer** receives written notice of such **Claim** until after the **Policy Period** has expired, then such **Claim** will be deemed to have been made on the date such **Insured Person** first received written notice of the **Claim**.

B. ***Claimant*** means:

1. a past, present or future **Employee** of or applicant for employment with the **Insured Organization**;

2. a governmental entity or agency, including the Equal Employment Opportunity Commission or similar federal, state or local agency, when acting on behalf of or for the benefit of a past, present or future **Employee** or applicant for employment with the **Insured Organization**; or

3. any **Independent Contractor**.

C. ***Discrimination*** means any actual or alleged:

1. violation of any employment discrimination law; or

2. disparate treatment of, or the failure or refusal to hire a **Claimant** or **Outside Claimant** because he or she is or claims to be a member of a class which is or is alleged to be legally protected.

D. ***Employee*** means a natural person whose labor or service is engaged by and directed by the **Insured Organization** and:

1. who is on the payroll of the **Insured Organization**, including:

a. any in-house general counsel of the **Insured Organization**; and


©2009 The Travelers Companies, Inc. All Rights Reserved

b. any other full-time, part-time, and seasonal worker;

2. who is a volunteer or temporary worker; or

3. whose services have been leased by the **Insured Organization**.

**Independent Contractors** are not **Employees**. The status of an individual as an **Employee** will be determined as of the date of the alleged **Wrongful Act**.

**E.** ***Employment Agreement*** means any express or implied employment agreement regardless of the basis in which such agreement is alleged to exist, other than a collective bargaining agreement.

**F.** ***Employment Claim*** means:

1. a written demand for monetary damages or non-monetary relief;

2. a civil proceeding commenced by service of a complaint or similar pleading;

3. a criminal proceeding commenced by filing of charges;

4. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order, service of summons or similar document, including a proceeding before the Equal Employment Opportunity Commission or any similar governmental agency; provided that in the context of an audit conducted by the Office of Federal Contract Compliance Programs, **Employment Claim** will be limited to a Notice of Violation or Order to Show Cause or written demand for monetary damages or non-monetary relief;

5. an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld; or

6. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against an **Insured** by or on behalf of or for the benefit of a **Claimant**, or against an **Insured Person** serving in an **Outside Position** by or on behalf of or for the benefit of an **Outside Claimant**, for a **Wrongful Employment Practice**; provided that **Employment Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

**G.** ***Executive Officer*** means an officer, member of the board of directors, natural person partner, principal, risk manager, **LLC Manager**, in-house general counsel, member of the staff of the human resources department of the **Insured Organization** or a functional equivalent thereof.

**H.** ***Independent Contractor*** means any natural person who is not an **Employee** but who performs labor or service for the **Insured Organization** pursuant to a written contract or agreement. The status of an individual as an **Independent Contractor** will be determined as of the date of the alleged **Wrongful Act**.

**I.** ***Insured*** means the **Insured Persons** and the **Insured Organization**.

**J.** ***Insured Organization*** means the **Named Insured**, any **Subsidiary**, and any such entity as a debtor in possession, as such term is used in Chapter 11 of the United States of America Bankruptcy Code, as amended, or the equivalent of a debtor in possession under any applicable foreign law.

**K.** ***Insured Person*** means any natural person who was, is or becomes an **Employee**, duly elected or appointed member of the board of directors, officer, member of the board of trustees, member of the board of regents, member of the board of governors, natural person partner, **LLC Manager** or a functional equivalent thereof of the **Insured Organization** for **Wrongful Acts** committed in the discharge of his or her duties as such, or while serving in an **Outside Position**.


©2009 The Travelers Companies, Inc. All Rights Reserved

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

**L.** ***Loss*** means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements; judgments; back and front pay; compensatory damages; punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages; prejudgment and postjudgment interest; and legal fees and expenses of a **Claimant** or **Outside Claimant** awarded pursuant to a court order or judgment. "**Loss**" does not include:

1. civil or criminal fines; sanctions; liquidated damages other than liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act; payroll or other taxes; or damages, penalties or types of relief deemed uninsurable under applicable law;

2. future compensation, including salary or benefits, for a **Claimant** or **Outside Claimant** who has been or will be hired, promoted or reinstated to employment pursuant to a settlement, court order, judgment, award or other resolution of a **Claim**; or that part of any judgment or settlement which constitutes front pay, future monetary losses including pension and other benefits, or other future economic relief or the value or equivalent thereof, if the **Insured** has been ordered, or has the option pursuant to a judgment, order or other award or disposition of a **Claim**, to promote, accommodate, reinstate, or hire the **Claimant** or **Outside Claimant** to whom such sums are to be paid, but fails to do so;

3. medical, pension, disability, life insurance, **Stock Benefit** or other similar employee benefits, except and to the extent that a judgment or settlement of a **Claim** includes a monetary component measured by the value of:

   a. medical, pension, disability, life insurance, or other similar employee benefits; or

   b. **Stock Benefits** of an **Insured Organization** whose equity or debt securities are not publicly traded, including on a stock exchange or another organized securities market,

   as consequential damages for a **Wrongful Act**; or

4. any amount allocated to non-covered loss pursuant to Section III. CONDITIONS P. ALLOCATION of the Liability Coverage Terms and Conditions.

**M.** ***Outside Claimant*** means:

1. a past, present or future **Outside Employee** of or applicant for employment with an **Outside Entity**;

2. a governmental entity or agency, including the Equal Employment Opportunity Commission or similar federal, state or local agency, when acting on behalf of or for the benefit of present or former **Outside Employees** or applicants for employment; or

3. any natural person independent contractor who performs labor or service for the **Outside Entity** pursuant to a written contract or agreement, where such labor or service is under the exclusive direction of the **Outside Entity**.

**N.** ***Outside Employee*** means a natural person whose labor or service is engaged by and directed by an **Outside Entity** and:

1. who is on the payroll of an **Outside Entity**, including:

   a. any in-house general counsel of the **Outside Entity**; and

   b. any other full-time, part-time, and seasonal worker;


©2009 The Travelers Companies, Inc. All Rights Reserved

2. who is a volunteer or temporary worker; or

3. whose services have been leased by the **Outside Entity**.

The status of an individual as an **Outside Employee** will be determined as of the date of the alleged **Wrongful Employment Practice**.

**O.** ***Outside Entity*** means a corporation or organization:

1. other than the **Insured Organization**, which is exempt from federal income tax as an entity described in Section 501(c)(3), 501(c)(4), or 501(c)(10) of the Internal Revenue Code of 1986, as amended; or

2. specifically scheduled as an **Outside Entity** by endorsement to this **Liability Policy**.

**P.** ***Outside Position*** means service by an **Insured Person** as a member of the board of directors, officer, member of the board of trustees, member of the board of managers, member of the board of regents, member of the board of governors or a functional equivalent thereof with an **Outside Entity**, but only during such time that such service is with the knowledge, consent, and at the specific request of the **Insured Organization**.

**Q.** ***Retaliation*** means any actual or alleged **Wrongful Termination** or other adverse employment action against a **Claimant** or **Outside Claimant** on account of such **Claimant's** or **Outside Claimant's** exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat to disclose to a superior or to any governmental agency alleged violations of the law, or on account of the **Claimant** or **Outside Claimant** having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law.

**R .** ***Sexual Harassment*** means any actual or alleged unwelcome sexual advances, requests for sexual favors or any other conduct of a sexual nature:

1. which is made a term or condition of a **Claimant's** or **Outside Claimant's** employment or advancement;

2. which the submission to or rejection of is used as a basis for decisions affecting the **Claimant** or **Outside Claimant**; or

3. which has the purpose or effect of creating an intimidating, hostile or offensive work environment.

**S.** ***Stock Benefit*** means compensation provided to **Employees** in the form of equity or debt securities or rights to purchase equity or debt securities or the value thereof, including any grant of stock, restricted stock, stock options or warrants, phantom stock, stock appreciation rights, or performance shares.

**T.** ***Subsidiary*** means:

1. any corporation, partnership, limited liability company or other entity organized under the laws of any jurisdiction in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or indirectly, more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent;

2. any non-profit entity over which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** has the ability to exercise managerial control;

3. any entity operated as a joint venture, in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or indirectly, exactly fifty percent (50%) of the issued and outstanding voting stock and whose management and operation the **Insured**


©2009 The Travelers Companies, Inc. All Rights Reserved

**Organization** solely controls, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock; or

4. subject to the provisions set forth in Section III. CONDITIONS L. ACQUISITIONS of the Liability Coverage Terms and Conditions, any entity that the **Insured Organization** acquires or forms during the **Policy Period** in which the **Named Insured** owns, directly or indirectly, more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent, or, in the case of any non-profit entity that does not issue securities, over which the **Named Insured** has the ability to exercise managerial control.

**U.** ***Third Party Claim*** means:

1. a written demand for monetary damages or non-monetary relief;

2. a civil proceeding commenced by service of a complaint or similar pleading;

3. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order, service of summons, or similar document;

4. an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld; or

5. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against an **Insured** by or on behalf of or for the benefit of any natural person other than a **Claimant** for a **Third Party Wrongful Act**; provided that **Third Party Claim** does not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement or any type of criminal proceeding.

**V.** ***Third Party Wrongful Act*** means, with respect to any natural person other than a **Claimant**, any actual or alleged:

1. violation of any federal, state or local law or statute or any common law prohibiting any kind of discrimination; or

2. unwelcome sexual advances, requests for sexual favors or any other conduct of a sexual nature which violates the civil rights of any such person.

**W.** ***Workplace Harassment*** means any actual or alleged harassment, other than **Sexual Harassment**, which creates a work environment that interferes with job performance, or creates an intimidating, hostile, or offensive work environment.

**X.** ***Wrongful Act*** means:

1. a **Wrongful Employment Practice** occurring in the course of or arising out of a **Claimant's** employment, application for employment or performance of services with the **Insured Organization**;

2. a **Wrongful Employment Practice** by an **Insured Person** in his or her **Outside Position** occurring in the course of or arising out of an **Outside Claimant's** employment, application for employment or performance of services with an **Outside Entity**; or

3. **a Third Party Wrongful Act**, if ITEM 5 of the Declarations indicates that Third Party Claim Coverage has been purchased.


©2009 The Travelers Companies, Inc. All Rights Reserved

All **Related Wrongful Acts** are a single **Wrongful Act** for purposes of this **Liability Coverage**, and all **Related Wrongful Acts** will be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period**.

**Y**. ***Wrongful Employment Practice*** means any actual or alleged:

1. **Discrimination**;
2. **Retaliation**;
3. **Sexual Harassment**;
4. **Workplace Harassment**;
5. **Wrongful Termination**;
6. breach of **Employment Agreement**;
7. violation of the Family Medical Leave Act;
8. employment-related misrepresentation;
9. employment-related defamation, including libel or slander, or invasion of privacy;
10. failure or refusal to create or enforce adequate workplace or employment policies and procedures, employ or promote, including wrongful failure to grant bonuses or perquisites, or grant tenure;
11. wrongful discipline, wrongful demotion, denial of training, deprivation of career opportunity, denial or deprivation of seniority, or evaluation;
12. employment-related wrongful infliction of emotional distress; or
13. negligent hiring, supervision of others, training, or retention committed or allegedly committed by any **Insured**, but only if such act is alleged in connection with a **Wrongful Employment Practice** set forth in 1. through 12. above; provided that the **Claim** alleging the negligent hiring, supervision of others, training, or retention is brought by or on behalf of any **Claimant** or **Outside Claimant**.

**Z**. ***Wrongful Termination*** means the actual, alleged or constructive termination of an employment relationship between a **Claimant** and the **Insured Organization**, or the actual or constructive termination of an employment relationship between an **Outside Claimant** and an **Outside Entity**, in a manner or for a reason which is contrary to applicable law or public policy, or in violation of an **Employment Agreement**.

## *III. EXCLUSIONS*

### A. EXCLUSIONS APPLICABLE TO ALL LOSS

1. The Company will not be liable for **Loss** for any **Claim** for any damage to, or destruction of, loss of, or loss of use of, any tangible property including damage to, destruction of, loss of, or loss of use of, tangible property that results from inadequate or insufficient protection from soil or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot.
2. The Company will not be liable for **Loss** for any **Claim** for any bodily injury, sickness, disease, death, or loss of consortium; provided that this exclusion will not apply to that portion of a **Claim** seeking **Loss** for emotional distress, mental anguish, humiliation, or loss of reputation.
3. The **Company** will not be liable for **Loss** for any **Claim**:


©2009 The Travelers Companies, Inc. All Rights Reserved

a. based upon or arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **Pollutant**;

b. based upon or arising out of any request, demand, order, or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, any **Pollutant**; or

c. brought by or on behalf of any governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any **Pollutant**;

provided that this exclusion will not apply to **Claims** for **Retaliation**.

4. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of, any fact, circumstance, situation, event or **Wrongful Act** underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding, including audits initiated by the Office of Federal Contract Compliance Programs, against any **Insured** as of or prior to the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

5. The Company will not be liable for **Loss** for any **Claim** for any fact, circumstance, situation or event that is or reasonably would be regarded as the basis for a claim about which any **Executive Officer** had knowledge prior to the applicable Continuity Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

6. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of, any fact, circumstance, situation, event or **Wrongful Act** which, before the Inception Date set forth in ITEM 2 of the Declarations, was the subject of any notice of claim or potential claim given by or on behalf of any **Insured** under any policy of insurance of which this **Liability Coverage** is a direct renewal or replacement or which it succeeds in time.

7. The Company will not be liable for **Loss** for any **Claim** for any violation of responsibilities, duties or obligations under any law concerning Social Security, unemployment insurance, workers' compensation, disability insurance, or any similar or related federal, state or local law or regulation; or for any actual or alleged violation of the Worker Adjustment and Retraining Notification Act (WARN), Occupational Safety and Health Act (OSHA), Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), National Labor Relations Act (NLRA) or amendments thereto or regulations promulgated thereunder, or any similar or related federal, state or local law or regulation; provided that this exclusion will not apply to **Claims** for **Retaliation**.

8. The Company will not be liable for **Loss** for any **Claim** for any liability of others assumed by an **Insured** under any contract or agreement, whether oral or written, except to the extent that the **Insured** would have been liable in the absence of such contract or agreement.

9. The Company will not be liable for **Loss** for any **Claim** for any violation of responsibilities, duties or obligations under the Employee Retirement Income Security Act of 1974 (ERISA), including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation; or for an **Insured's** failure or refusal to establish, contribute to, pay for, insure, maintain, provide benefits pursuant to, or enroll or maintain the enrollment of an **Employee** or **Outside Employee** or dependent in, any employee benefit plan, fund or program, including contracts or agreements which are not subject to the provisions of ERISA; provided that this exclusion will not apply to **Claims** for **Retaliation**.

10. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of, any **Wrongful Act** by a **Subsidiary** or any related **Insured Person** occurring at any time during which such entity was not a **Subsidiary**.

11. The Company will not be liable for **Loss** for any **Third Party Claim**:


©2009 The Travelers Companies, Inc. All Rights Reserved

a. alleging price discrimination, or other violation of any antitrust or unfair trade practices law; or

b. against an **Insured Person** solely due to their service in an **Outside Position**.

12. The Company will not be liable for **Loss** for any **Claim** for any liability under any agreement governing the terms of the labor or service of an **Independent Contractor**, temporary worker or leased employee with the **Insured Organization** or for liability under any agreement governing the terms of the labor or service of any natural person independent contractor who performs labor or service solely for the **Outside Entity** on a full-time basis pursuant to a written contract or agreement.

13. The Company will not be liable for **Loss** for any **Claim** for violation of responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**; provided that this exclusion will not apply to:

a. **Claims** for **Retaliation**; or

b. any actual or alleged violation of the Equal Pay Act.

**B. EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES**

1. The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** seeking costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including actual or anticipated costs and expenses associated with or arising from an **Insured's** obligation to provide reasonable accommodation under, or otherwise comply with, the Americans With Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation.

2. The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** seeking severance pay, damages or penalties under an express written **Employment Agreement**, or under any policy or procedure providing for payment in the event of separation from employment; or sums sought solely on the basis of a claim for unpaid services.

## *IV. CONDITIONS*

**A. SETTLEMENT**

1. The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that:

a. the **Insured** and the party bringing a **Claim** hereunder consent to the first settlement offer recommended by the Company (the "Settlement Offer") within thirty (30) days of being made aware of such offer by the Company; and

b. the amount of such Settlement Offer:

i. is less than the remaining applicable limit of liability available at the time; and

ii. combined with **Defense Expenses** incurred with respect to such **Claim**, exceeds the Retention;

the Retention will be retroactively reduced by ten percent (10%) with respect to such **Claim**.


©2009 The Travelers Companies, Inc. All Rights Reserved

2. If the **Insured** does not consent to the Settlement Offer within thirty (30) days of being made aware of such offer by the Company:

   a. the Retention will not be reduced as provided in paragraph 1. above even if consent is given to the same or subsequent Settlement Offer; and

   b. the **Insured** will be solely responsible for thirty percent (30%) of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for thirty percent (30%) of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

**B. OTHER INSURANCE**

1. This **Liability Coverage** is primary, except as expressly stated otherwise in this **Liability Coverage**.

2. Except as stated in paragraph 3. of section IV. CONDITIONS B., this **Liability Coverage** will apply only as excess insurance over, and will not contribute with any insurance that applies to any **Claim**:

   a. against any leased or temporary worker; or

   b. for a **Third Party Wrongful Act**.

3. With respect to **Claims** against **Insured Persons** for **Wrongful Employment Practices** in their **Outside Positions**, this **Liability Coverage** will apply only as excess insurance over, and will not contribute with:

   a. any other valid and collectible insurance available to any **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Liability Coverage** by reference in such other policy to the Policy Number of this **Liability Policy**; or

   b. indemnification to which an **Insured Person** is entitled from any **Outside Entity** other than the **Insured Organization**.

4. This **Liability Coverage** will not be subject to the terms of any other insurance.

**C. OUTSIDE POSITIONS - LIMIT OF LIABILITY**

If any **Claim** against an **Insured Person** gives rise to an obligation both under this **Liability Coverage** and under any other coverage or policy of insurance issued by the Company or any of its affiliates to any **Outside Entity**, the Company's maximum aggregate limit of liability under all such policies for any **Loss**, for such **Claim** will not exceed the largest single available limit of liability under such coverage.


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WAGE AND HOUR LAW ENDORSEMENT

This endorsement modifies the following:

**Employment Practices Liability**

**It is agreed that:**

1. The following is added to section **III. CONDITIONS**, **C**. **LIMITS OF LIABILITY**, 1. of the Liability Coverage Terms and Conditions:

   However, the Company's maximum limit of liability for **Defense Expenses** for all **Wage and Hour Law Claims** is further limited by the following:

   > The Company's maximum limit of liability for **Defense Expenses** for all **Wage and Hour Law Claims** under the Employment Practices Liability coverage will not exceed the Wage and Hour Law Claim Limit of Liability for all **Wage and Hour Law Claims** set forth in ITEM 5 of the Declarations, which amount is included within and not in addition to, any applicable limit of liability.

2. The following is added to section **III. CONDITIONS**, **D. ADDITIONAL DEFENSE COVERAGE** of the Liability Coverage Terms and Conditions:

   > The Company's maximum limit of liability for **Defense Expenses** for all **Wage and Hour Law Claims** under the Employment Practices Liability coverage that are paid pursuant to the **Additional Defense Limit of Liability** will not exceed the Wage and Hour Law Claim Limit of Liability for all **Wage and Hour Law Claims** set forth in ITEM 5 of the Declarations. Such **Defense Expenses** will be part of, and not in addition to, the Wage and Hour Law Claim Limit of Liability for all **Wage and Hour Law Claims** set forth in ITEM 5 of the Declarations and such Wage and Hour Law Claim Limit of Liability for all **Wage and Hour Law Claims** will be reduced and may be exhausted by payment of such **Defense Expenses** under the **Additional Defense Limit of Liability**.

3. The following is added to ITEM 5. of the Declarations:

   | | | |
   |---|---|---|
   | **Wage and Hour Law Claim Limit of Liability** | $ 100,000 | for all **Wage and Hour Law Claims** |

4. The following is added to section **II. DEFINITIONS** of the Employment Practices Liability coverage part:

   ***Wage and Hour Law Claim*** means any **Employment Claim** for an alleged violation of responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**; provided that **Wage and Hour Law Claim** will not include **Claims** for **Retaliation** or any actual or alleged violation of the Equal Pay Act.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


©2009 The Travelers Companies, Inc. All Rights Reserved

5. The following is added to section **II. DEFINITIONS**, **Y. Wrongful Employment Practice** of the Employment Practices Liability coverage part:

   **Wrongful Employment Practice** also means the violation of responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**.

6. The following is deleted from section **III. EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO ALL LOSS,** of the Employment Practices Liability coverage part:

   13. The Company will not be liable for **Loss** for any **Claim** for violation of responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**; provided that this exclusion will not apply to:

       a. **Claims** for **Retaliation**; or

       b. any actual or alleged violation of the Equal Pay Act.

7. The following is added to section **III. EXCLUSIONS, B. EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES** of the Employment Practices Liability coverage part:

   The Company will not be liable for **Loss**, other than **Defense Expenses** up to the Wage and Hour Law Claim Limit of Liability set forth in ITEM 5 of the Declarations, for any **Claim** for the violation of responsibilities, duties or obligations imposed on an **Insured** under any **Wage and Hour Law**; provided that this exclusion will not apply to:

   a. **Claims** for **Retaliation**; or

   b. any actual or alleged violation of the Equal Pay Act.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OUTSIDE ENTITY TO INCLUDE ANY NON-PROFIT ENTITY ENDORSEMENT

This endorsement modifies the following:

**Employment Practices Liability**

**It is agreed that**:

The following replaces section **II. DEFINITIONS**, **O. Outside Entity**:

O. ***Outside Entity*** means any corporation or organization:

1. other than the **Insured Organization,** which is a non-profit entity; or
2. specifically scheduled as an **Outside Entity** by endorsement to this **Liability Policy**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED DISPARAGEMENT AND FALSE IMPRISONMENT ENDORSEMENT

This endorsement changes the following:

**Employment Practices Liability**

**It is agreed that:**

The following is added to section ***II. DEFINITIONS***, **Y. Wrongful Employment Practice**:

***Wrongful Employment Practice*** also means any actual or alleged employment-related disparagement and also means any actual or alleged false imprisonment.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2012 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WORKPLACE VIOLENCE EXPENSES ENDORSEMENT

This endorsement changes the following:

**Employment Practices Liability**

**It is agreed that:**

1. The following is added to ITEM 5 of the Declarations:

   **Workplace Violence Expenses Limit of Liability:** $250,000 for all **Workplace Violence Expenses**, which amount is in addition to, and not part of, any applicable limit of liability.

2. The following is added to section **I. INSURING AGREEMENT** of the **Liability Coverage**:

   The Company will reimburse the **Insured Organization**, **Workplace Violence Expenses** incurred by the **Insured Organization** as a result of any **Workplace Violence Event;**

   1. first occurring during the **Policy Period**; and,
   2. reported to the Company as soon as practicable after an **Executive Officer** becomes aware such **Workplace Violence Event** has occurred, but in no event later than 90 days after the expiration of the **Policy Period**;

   up to the amount of the **Workplace Violence Expenses** Limit of Liability set forth in ITEM 5 of the Declarations of this **Liability Coverage**.

3. The following is added to section **II. DEFINITIONS** of the **Liability Coverage**:

   **Premise** means the buildings, facilities or properties occupied by the **Insured Organization** in conducting its business.

   **Workplace Violence Event** means any intentional:

   1. use of deadly force; or
   2. threat of deadly force with the display of a lethal weapon;

   which occurs on or in the **Premise** and which did or could result in bodily injury or death to an **Insured Person.**

   **Workplace Violence Expenses** means the reasonable fees, costs, and expenses incurred and paid by the **Insured Organization** for:

   1. the services of an independent security consultant for 90 days following a **Workplace Violence Event**;
   2. the services of an independent public relations consultant for 90 days following a **Workplace Violence Event**;
   3. counseling services provided to employees by an independent consultant on the **Premises** for up to 120 days following a **Workplace Violence Event**;
   4. the services of an independent security guard(s) and other reasonable costs to secure the **Premises** for up to 15 days following a **Workplace Violence Event**; or
   5. the services of an independent private forensic analyst for 120 days following a **Workplace Violence Event.**

Issuing Company: Travelers Casualty and Surety Company of America
Policy Number: 107298906


© 2015 The Travelers Indemnity Company. All rights reserved.

4. The following is added to section **III. EXCLUSIONS** of the **Liability Coverage**:

   The Company will not be liable for **Workplace Violence Expenses** based upon or arising out of a **Workplace Violence Event** arising out of war, invasion, acts of foreign enemies, hostilities (whether war is declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, or confiscation, nationalization, requisition, or destruction of, or damage to, property by or under the order of any government, public or local authority; provided that this exclusion will not apply to any "act of terrorism" as defined in the Terrorism Risk Insurance Act of the United States of America as amended.

5. The following is added to section **III. CONDITIONS**, **B. RETENTION**, of the Liability Coverage Terms and Conditions:

   No retention shall apply to **Workplace Violence Expenses** Coverage.

6. The following is added to section **III. CONDITIONS**, **C. LIMITS OF LIABILITY**, of the Liability Terms and Conditions:

   The Company's maximum limit of liability for all **Workplace Violence Events** under the Employment Practices Liability coverage will not exceed the Workplace Violence Expenses Limit of Liability set forth in ITEM 5 of the Declarations.

   The Workplace Violence Expenses Limit of Liability will be in addition to, and not part of, the **Liability Coverage Limit of Liability** as set forth in ITEM 5 of the Declarations.

---

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

---


© 2015 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND WRONGFUL EMPLOYMENT PRACTICE DEFINITION ENDORSEMENT

This endorsement changes the following:

**Employment Practices Liability**

**It is agreed that:**

The following is added to section **II. DEFINITIONS**, **Y. Wrongful Employment Practice**:

**Wrongful Employment Practice** also means negligent employment reference.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2017 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND WRONGFUL ACT DEFINITION ENDORSEMENT

This endorsement changes the following:

**Employment Practices Liability**

**It is agreed that:**

The following is added to section **II. DEFINITIONS**, **X. Wrongful Act**:

**Wrongful Employment Practice** or **Third Party Wrongful Act** includes such practice or act carried out by any means, including any electronic means of communication, such as the Internet, email, instant messaging, social networking services or blogs.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2017 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

This endorsement changes the following:

**Employment Practices Liability**

**It is agreed that:**

The following replaces section **II. DEFINITIONS**, **D. Employee**, 2.:

who is a volunteer or temporary worker, including interns; or

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2017 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND DEFINITION OF WORKPLACE HARASSMENT ENDORSEMENT

This endorsement changes the following:

**Employment Practices Liability**

**It is agreed that:**

The following replaces section **II. DEFINITIONS**, **W. Workplace Harassment**:

**Workplace Harassment** means any actual or alleged harassment, including bullying, other than **Sexual Harassment**, which creates a work environment that interferes with job performance, or creates an intimidating, hostile, or offensive work environment.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2017 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## IMMIGRATION CLAIMS ENDORSEMENT

This endorsement changes the following:

**Employment Practices Liability**

---

**It is agreed that:**

1. The following is added to ITEM 5. of the Declarations:

   | | | |
   |---|---|---|
   | **Immigration Claim Limit of Liability** | $100,000 | for all **Immigration Claims** |

2. The following is added to section **I. INSURING AGREEMENT** of the **Liability Coverage**:

   The Company will pay, on behalf of the **Insured**, **Defense Expenses** resulting from any **Immigration Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

3. The following is added to section **II. DEFINITIONS** of the **Liability Coverage**:

   ***Immigration Claim*** means a civil or criminal investigation of any **Insured** brought by or on behalf of any federal, state or local governmental, regulatory or administrative agency for an actual or alleged violation of the responsibilities, obligations or duties imposed on an **Insured** by the Immigration Reform and Control Act of 1986 or any other similar federal or state laws or regulations in connection with the actual or alleged hiring or harboring of illegal aliens.

4. The following is added to section **II. DEFINITIONS**, **F. Employment Claim**:

   **Employment Claim** also means an **Immigration Claim** but solely as respects coverage provided herein.

5. The following is added to section **III. CONDITIONS**, **C**. **LIMITS OF LIABILITY**, 1. of the Liability Coverage Terms and Conditions:

   The Company's maximum limit of liability for **Defense Expenses** for all **Immigration Claims** under the Employment Practices Liability coverage will not exceed the Immigration Claim Limit of Liability for all **Immigration Claims** set forth in ITEM 5 of the Declarations, which amount is included within and not in addition to, any applicable limit of liability.

6. The following is added to section **III. CONDITIONS**, **D. ADDITIONAL DEFENSE COVERAGE** of the Liability Coverage Terms and Conditions:

   Additional Defense Coverage is not applicable to **Immigration Claims**.

---

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

---

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2019 The Travelers Indemnity Company. All rights reserved.

TRAVELERS

***FIDUCIARY LIABILITY***

***THIS IS A CLAIMS MADE COVERAGE WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ ALL TERMS CAREFULLY.***

## *I. INSURING AGREEMENTS*

**A.** The Company will pay on behalf of the **Insured**, **Loss** for any **Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a **Wrongful Act**.

**B.** The Company will pay on behalf of the **Insured**, **Settlement Fees** and **Defense Expenses** incurred by the **Insured** in connection with any **Settlement Program Notice**; provided that participation by the **Insured** in any **Settlement Program** commences during the **Policy Period** or, if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

## *II. DEFINITIONS*

Wherever appearing in this **Liability Coverage**, the following words and phrases appearing in bold type will have the meanings set forth in this section II. DEFINITIONS:

**A.** ***Administration*** means**:**

1. giving counsel, advice, or notice to employees of the **Insured Organization**, participants, or beneficiaries with respect to **Employee Benefits**;
2. interpreting **Employee Benefits**;
3. handling records in connection with **Employee Benefits**; or
4. effecting enrollment, termination or cancellation of employees of the **Insured Organization**, participants, or beneficiaries under an **Employee Benefits** program.

**B.** ***Claim*** means**:**

1. a written demand for monetary damages or non-monetary relief;
2. a civil proceeding commenced by service of a complaint or similar pleading;
3. a criminal proceeding commenced by filing of charges;
4. a formal administrative or regulatory proceeding commenced by filing of a notice of charges, formal investigative order, service of summons or similar document, including a fact-finding investigation by the Department of Labor, the Pension Benefit Guaranty Corporation, or a similar government agency that is located outside of the United States, including, in the United Kingdom, the Pensions Ombudsmen appointed by the Secretary of State for Social Services or by the Occupational Pensions Regulatory Authority, or any successor body thereto;
5. an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld; or
6. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding;

against an **Insured** for a **Wrongful Act**.

A **Claim** is deemed to be made on the earliest date that any **Executive Officer** first receives written notice of such **Claim**. However, if any **Insured Person** who is not an **Executive Officer** first receives


©2009 The Travelers Companies, Inc. All Rights Reserved

written notice of a **Claim** during the **Policy Period**, but no **Executive Officer** receives written notice of such **Claim** until after the **Policy Period** has expired, then such **Claim** will be deemed to have been made on the date such **Insured Person** first received written notice of the **Claim**.

C. ***Employee Benefits*** means benefits provided through an **Employee Benefit Plan** or a **Multiemployer Plan,** and also includes benefits provided under workers' compensation insurance, unemployment insurance, Social Security, disability insurance, and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and amendments thereto.

D. ***Employee Benefit Plan*** means**:**

1. any **Welfare Plan** which was, is now, or becomes sponsored solely by the **Insured Organization** exclusively for the benefit of employees of the **Insured Organization**;
2. any **Pension Plan**, including an **Employee Stock Ownership Plan**, which was, or is, sponsored solely by the **Insured Organization** exclusively for the benefit of employees of the **Insured Organization** and which existed on or before the Inception Date set forth in ITEM 2 of the Declarations;
3. any group or group-type insurance program, including a Health Savings Account (HSA) program, that meets the safe harbor conditions set forth in 29 C.F.R. 2510.3-1(j)(1), or any benefit plan that is not subject to Title I of **ERISA**, including any fringe benefit or excess benefit plan, that was, is now, or becomes sponsored solely by the **Insured Organization** exclusively for the benefit of employees of the **Insured Organization**; or
4. any **Pension Plan** for which coverage is provided pursuant to section V. CONDITIONS B. ACQUISITION OR FORMATION OF AN EMPLOYEE BENEFIT PLAN of this **Liability Coverage.**

E. ***Employee Stock Ownership Plan*** means any plan so defined in Section 407(d)(6)(A) of ERISA, or any similar or related federal, state or local law or regulation.

F. ***ERISA*** means the Employee Retirement Income Security Act of 1974, including amendments thereto and regulations promulgated thereunder or any similar common or statutory law.

G. ***ESOP Administration*** means**:**

1. giving notice to employees of the **Insured Organization**, participants, or beneficiaries with respect to **Employee Stock Ownership Plan** benefits;
2. interpreting **Employee Stock Ownership Plan** benefits;
3. handling records in connection with **Employee Stock Ownership Plan** benefits; or
4. effecting enrollment, termination or cancellation of employees of the **Insured Organization**, participants, or beneficiaries under an **Employee Stock Ownership Plan**.

H. ***Executive Officer*** means a member of the board of directors or governors, officer, member of the board of trustees, natural person general partner, principal, risk manager, **LLC Manager**, in-house general counsel of the **Insured Organization** or a functional equivalent thereof. **Executive Officer** also includes any natural person trustee of any **Employee Benefit Plan**.

I. ***HIPAA*** means the Health Insurance Portability and Accountability Act of 1996, as amended.

J. ***Insured*** means the **Insured Persons**, the **Insured Organization**, and any **Employee Benefit Plan.**

K. ***Insured Organization*** means the **Named Insured**, any **Subsidiary**, and any such entity as a debtor in possession, as such term is used in Chapter 11 of the United States of America Bankruptcy Code, as amended, or the equivalent of a debtor in possession under any applicable foreign law.

L. ***Insured Person*** means any natural person who was, is now or becomes a trustee, member of the board of directors or governors, management committee member, general partner, officer, **LLC Manager**, in-house general counsel, member of an **Employee Benefit Plan** committee, or employee of the **Insured Organization** or of an **Employee Benefit Plan**, while acting in his or her capacity as a fiduciary of an **Employee Benefit Plan** or as a person performing **Administration** or **ESOP Administration.**


©2009 The Travelers Companies, Inc. All Rights Reserved

In the event of the death, incapacity or bankruptcy of an **Insured Person**, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured Person** for a **Wrongful Act** of such **Insured Person** will be deemed to be a **Claim** against such **Insured Person**.

**M.** ***Loss*** means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements; judgments; back and front pay; compensatory damages; punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages; prejudgment and post judgment interest; and legal fees and expenses awarded pursuant to a court order or judgment; and solely with respect to section I. INSURING AGREEMENTS B. of this **Liability Coverage**, **Settlement Fees**. **Loss** does not include:

1. civil or criminal fines (except **Settlement Fees** pursuant to Insuring Agreement B.; civil penalties under Sections 502(i) and 502(l) of **ERISA** or the privacy provisions of **HIPAA**; or, in the United Kingdom, civil penalties imposed by the Pensions Ombudsmen appointed by the Secretary of State for Social Services or by the Occupational Pensions Regulatory Authority, Pensions Regulator, or any successor body thereto, provided that the funds or assets of the pension scheme will not be used to fund, pay or reimburse the premium for this coverage or any portion thereof); sanctions; liquidated damages; payroll or other taxes; or damages or types of relief deemed uninsurable under applicable law;
2. payment of medical benefits, pension benefits, severance, or **Employee Benefits** which are or may become due, except to the extent that such sums are payable as a personal obligation of an **Insured Person**, because of such **Insured Person's Wrongful Act**; provided that this exclusion will not apply to:
   a. the Company's obligation to defend any **Claim**, if applicable, or to pay, advance or reimburse **Defense Expenses**, regarding a **Claim** seeking such benefits; or
   b. that portion of any damage, settlement or judgment covered as **Loss** under this **Liability Coverage** that represents a loss to any **Employee Benefit Plan**, or loss to any account of a participant in any **Employee Benefit Plan**, by reason of a change in value of any investments held by such **Employee Benefit Plan** or such account, including investments in the securities of the **Insured Organization**, notwithstanding that such portion of any such damage, settlement or judgment has been characterized by plaintiffs, or held by a court of law, to be "benefits"; or
3. any amount allocated to non-covered loss pursuant to section III. CONDITIONS P. ALLOCATION of the Liability Coverage Terms and Conditions.

**N.** ***Multiemployer Plan*** means a **Pension Plan** or **Welfare Plan** maintained pursuant to one or more collective bargaining agreements to which the **Insured Organization** and at least one other employer is required to contribute.

**O.** ***Pension Plan*** means any plan so defined in Section 3(2) of ERISA or any similar or related federal, state, local, or foreign law or regulation.

**P.** ***Settlement Fees*** mean any fees, penalties or sanctions imposed by law under a **Settlement Program** that any **Insured** becomes legally obligated to pay as a result of a **Wrongful Act**. **Settlement Fees** will not include any costs or expenses other than such fees, penalties or sanctions.

**Q.** ***Settlement Program*** means any voluntary compliance resolution program or similar voluntary settlement program, administered by the Internal Revenue Service or Department of Labor of the United States, including the Employee Plans Compliance Resolution System, the Self Correction Program, the Audit Closing Agreement Plan, the Delinquent Filer Voluntary Compliance program, and the Voluntary Fiduciary Correction program, entered into by the **Insured Organization**.

**R.** ***Settlement Program Notice*** means a prior written notice to the Company by the **Insured** of the **Insured's** intent to enter into a **Settlement Program**.


©2009 The Travelers Companies, Inc. All Rights Reserved

**S.** ***Subsidiary*** means**:**

1. any corporation, partnership, limited liability company or other entity organized under the laws of any jurisdiction in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent;
2. any non-profit entity over which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** has the ability to exercise managerial control;
3. any entity operated as a joint venture, in which, on or before the Inception Date set forth in ITEM 2 of the Declarations, the **Named Insured** owns, directly or indirectly, exactly 50% of the issued and outstanding voting stock and whose management and operation the **Insured Organization** solely controls, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock; or
4. subject to the provisions set forth in section III. CONDITIONS L. ACQUISITIONS of the Liability Coverage Terms and Conditions, any entity that the **Insured Organization** acquires or forms during the **Policy Period** in which the **Named Insured** owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees, board of managers, natural person general partners, or functional equivalent, or, in the case of any non-profit entity that does not issue securities, over which the **Named Insured** has the ability to exercise managerial control.

**T.** ***Welfare Plan*** means any plan so defined in Section 3(1) of ERISA or any similar or related federal, state, local, or foreign law or regulation.

**U.** ***Workplace Misconduct*** means:

1. any actual or alleged failure or refusal to hire or employ an applicant for employment with the **Insured Organization**;
2. any actual or alleged termination or constructive termination of an employment relationship with the **Insured Organization**;
3. any actual or alleged demotion of, refusal to train or promote an employee of the **Insured Organization**;
4. any other act or omission by which an **Insured** allegedly treats one employee of the **Insured Organization** differently from another in compensation, terms, conditions, opportunities or privileges of employment, including acts or practices taken for the purpose of or which have the impact of distinguishing among, limiting, segregating or classifying employees of the **Insured Organization** or applicants for employment with the **Insured Organization** in their compensation terms, conditions, opportunities or privileges of employment on any of the following grounds: race, color, national origin, religion, creed, gender, sexual orientation, pregnancy, disability, medical condition, age, marital status, Vietnam Era Veteran status, military service, or any other legally protected category, status or characteristic established pursuant to federal, state or other law, regulation or ordinance, including Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Rehabilitation Act of 1973, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Uniformed Services Employment and Reemployment Rights Act of 1994, the Americans With Disabilities Act or the Family Medical Leave Act;
5. any adverse employment action with regard to an employee of the **Insured Organization** on account of such employee's exercise or attempted exercise of rights protected by law, including the Family Medical Leave Act, or on account of the employee of the **Insured Organization** having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law; or
6. any actual or constructive termination of an employment relationship with the **Insured Organization** in a manner or for a reason which is contrary to applicable law or in violation of a written, oral or implied agreement, other than a collective bargaining agreement, for continued employment.


©2009 The Travelers Companies, Inc. All Rights Reserved

**V.** ***Wrongful Act*** means**:**

1. any actual or alleged breach of fiduciary duty by or on behalf of the **Insured** with respect to any **Employee Benefit Plan**, including:

   a. any actual or alleged breach of duties, obligations and responsibilities imposed by **ERISA,** COBRA, **HIPAA,** or by any similar or related federal, state, local, or foreign law or regulation, in the discharge of the **Insured's** duties with respect to an **Employee Benefit Plan**; or

   b. any other matter claimed against an **Insured** solely because of the **Insured's** status as a fiduciary of an **Employee Benefit Plan**; or

2. any actual or alleged negligent act, error or omission by or on behalf of the **Insured** in the **Administration** of **Employee Benefits.**

All **Related Wrongful Acts** are a single **Wrongful Act** for purposes of this **Liability Coverage**, and all **Related Wrongful Acts** will be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period**.

## *III. EXCLUSIONS*

### A. EXCLUSIONS APPLICABLE TO ALL LOSS

1. The Company will not be liable for **Loss** for any **Claim** for any damage to, or destruction of, loss of, or loss of use of, any tangible property including damage to, destruction of, loss of, or loss of use of, tangible property that results from inadequate or insufficient protection from soil or ground water movement, soil subsidence, mold, toxic mold, spores, mildew, fungus, or wet or dry rot.

2. The Company will not be liable for **Loss** for any **Claim** for any bodily injury, sickness, disease, death, loss of consortium, emotional distress, mental anguish, or humiliation.

3. The Company will not be liable for **Loss** for any **Claim**:

   a. based upon or arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any **Pollutant**;

   b. based upon or arising out of any request, demand, order, or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, any **Pollutant**, or

   c. brought by or on behalf of any governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, any **Pollutant**;

   provided this exclusion will not apply to any **Claim** by or on behalf of a beneficiary of, or participant in, any **Employee Benefit Plan** based upon, arising from or in consequence of the diminution in value of any securities owned by the **Employee Benefit Plan** in any organization, other than the **Insured Organization**, if such diminution in value is allegedly as a result of a **Pollutant**.

4. The Company will not be liable for **Loss** for any **Claim** for any liability of others assumed by an **Insured** under any contract or agreement, whether oral or written, other than an **Employee Benefit Plan**, except to the extent that the **Insured** would have been liable in the absence of such contract or agreement.

5. The Company will not be liable for **Loss** for any **Claim** for any violation of responsibilities, duties or obligations under any law concerning Social Security, unemployment insurance, workers' compensation, disability insurance, or any similar or related federal, state or local law or regulation, or for any actual or alleged violation of the Worker Adjustment and Retraining Notification Act (WARN), Occupational Safety and Health Act (OSHA), the National Labor Relations Act (NLRA), Fair Labor Standards Act (FLSA), or amendments thereto or regulations promulgated thereunder, or any similar or related federal, state or local law or regulation other than COBRA, **HIPAA** or **ERISA**.


©2009 The Travelers Companies, Inc. All Rights Reserved

6. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any fact, circumstance, situation, event or **Wrongful Act** underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding against any **Insured** as of or prior to the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.
7. The Company will not be liable for **Loss** for any **Claim** for any fact, circumstance, situation or event that is or reasonably would be regarded as the basis for a claim about which any **Executive Officer** had knowledge prior to the applicable Continuity Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.
8. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any fact, circumstance, situation, event, or **Wrongful Act** which, before the Inception Date set forth in ITEM 2 of the Declarations, was the subject of any notice of claim or potential claim given by or on behalf of any **Insured** under any policy of insurance of which this **Liability Coverage** is a direct renewal or replacement or which it succeeds in time.
9. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any **Wrongful Act** by a **Subsidiary** or any related **Insured Person** occurring at any time during which such entity was not a **Subsidiary**.
10. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any **Workplace Misconduct**, other than **Claims** asserted under **ERISA**.

**B. EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES**

1. The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** based upon or arising out of any **Insured**:
   a. committing any intentionally dishonest or fraudulent act or omission;
   b. committing any willful violation of any statute, rule, law; or
   c. gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled;

   provided that this exclusion will not apply unless a final adjudication establishes that such **Insured** committed such intentionally dishonest or fraudulent act or omission, willful violation of any statute, rule or law, or gained such profit, remuneration or advantage to which such **Insured** was not legally entitled.
2. The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** seeking costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including actual or anticipated costs and expenses associated with or arising from an **Insured's** obligation to provide reasonable accommodation under, or otherwise comply with, the Americans With Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation.

**C. EXCLUSIONS APPLICABLE TO INSURING AGREEMENT B**

The Company will pay no **Settlement Fees** or **Defense Expenses** with respect to any **Claim** or investigation in connection with a **Settlement Program**, of which any **Insured** first became aware or received notice prior to the applicable Prior and Pending Proceeding Date set forth in ITEM 5 of the Declarations for this **Liability Coverage**.

## *IV. SEVERABILITY OF EXCLUSIONS*

No conduct of any **Insured** will be imputed to any other **Insured** to determine the application of any of the exclusions set forth in section III. EXCLUSIONS above.


©2009 The Travelers Companies, Inc. All Rights Reserved

## *V. CONDITIONS*

### A. SETTLEMENT

The Company may, with the written consent of the **Insured**, make such settlement or compromise of any **Claim** as the Company deems expedient. In the event that the Company recommends an offer of settlement of any **Claim** which is acceptable to the claimant(s) (a "Settlement Offer"), and if the **Insured** refuses to consent to such Settlement Offer, the **Insured** will be solely responsible for 30% of all **Defense Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to the Settlement Offer, and the **Insured** will also be responsible for 30% of all **Loss**, other than **Defense Expenses**, in excess of the Settlement Offer, provided that the Company's liability under this **Liability Coverage** for such **Claim** will not exceed the remaining applicable limit of liability.

### B. ACQUISITION OR FORMATION OF AN EMPLOYEE BENEFIT PLAN

If, during the **Policy Period**, the **Insured Organization** acquires or forms an **Employee Benefit Plan**, which is then solely sponsored by the **Insured Organization** exclusively for the benefit of the employees of the **Insured Organization**, this **Liability Coverage** will provide coverage for that acquired or formed **Employee Benefit Plan** and its respective **Insured Persons**, subject to all other terms and conditions of this **Liability Coverage**, but only for **Claims** for **Wrongful Acts** which occur wholly during the time that the **Insured Organization** is sole sponsor with regard to the **Employee Benefit Plan**, provided written notice of such acquisition or formation has been given to the Company, and specific application has been submitted on the Company's form in use at the time, together with such documentation and information as the Company's underwriters may require, all within 90 days after the effective date of such acquisition or formation. Coverage for the acquired or formed **Employee Benefit Plan** will not be afforded following such 90-day period unless the Company has agreed to provide such coverage, subject to any additional terms and conditions as the Company may require, and the **Named Insured** has paid the Company any additional premium as may be required by the Company.

The 90-day notice requirement and the 90-day limitation of coverage will not apply, provided that: (1) the total assets of the acquired or formed **Employee Benefit Plan**, as of the effective date of such acquisition or formation, do not exceed 30% of the total plan assets shown on the most recent **Application** submitted by the **Insured Organization**, or (2) the acquisition or formation occurs fewer than 90 days prior to the end of the **Policy Period**.

Notwithstanding the foregoing, if such acquired or formed **Employee Benefit Plan** is an **Employee Stock Ownership Plan** that is not part of, and is separate from, any other **Pension Plan**, the coverage provided pursuant to this section V. CONDITIONS B. ACQUISITION OR FORMATION OF AN EMPLOYEE BENEFIT PLAN to such **Employee Stock Ownership Plan** will be limited to any actual or alleged negligent act, error or omission by or on behalf of the **Insured** in the **ESOP Administration** of **Employee Benefits**.

### C. MERGER OF PLANS

If, during the **Policy Period**, an **Employee Benefit Plan** is merged with another **Employee Benefit Plan**, this **Liability Coverage** will continue to provide coverage for both plans, subject to all other terms and conditions of this **Liability Coverage** and only for so long as this **Liability Coverage** remains in effect as to the **Named Insured**.

If, during the **Policy Period**, an **Employee Benefit Plan** ("Covered Plan") is merged with another **Welfare Plan** or **Pension Plan** for which coverage is not provided under this **Liability Coverage** ("Uncovered Plan"), this **Liability Coverage** will continue to provide coverage for only the Covered Plan, subject to all other terms and conditions of this **Liability Coverage** and only for so long as this **Liability Coverage** remains in effect as to the **Named Insured**, but only for **Claims** for **Wrongful Acts** which occurred prior to the date of such merger.


©2009 The Travelers Companies, Inc. All Rights Reserved

**D. SALE OF PLAN**

If, prior to or during the **Policy Period**, any **Employee Benefit Plan** is sold, this **Liability Coverage** will provide coverage for such plan, subject to all other terms, conditions and limitations of this **Liability Coverage** and only for so long as this **Liability Coverage** remains in effect as to the **Named Insured**. The coverage provided pursuant to this section V. CONDITIONS D. SALE OF PLAN will apply only:

1. for **Claims** for **Wrongful Acts** which occurred prior to the date of such sale;
2. while such plan was sponsored solely by the **Insured Organization** exclusively for the benefit of employees of the **Insured Organization**; and
3. if notice of such sale is given to the Company prior to the end of such **Policy Period**.

**E TERMINATION OF PLAN**

If before or during the **Policy Period** any **Employee Benefit Plan** is terminated, this **Liability Coverage** will provide coverage for such plan, subject to all other terms, conditions and limitations of this **Liability Coverage** for so long as this **Liability Coverage** remains in effect as to the **Named Insured**.

**F. OTHER INSURANCE**

This **Liability Coverage** will apply only as excess insurance over, and will not contribute with any other valid and collectible insurance available to the **Insured**, including any insurance under which there is a duty to defend, unless such insurance is written specifically excess of this **Liability Coverage** by reference in such other policy to the Policy Number of this **Liability Policy**. This **Liability Coverage** will not be subject to the terms of any other insurance.

**G. ORDER OF PAYMENTS**

If **Loss**, other than **Defense Expenses**, from any **Claim** exceeds the remaining applicable limit of liability as set forth in ITEM 5 of the Declarations:

1. the Company will first pay such **Loss** for such **Claim** for which the **Insured Organization** is not permitted by law to indemnify any **Insured Person**, or is permitted or required to indemnify such **Insured Person** but does not do so by reason of **Financial Insolvency**; then
2. to the extent that any amount of the applicable limit of liability remains available, the Company will pay such **Loss** for such **Claim** incurred by the **Insured Organization** directly or through indemnification.

Upon written request of the **Insured Organization** by and through any **Executive Officer**, the Company will either pay or withhold payment of **Loss** from such **Claim** pursuant to the order of payments set forth herein, as applicable. In the event of a written request to withhold payment, the Company will make any future payment only for unindemnified **Loss** from any such **Claim** as specified in 1. above, unless otherwise so instructed upon written request by and through an **Executive Officer** of the **Insured Organization**.

**H. SETTLEMENT PROGRAM LIMIT OF LIABILITY AND RETENTION**

The Company's maximum limit of liability for all **Settlement Fees** and **Defense Expenses** in connection with a **Settlement Program Notice** will be the amount set forth in ITEM 5 of the Declarations as the Settlement Program Limit of Liability, which amount is included within, and not in addition to, any applicable limit of liability. However, if ITEM 5 of the Declarations indicates that Additional Defense Coverage is applicable, **Defense Expenses** incurred in connection with a **Settlement Program Notice** will apply first to and reduce the remaining **Additional Defense Limit of Liability**; provided that the Settlement Program Limit of Liability will be reduced and may be exhausted by payment of such **Defense Expenses** under the **Additional Defense Limit of Liability**.


©2009 The Travelers Companies, Inc. All Rights Reserved

**Settlement Fees** and **Defense Expenses** incurred with respect to a **Settlement Program Notice** will be subject to the applicable Retention set forth in ITEM 5 of the Declarations. If a **Claim** results in a **Settlement Program Notice**, the applicable Retentions will be applied separately to such **Claim** and **Settlement Program Notice**, respectively, but the sum of such Retentions will not exceed the largest of such Retentions.

**I. SETTLEMENT PROGRAM EXTENDED REPORTING PERIOD AND RUN-OFF EXTENDED REPORTING PERIOD**

1. The Extended Reporting Period described in section III. CONDITIONS O. of the Liability Coverage Terms and Conditions, if purchased, will apply only to **Settlement Fees** and **Defense Expenses** incurred by the **Insured** in connection with any **Settlement Program Notice** as a result of the **Insured's** participation during the Extended Reporting Period in a **Settlement Program**, but only if such participation commences during the Extended Reporting Period and involves an **Employee Benefit Plan's** actual or alleged inadvertent noncompliance with any statute, rule or regulation before the effective date of such termination or nonrenewal.

2. The Run-Off Extended Reporting Period described in section III. CONDITIONS K. of the Liability Coverage Terms and Conditions, if purchased, will apply only to **Settlement Fees** and **Defense Expenses** incurred by the **Insured** in connection with any **Settlement Program Notice** as a result of the **Insured's** participation during the Run-Off Extended Reporting Period in a **Settlement Program**, but only if such participation commences during the Run-Off Extended Reporting Period and involves an **Employee Benefit Plan's** actual or alleged inadvertent noncompliance with any statute, rule or regulation before the effective date of the **Change of Control.**

**J. HIPAA LIMIT OF LIABILITY**

The Company's maximum limit of liability for all civil money penalties under the privacy provisions of **HIPAA** will be the amount set forth in ITEM 5 of the Declarations as the HIPAA Limit of Liability, which amount is included within, and not in addition to, any applicable limit of liability.

**K. INSURED'S DUTIES IN THE EVENT OF A SETTLEMENT PROGRAM NOTICE**

All **Settlement Program Notices** must be sent by mail or prepaid express courier to the address set forth in ITEM 3 of the Declarations and will be effective upon receipt. The **Insured** will not enter into a **Settlement Program** or incur any **Defense Expenses** in connection with a **Settlement Program Notice** or **Settlement Fees** without the Company's prior written consent, such consent not to be unreasonably withheld. The Company will not be liable for any such **Defense Expenses** or **Settlement Fees** to which it has not consented.


©2009 The Travelers Companies, Inc. All Rights Reserved

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DELETE WORKPLACE MISCONDUCT EXCLUSION ENDORSEMENT

This endorsement changes the following:

**Fiduciary Liability**

**It is agreed that:**

The following is deleted from section ***III. EXCLUSIONS***, **A**. **EXCLUSIONS APPLICABLE TO ALL LOSS, 10**.

10. The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any **Workplace Misconduct**, other than **Claims** asserted under **ERISA**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above- mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2012 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND SECTION III. EXCLUSIONS B.1. – FINAL NON-APPEALABLE ADJUDICATION IN ANY PROCEEDING OTHER THAN A PROCEEDING INITIATED BY THE COMPANY ENDORSEMENT

This endorsement changes the following:

**Fiduciary Liability**

**It is agreed that:**

The following replaces section 1 of **III. EXCLUSIONS**, **B. EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES**:

1. The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** based upon or arising out of any **Insured**:

   a. committing any deliberate dishonest or fraudulent act or omission;

   b. committing any willful violation of any statute, rule, law; or

   c. gaining any profit, remuneration or financial advantage to which such **Insured** was not legally entitled;

   provided that this exclusion will not apply unless a final non-appealable adjudication in any proceeding other than a proceeding initiated by the Company establishes that such **Insured** committed such deliberate dishonest or fraudulent act or omission, willful violation of any statute, rule or law, or gained such profit, remuneration or financial advantage to which such **Insured** was not legally entitled.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2012 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HEALTHCARE EXCHANGE ENDORSEMENT

This endorsement changes the following:

**Fiduciary Liability**

**It is agreed that:**

1. The following is added to **II. DEFINITIONS**, **C. Employee Benefits**:

   **Employee Benefits** also means benefits available to employees of the **Insured Organization** through a **Healthcare Exchange**.

2. The following is added to **II. DEFINITIONS**:

   ***Healthcare Exchange*** means any public, private, or government sponsored entity established to facilitate the purchase of health insurance in accordance with the Patient Protection and Affordable Care Act.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


© 2014 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BENEFIT DETERMINATION APPEALS AND PRELIMINARY INVESTIGATIONS ENDORSEMENT

This endorsement changes the following:

**Fiduciary Liability**

**It is agreed that:**

1. The following replaces section **I. INSURING AGREEMENTS**, **A**.:

   The Company will pay on behalf of the **Insured**, **Loss** for:

   1. any **Claim**, other than a **Preliminary Investigation**, first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a **Wrongful Act**; or

   2. any **Preliminary Investigation**, first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended reporting Period.

2. The following replaces section **II. DEFINITIONS**, **B**.:

   ***Claim*** means:

   1. a written demand for monetary damages or non-monetary relief;

   2. a civil proceeding commenced by service of a complaint or similar pleading;

   3. a criminal proceeding commenced by filing of charges;

   4. a formal administrative or regulatory proceeding commenced by filing of a notice of charges, formal investigative order, service of summons, or similar document;

   5. an arbitration, mediation or similar alternative dispute resolution proceeding if the **Insured** is obligated to participate in such proceeding or if the **Insured** agrees to participate in such proceeding, with the Company's written consent, such consent not to be unreasonably withheld;

   6. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding; or

   7. a **Benefit Determination Appeal**;

   against an **Insured** for a **Wrongful Act**; or

   8. a **Preliminary Investigation**.

   A **Claim** , other than a **Preliminary Investigation**, is deemed to be made on the earliest date that any **Executive Officer** first receives written notice of such **Claim**. However, if any **Insured Person** who is not an **Executive Officer** first receives written notice of a **Claim**, during the **Policy Period**, but no **Executive Officer** receives written notice of such **Claim** until after the **Policy Period** has expired, then such **Claim** will be deemed to have been made on the date such **Insured Person** first received written notice of the **Claim**.

   If an **Insured** elects coverage for a **Preliminary Investigation**, such **Preliminary Investigation** is deemed to be made on the earliest date that any **Executive Officer** first receives written notice of such **Preliminary**


© 2015 The Travelers Indemnity Company. All rights reserved.

**Investigation**. However, if any **Insured Person** who is not an **Executive Officer** first receives written notice of a **Preliminary Investigation**, during the **Policy Period**, but no **Executive Officer** receives written notice of such **Preliminary Investigation** until after the **Policy Period** has expired, then such **Preliminary Investigation** will be deemed to have been made on the date such **Insured Person** first received written notice of the **Claim**.

3. The following is added to section **II. DEFINITIONS**:

***Benefit Determination Appeal*** means a written appeal made by an employee, participant, or beneficiary of an adverse benefit determination by an **Insured** with respect to an **Employee Benefit Plan** pursuant to the Department of Labor's claim procedure regulation 29 C.F.R. § 2560.503-1(h) or a similar claim procedure pursuant to applicable law.

***Preliminary Investigation*** means any:

1. fact-finding investigation of an Insured; or
2. request for an interview with an **Insured Person**,

solely as respects any **Employee Benefit Plan**, whether or not a **Wrongful Act** is alleged; commenced in writing by the United States Department of Labor, Pension Benefit Guaranty Corporation, or a similar government agency located outside of the United States, including the United Kingdom Pensions Ombudsmen appointed by the Secretary of State for Social Services or by the Occupational Pensions Regulatory Authority, or any successor body thereto.

**Preliminary Investigation** does not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production, or audit.

***Related Preliminary Investigations*** mean all **Preliminary Investigations** that have as a common nexus, or are causally connected by reason of, any fact, circumstance, situation, event, or decision.

4. The following is added to the first paragraph of section **III. CONDITIONS**, **F. INSURED'S DUTIES IN THE EVENT OF A CLAIM** of the Liability Coverage Terms and Conditions:

Provided that, if an **Executive Officer** elects coverage for a **Preliminary Investigation**, such **Executive Officer** must give the Company written notice of the **Preliminary Investigation** as soon as practicable after such **Executive Officer** first becomes aware of such **Preliminary Investigation**, but no later than: (i) 90 days after the Expiration Date of the **Policy Period** set forth in ITEM 2 of the Declarations; or (ii) the expiration of any applicable **Extended Reporting Period** or **Run-Off Extended Reporting Period**.

If an **Executive Officer** elects coverage for a **Preliminary Investigation**, such **Executive Officer** must: (i) include with any notice of a **Preliminary Investigation** the name of the agency making the request and, to the best of the **Executive Officer's** knowledge, a description of the nature and subject matter identified by the agency in the **Preliminary Investigation**; and (ii) provide to the Company such other information and cooperation as the Company may reasonably request, including additional information about the subject matter and nature of the **Preliminary Investigation** as it is learned.

5. The following is added to section **III. CONDITIONS**, **K. CHANGE OF CONTROL** of the Liability Coverage Terms and Conditions:

If, during the **Policy Period**, a **Change of Control** occurs, then coverage for **Preliminary Investigations** under this **Liability Coverage** will continue, but only for any **Preliminary Investigations** based upon facts or circumstances occurring prior to the **Change of Control**.

6. The following replaces the first paragraph of section **III. CONDITIONS** , **O. EXTENDED REPORTING PERIOD** of the Liability Coverage Terms and Conditions:

At any time prior to or within 60 days after the effective date of termination or cancelation of any **Liability Coverage** for any reason other than nonpayment of premium, the **Named Insured** may give the Company written notice that it desires to purchase an Extended Reporting Period for the period set forth in ITEM 8 of the


© 2015 The Travelers Indemnity Company. All rights reserved.

Declarations following the effective date of such termination or cancelation, regarding **Claims** for **Wrongful Acts**, or **Preliminary Investigations** based upon facts or circumstances, made during such Extended Reporting Period against persons or entities who at or prior to the effective date of termination or cancelation are **Insureds**, but only for **Claims** for **Wrongful Acts**, or **Preliminary Investigations** based upon facts or circumstances, occurring prior to the effective date of such termination or cancelation and which otherwise would be covered by such **Liability Coverage**, subject to the following provisions: (i) such Extended Reporting Period will not provide new, additional, or renewed limits of liability; and (ii) the Company's maximum limit of liability for all **Claims** made during such Extended Reporting Period will be only the remaining portion of the applicable limit of liability set forth in the Declarations as of the effective date of the termination or cancelation;

7. The following is added to section **III. CONDITIONS**, **H. RELATED CLAIMS** of the Liability Coverage Terms and Conditions:

   **RELATED PRELIMINARY INVESTIGATIONS**

   All **Related Preliminary Investigations** are deemed one **Preliminary Investigation**, and such **Preliminary Investigation** is deemed to be first made on the date the earliest of such **Preliminary Investigations** is first made, regardless of whether such date is before or during the **Policy Period**.

   Any **Claim** arising out of the same or substantially similar facts or circumstances as a **Preliminary Investigation**, for which notice has been provided pursuant to section III. CONDITIONS, F. INSURED'S DUTIES IN THE EVENT OF A CLAIM, 2., Notice of Preliminary Investigation, will be deemed to be first made on the date such **Preliminary Investigation** is first made, regardless of whether such date is before or during the **Policy Period.**

8. The following replaces section **III. EXCLUSIONS**, **A. EXCLUSIONS APPLICABLE TO ALL LOSS**, 9.:

   The Company will not be liable for **Loss** for any **Claim** based upon or arising out of any **Wrongful Act**, or **Preliminary Investigations** based upon facts or circumstances, by a **Subsidiary** or any related **Insured Person** occurring at any time during which such entity was not a **Subsidiary.**

9. The following replaces the first paragraph of section **V. CONDITIONS**, **B. ACQUISITION OR FORMATION OF AN EMPLOYEE BENEFIT PLAN** of the **Liability Coverage**:

   If, during the **Policy Period**, the **Insured Organization** acquires or forms an **Employee Benefit Plan**, that is solely sponsored by the **Insured Organization** exclusively for the benefit of its employees, then this **Liability Coverage** will provide coverage for such **Employee Benefit Plan** and its respective **Insured Persons**, subject to all other terms and conditions of this **Liability Coverage**, but only for **Claims** for **Wrongful Acts**, or **Preliminary Investigations** based upon facts or circumstances, that occur when the **Insured Organization** is the sole sponsor with regard to the **Employee Benefit Plan**; provided written notice of such acquisition or formation has been given to the Company, and specific application submitted on the Company's form in use at the time, together with any documentation and information as the Company may require, all within 90 days after the effective date of such acquisition or formation. Coverage for the acquired or formed **Employee Benefit Plan** will not be afforded following such 90-day period unless the Company has agreed to provide such coverage, subject to any additional terms and conditions as the Company may require, and the **Named Insured** has paid the Company any additional premium as may be required by the Company.

10. The following replaces the second paragraph of section **V. CONDITIONS**, **C. MERGER OF PLANS** of the **Liability Coverage**:

    If, during the **Policy Period**, an **Employee Benefit Plan** ("Covered Plan") is merged with another **Welfare Plan** or **Pension Plan** for which coverage is not provided under this **Liability Coverage** ("Uncovered Plan"), then this **Liability Coverage** will continue to provide coverage for only the Covered Plan, subject to all other terms and conditions of this **Liability Coverage** and only for so long as this **Liability Coverage** remains in effect as to the **Named Insured**, but only for **Claims** for **Wrongful Acts**, or for **Preliminary Investigations** based upon facts or circumstances which occurred prior to the date of such merger.


© 2015 The Travelers Indemnity Company. All rights reserved.

11. The following replaces section 1. of **V. CONDITIONS**, **D. SALE OF PLAN** of the **Liability Coverage**:

    for **Claims** for **Wrongful Acts**, or **Preliminary Investigations** based upon facts or circumstances which occurred prior to the date of such sale;

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.


© 2015 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PPACA, SECTION 502(C), SECTION 507, AND SECTION 4975 CIVIL MONEY PENALTIES ENDORSEMENT

This endorsement changes the following:

**Fiduciary Liability**

**It is agreed that:**

1. The following is added to ITEM 5 of the Declarations:

| | | |
|---|---|---|
| **PPACA Penalties Limit of Liability:** | $250,000 | which amount is included within, and not in addition to, any applicable Limit of Liability. |
| **Section 502(c) Limit of Liability:** | $250,000 | which amount is included within, and not in addition to, any applicable Limit of Liability. |
| **Section 507 Penalties Limit of Liability:** | $250,000 | which amount is included within, and not in addition to, any applicable Limit of Liability. |
| **Section 4975 Penalties Limit of Liability:** | $250,000 | which amount is included within, and not in addition to, any applicable Limit of Liability. |

2. The following is added to section **III. CONDITIONS**, **B. RETENTION** of the Liability Coverage Terms and Conditions:

   However, no Retention will apply to any **Claim** under Insuring Agreement A set forth in ITEM 5 of the Declarations that seeks only **PPACA Penalties**, **Section 502(c) Penalties**, **Section 507 Penalties**, or **Section 4975 Penalties**.

3. The following is added to section **III. CONDITIONS**, **C. LIMITS OF LIABILITY**, 1. of the Liability Coverage Terms and Conditions:

   However, the Company's maximum limit of liability for all:

   (1) **PPACA Penalties** will be the PPACA Civil Money Penalties Limit of Liability set forth in ITEM 5 of the Declarations, which amount is included within, and not in addition to, any applicable Limit of Liability.

   (2) **Section 502(c) Penalties** will be the Section 502(c) Penalties Limit of Liability set forth in ITEM 5 of the Declarations, which amount is included within, and not in addition to, any applicable Limit of Liability;

   (3) **Section 507 Penalties** will be the Section 507 Civil Money Penalties Limit of Liability set forth in ITEM 5 of the Declarations, which amount is included within, and not in addition to, any applicable Limit of Liability; and

   (4) **Section 4975 Penalties** will be the Section 4975 Penalties Limit of Liability set forth in ITEM 5 of the Declarations, which amount is included within, and not in addition to, any applicable limit of liability.

4. The following is added to section **II. DEFINITIONS** of the **Liability Coverage**:

   ***PPACA Penalties*** means civil money penalties or fines imposed on any **Insured** pursuant to the Patient Protection and Affordable Care Act, as amended, including any rules or regulations promulgated thereunder. **PPACA Civil Money Penalties** do not include any civil money penalties imposed on any **Insured** pursuant to section 4980H of the Internal Revenue Code, as amended.

   ***Section 502(c) Penalties*** means civil penalties imposed on any **Insured** pursuant to Section 502(c) of the Employee Retirement Income Security Act of 1974, as amended, including such penalties imposed on any **Insured** pursuant to the Pension Protection Act of 2006, as amended.

Issuing Company: **Travelers Casualty and Surety Company of America**
Policy Number: **107298906**


© 2017 The Travelers Indemnity Company. All rights reserved.

***Section 507 Penalties*** means civil money penalties imposed on any **Insured** pursuant to Section 507 of Title V of the Pension Protection Act of 2006, as amended.

***Section 4975 Penalties*** means the 15% or less tax imposed on any **Insured** as a penalty pursuant to Section 4975 of the Internal Revenue Code, as amended.

5. The following replaces the first paragraph of section **II. DEFINITIONS**, **M.** of the **Liability Coverage**:

   ***Loss*** means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements; judgments; back and front pay, compensatory damages; punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages; prejudgment and post judgment interest; and legal fees and expenses awarded to a plaintiff in a court order or judgment under ERISA section 502(g); and solely with respect to section I. INSURING AGREEMENTS, B. of this **Liability Coverage**, **Settlement Fees**, provided **Loss** other than **Defense Expenses** does not include:

6. The following replaces section **II. DEFINITIONS**, **M**. **Loss**, 1. of the **Liability Coverage**:

   civil or criminal fines (except **Settlement Fees** pursuant to Insuring Agreement B.; **PPACA Penalties**; **Section 502(c) Penalties**; **Section 507 Penalties**; civil penalties under Sections 502(i) and 502(l) of **ERISA** or the privacy provisions of **HIPAA**; in the United Kingdom, civil penalties imposed by the Pensions Ombudsmen appointed by the Secretary of State for Social Services or by the Occupational Pensions Regulatory Authority, Pensions Regulator, or any successor body thereto, provided that the funds or assets of the pension scheme will not be used to fund, pay or reimburse the premium for this coverage or any portion thereof; or, in Ireland, civil penalties imposed by the Republic of Ireland's Pensions Authority); sanctions; liquidated damages; payroll or other taxes (except **Section 4975 Penalties**); or damages or types of relief deemed uninsurable under applicable law.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, exclusions, or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.


© 2017 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INITIAL PUBLIC OFFERING EXCLUSION (BROAD) ENDORSEMENT

This endorsement modifies the following:

**Private Company Directors and Officers Liability**

**It is agreed that:**

1. The following is added to section **III. DEFINITIONS** of the **Liability Coverage:**

***Initial Public Offering Filing*** means the filing by the **Insured Organization** of an offering memorandum or registration statement including a Form S-1 under the Securities Act of 1933 or foreign equivalent, with the Securities Exchange Commission or foreign equivalent.

***Initial Public Offering*** means the actual offer, sale, or trading of securities in connection with an **Initial Public Offering Filing**.

2. The following replaces section **IV. EXCLUSIONS, A. EXCLUSIONS APPLICABLE TO ALL LOSS,** 11. of the **Liability Coverage:**

11. The Company will not be liable for **Loss** for any **Claim** based on or arising out of the sale or trading of securities pursuant to an **Initial Public Offering**, including any ongoing reporting requirements under Securities Exchange Act of 1934 or foreign equivalent provided, that this exclusion will not apply to:

a. any offer, purchase or sale of securities, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933 or foreign equivalent (an "Exempt Transaction"); or

b. the failure of the **Insured Organization** to undertake or complete an **Initial Public Offering**; or

c. a **Wrongful Act** relating to the **Insured Organization's** preparation for any **Initial Public Offering**, including any presentations made by the **Insured Organization** or **Executive Officers** in connection with such offering.

This exclusion shall not apply until the actual trading of securities in connection with an **Initial Public Offering**.

In addition, if the **Named Insured** provides notice of an **Initial Public Offering** within 30 days of the **Initial Public Offering Filing** thereof to the Company along with any additional information which the Company may request, the Company shall offer to the **Insured Organization** a proposal for coverage for such resulting **Initial Public Offering** subject to any additional terms and conditions,and payment of any additional premium, described in such proposal.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,exclusions or limitations of the above-mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

Issuing Company: **Travelers Casualty and Surety Company of America**

Policy Number: **107298906**


©2009 The Travelers Companies, Inc. All Rights Reserved